IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANN MARIE RUDD, MATTHEW ROACH,
MELISSA LONGO, JENNIFER DOTY, and
GARRETT TITCHEN,

                    Plaintiffs,          Civ. Action No.
                                         3:10-CV-0591 (TJM/DEP)

          v.

T.L. CANNON CORP., d/b/a Applebees,
T.L. CANNON MANAGEMENT CORP.,
TLC WEST, LLC, TLC CENTRAL, LLC,
TLC UTICA, LLC, TLC EAST, LLC, TLC
NORTH, LLC, DAVID A. STEIN, MATTHEW
J. FAIRBAIRN, and JOHN A. PERRY,

                    Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFFS:

O'HARA O'CONNELL LAW FIRM       FRANK S. GATTUSO, ESQ.
7207 E. Genesee St.             DOMINIC S. D'IMPERIO, ESQ.
Fayetteville, NY 13066          DENNIS G. O'HARA, ESQ.

FOR DEFENDANTS:

LITTLER, MENDELSON LAW FIRM     CRAIG BENSON, ESQ.
900 Third Avenue                ELENA PARASKEVAS-THADANI, ESQ.
New York, NY  10022-4834

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION AND ORDER

Plaintiffs Ann Marie Rudd, Matthew Roach, Melissa Longo, Jennifer Doty, and Garrett Titchen, all former employees of the defendants, operators of approximately fifty-three Applebee's Neighborhood Grill & Bar Restaurants ("Applebee's") throughout New York State, have commenced this action, styled as an "FLSA Collective Action and Class Action", against the defendants.[1]  Plaintiffs' complaint alleges the existence of systemic policies and practices in place at defendants' restaurants resulting in violations of various provisions of the New York Labor Law and the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201 *et seq.*

Shortly after commencement of the action, and without the benefit of any pretrial discovery, plaintiffs moved pursuant to Rule 23 of the Federal

---

[1]     Named as defendants in the action are several corporations, including T.L. Cannon Corp., d/b/a Applebee's, T.L. Cannon Management Corp., TLC West, LLC, TLC Central, LLC, TLC Utica, LLC, TLC East, LLC, and TLC North, LLC, as well as three individuals, including David A. Stein, individually and as owner and Chairman of T.L. Cannon Corp., and as Director and Chairman of T.L. Cannon Management Corp., John A. Perry, identified as the Vice President and Director of Operations of T.L. Cannon Corp. and as president of T.L. Cannon Management Corp., and Matthew J. Fairbairn, who reportedly is owner and serves as the President of T.L. Cannon Corp., and as a Director and Chief Executive Officer of T.L. Cannon Management Corp.  While the Applebee's location at which plaintiffs worked is owned and operated by TLC Central, LLC, according to the defendants, both parties have treated the defendants collectively for purposes of the instant motion, and I will do likewise.

Rules of Civil Procedure for certification of the case as a class action with respect to their state law claims, and for approval to pursue a collective action for purposes of the FLSA claims asserted.[2]  For the reasons set forth below, I grant plaintiffs' application for certification of the case as a collective action, but only as to present and former employees of the Applebee's location in which the plaintiffs all principally worked, and I recommend denial of their motion for class certification under Rule 23, without prejudice.

I.    <u>BACKGROUND</u>

Defendants own and operate approximately fifty-three Applebee's restaurants.  Complaint (Dkt. No. 1) ¶ 1. Those restaurants vary in size, sales volume, and configuration, and are located throughout the State. Sabio Decl. (Dkt. No. 26) ¶ 2.  Defendants opened their first New York Applebee's restaurant in 1991.  Complaint (Dkt. No. 1) ¶ 40. Among the Applebee's restaurants operated by the defendants is one located at 842 Upper Front Street, Binghamton, New York, where all of the five named plaintiffs were employed at various times between 2005 and March of

---

[2]      In addition to their two applications for certification, plaintiffs additionally seek an order requiring disclosure of the identities of all potential opt-in plaintiffs to the collective action, and request that a court-approved notice regarding the action be sent to the listed present and former employees.

2010.  *Id.* at ¶¶ 1, 3, 6-9.

Each of the defendants' New York restaurants is managed by a general manager, who is regarded as the highest ranking employee on location and supervises all other managerial and hourly workers at the facility.  Sabio Decl. (Dkt. No. 26) ¶¶ 4-5.  Among the responsibilities of defendants' general managers is ensuring compliance with applicable wage and hour laws.  *Id.* at ¶ 5.  Some, although not all, of defendants' restaurants also have other management employees who work under the general manager, including as assistant general managers, training managers, kitchen managers, and bar managers.  *Id.* at ¶ 4.

The workforce at each of defendants' Applebee's locations also includes hourly employees who occupy positions typically broken down into categories, including front of the house ("FOH") positions, back of the house ("BOH") positions, and key hourly managers ("Key").  Complaint (Dkt. No. 1) ¶ 66.  BOH employees typically serve as either general utility dishwashers, prep cooks, line cooks, or expediters, all of which are non-tipped hourly positions.  *Id.* at ¶¶ 67-68.  FOH positions at defendants' locations can include hosts, servers, bartenders, and carside to go employees; hosts and carside employees are classified as non-tipped

4

hourly employees, while servers and bartenders are treated as tipped

workers for wage-hour purposes.  *Id.* at ¶¶ 98-100.  Key hourly employees

are those who are assigned to work regular "management" shifts when a

particular store is either short a manager or needs coverage for a

management shift for some other reason.[3]  *Id.* at ¶ 137.

The plaintiffs in this action are all former employees who worked

primarily at defendants' Front Street Applebee's location.  Complaint (Dkt.

No. 1) ¶ 19; Sabio Decl. (Dkt. No. 26) ¶¶ 3, 6-9.  Ann Marie Rudd served

as the general manager of the Front Street restaurant from May of 2005

until on or about November 12, 2009.  Rudd Aff. (Dkt. No. 30-4) ¶¶ 3, 5;

Sabio Decl. (Dkt. No. 26) ¶ 3.  Matthew Roach worked at the restaurant

from May of 2005 until March, 2010 as an hourly employee, including as a

server, host, carside to go employee, prep cook, general utility

dishwasher, and expediter.  Roach Aff. (Dkt. No. 30-6) ¶¶ 3-4; Sabio Decl.

(Dkt. No. 26) ¶ 6.  Melissa Longo was employed at the Front Street

location from April, 2005 until January 31, 2010; during that time Ms.

Longo worked as a bartender, carside to go employee, prep cook,

---

[3]       Along with the various job codes in the BOH and FOH categories
defendants also utilize approved trainers, who receive an additional fifty cents per hour
when training other employees.  Complaint (Dkt. No. 1) ¶¶ 137-38, 140.

neighborhood marketing coordinator, cook, and key hourly employee.
Longo Aff. (Dkt. No. 30-5) ¶¶ 3-4; Sabio Decl. (Dkt. No. 26) ¶ 7.  Jennifer
Doty worked at the Front Street location from November, 2005 through
November 15, 2009.[4]  Sabio Decl. (Dkt. No. 26) ¶ 8.  Garrett Titchen
worked at the Front Street Applebee's from May 2, 2005 to August 16,
2009; during that time period he served in various hourly positions,
including as a mid-line cook, fry cook, broil cook, prep cook, server,
carside to go employee, general utility dishwasher, and food expediter, as
well as in managerial positions as an opening manager and a middle
manager.  Titchen Aff. (Dkt. No. 31-1) ¶¶ 3-5; Sabio Decl. (Dkt. No. 26) ¶
9.

In addition to working at the Front Street location certain of the
plaintiffs, including Ann Marie Rudd, Matthew Roach, and Garrett Titchen,
have worked on occasion at other Applebee's locations, including Vestal,
Cortland, Elmira, Ithaca, and Painted Post (plaintiff Rudd); Vestal (plaintiff
Roach); and Vestal and Castle Rock, Washington (plaintiff Titchen).[5]

---

[4]     Plaintiff Doty did not provide an affidavit in support of plaintiffs' class
certification motion.

[5]     There does not appear to be any connection between the Applebee's
location in Washington State at which plaintiff Titchen worked briefly and the
defendants, whose operations are allegedly centered in New York and Connecticut.
*See* Complaint (Dkt. No. 1) ¶ 3.

Rudd Aff. (Dkt. No. 30-4) ¶ 6; Roach Aff. (30-6) ¶ 6; Titchen Aff. (Dkt. No. 31-1) ¶ 6.

II.    PROCEDURAL HISTORY

Plaintiffs commenced this action on May 19, 2010.  Dkt. No. 1.
Plaintiffs' complaint sets forth nine causes of action, although one has been withdrawn.[6]  *See generally*, Complaint (Dkt. No. 1).  Of the remaining claims the first five arise under the New York Labor Law, alleging failure on the part of the defendants to 1) reimburse employees for laundry fees; 2) reimburse for uniform fees; 3) provide proper compensation for "spreads of hours" exceeding ten hours; 4) adequately compensate employees for "split-shifts"; and 5) properly compensate employees for rest time, regular time, and overtime.  *Id.*  Plaintiffs' remaining claims are asserted under the FLSA, and are based upon their contention that defendants have 1) failed to properly compensate hourly employees for wages and overtime; 2) improperly classified employees as exempt "bona fide executive" employees, thereby avoiding the requirement of paying overtime under the Act; and 3) improperly classified employees as exempt "salaried managers", in that way also avoiding the

---

[6]    Plaintiff's sixth claim for relief, alleging a common law conversion cause of action, has been voluntarily discontinued by the plaintiffs.  *See* Dkt. Nos. 28, 29.

7

requirement of paying overtime.  *Id.*

On the day following the filing of their complaint, plaintiffs moved seeking two forms of certification.  Dkt. No. 13.  Plaintiffs have first requested certification of this case as a collective action under the FLSA, permitting individuals similarly situated to opt into the lawsuit as plaintiffs, with corresponding requests that the court compel defendants to provide information regarding potential opt-in plaintiffs and authorize and approve notices to be sent to those putative plaintiffs.  *Id.*  The second prong of plaintiffs' motion seeks class certification with respect to their New York Labor Law claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.  *Id.*  In their motion, plaintiffs propose certification of five subclasses of employees for purposes of their New York Labor Law claims, and essentially three subclasses of potential opt-in plaintiffs with regard to their FLSA claims.  *Id.*  Defendants have since filed papers in opposition to both aspects of plaintiffs' motion, Dkt. Nos. 24-26, 27, and plaintiffs have now replied to those opposition papers.  Dkt. Nos. 30, 31.

The plaintiffs' motion, which is now fully briefed and ripe for determination, was referred to me by Senior District Judge Thomas J.

McAvoy.[7]  *See* Text Order Dated June 7, 2010.  Oral argument was held in connection with plaintiffs' motion on August 27, 2010, at which time decision was reserved.

III.   DISCUSSION

     A.   FLSA Collection Action Certification

The FLSA allows for the maintenance of collective actions by multiple employees of a defendant employer who have been subjected to the same, allegedly unlawful practice or policy through an "opt in" procedure set out in 29 U.S.C. § 216(b).  That section provides, in relevant part, that

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

---

    [7]    Plaintiffs' motion for class certification was referred to me by Senior District Judge Thomas J. McAvoy on May 7, 2010 for the issuance of a report and recommendation.  *See* Text Order of 06/07/10.  Unlike the pending application for class certification under Rule 23, which is considered to be dispositive and thus beyond my non-consensual jurisdiction as a magistrate judge, *see Nelson v. Nationwide Mortgage Corp.*, 659 F. Supp. 611, 619-20 (D.D.C. 1987), plaintiffs' motion to certify a collective action under the FLSA is regarded as non-dispositive in nature, and thus falls within my purview.  28 U.S.C. § 636(b)(1)(A); *see Prizmic v. Armaur, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *1 n.1 (E.D.N.Y. June 12, 2006); *Barrus v. Dick's Sporting Goods, Inc.,* 465 F. Supp. 2d 224, 229 n.1 (W.D.N.Y. 2006) (Feldman, M.J.), *aff'd*, 2006 WL 3373117 (W.D.N.Y. Nov. 3, 2006) (Siragusa, D.J.) (citing *Patton v. Thompson Corp.,* 364 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2006)); *see also Ruggles v. Wellpoint, Inc.,* 591 F. Supp. 2d 150 (N.D.N.Y., 2008).

> No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  The collective action mechanism serves to both further the broad, remedial purposes of the FLSA and promote efficiency in adjudication of such claims.  *Lynch v. United Services Auto. Ass'n,* 491 F. Supp. 2d 357, 367-71 (S.D.N.Y. 2007).  As one court within this circuit has observed,

> [t]he collective action procedure allows for efficient adjudication of similar claims, so "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims.

*Lynch,* 491 F. Supp. 2d at 367 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482 (1989)).  Addressing the potential efficiencies of a section 216(b) certification, the court in *Lynch* went on to note that

> [c]ollective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring [the named plaintiff] and opt-in plaintiffs to file separate cases in multiple federal district courts would not be an economic use of judicial resources.

10

*Id.* at 371.

Both in this circuit and elsewhere, courts generally employ a two-tiered protocol to determine whether an FLSA suit may proceed as a collective action.  *Ruggles v. Wellpoint, Inc.*, 591 F. Supp. 2d 150 (N.D.N.Y. 2008) (Treece, M.J.); *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 256 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2009).  Initially, the court undertakes examination of plaintiffs' pleadings and affidavits to determine whether they and the other members of the proposed class are sufficiently "similarly situated" to warrant the issuance of notice to all members of the pendency of the suit, and to permit it to proceed as a collective action through discovery.  *Ruggles*, 591 F. Supp. 2d at 157-58 (citing *Lynch,* 491 F. Supp. 2d at 367-68).  In addition, some courts require that a plaintiff seeking certification of a collective action under section 216(b) also establish that there are similarly situated employees with an interest in opting in and becoming plaintiffs in the case.[8]  *Dybach v. State of Florida Dep't of Corr.,* 942 F.2d 1562, 1657 (11th Cir. 1991);

---

[8]    The interest prong of the relevant test can be satisfied in a case of this nature where there are consents already on file given by other employees who are potentially similarly situated to the main plaintiffs.  *See Ohsann*, 2008 WL 2468559, at *2.  In this case, to date no other Applebee's employees claiming to be similarly situated to the plaintiffs have chosen to opt in.

*Ohsann v. L.V. Stabler Hosp.,* No. 2:07-cv-0875-WKW, 2008 WL

2468559, at *2 (M.D. Ala. June 17, 2008); *Frye v. Baptist Mem. Hosp.,*

*Inc.*, 2:07-CV-02708, *slip op.* at p. 14 (W.D. Tenn. Sept. 16, 2008); *but*

*see Cuzco v. Orion Builders, Inc.,* 477 F. Supp. 2d 628, 634 (S.D.N.Y.

2007) ("[P]laintiff is not required to indicate how many potential opt–in

plaintiffs may join the suit, nor must an FLSA plaintiff join with other

potential plaintiffs at the time a suit is filed in order for a representative

action to be pre-certified."); *see also Dumitrescu v. Mr. Chow Enters., Ltd.,*

No. 07 Civ. 3601 (PKL), 2008 WL 2600667, at *6 (S.D.N.Y. June 30,

2008) (the fact that plaintiffs were unable to identify any persons desiring

to opt-in was not deemed fatal where there were at least fifty other tipped

employees who were subject to the same policies as the plaintiffs).

　　　The plaintiffs' burden at this preliminary juncture is minimal.  *Lynch*,

491 F. Supp. 2d at 368.  All that is to be determined at this first stage is

whether the potential opt-in plaintiffs are similarly situated, and thus

should receive notice of the pendency of the collective action; when

making this finding the court does not weigh the merits, resolve factual

disputes, or make credibility assessments.  *Lynch*, 491 F. Supp. 2d at

368; *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y.

1998); *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 229-30 (W.D.N.Y. 2006); *see also Ruggles,* 591 F. Supp. 2d at 157-158.  Upon determining that the potential opt-in plaintiffs are similarly situated, the court will conditionally certify the collective action, and the named plaintiffs may then send a court-approved notice to potential members, advising of their right as potential plaintiffs to join in the action by filing consent forms with the court.  *Lynch*, 491 F. Supp. 2d at 367-68

The second phase of the process entails a far more reaching factual analysis to determine whether the class members are actually similarly situated, and the case should continue on as a collective action. *Lynch,* 491 F. Supp. 2d at 367-68; *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 367 (S.D.N.Y. 2007).  In a sense, this more exacting standard serves as a failsafe mechanism, off-setting the lenity shown at step one; "[p]laintiffs' burden [at the first step] is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage." *Levy v. Verizon Info. Services Inc.*, Nos. 06 CV 1583, 06 CV 5056, 2007 WL 1747104, at *3 (E.D.N.Y. June 11, 2007).  This second step is typically initiated by the defendant's filing of a motion for decertification.

*Iglesias-Mendoza*, 239 F.R.D. at 367.

This action is at the initial, preliminary certification stage.  At this point plaintiffs bear the burden of demonstrating only that they are similarly situated to the remainder of the proposed class, requiring at a minimum that they make a "modest factual showing" that they and the putative class members have been the "victims of a common policy or plan that violated the law."  *Ruggles*, 591 F. Supp. 2d at 158 (citations omitted); *see Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002); *see also Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 387 (W.D.N.Y. 2005).  If plaintiffs satisfy this burden, conditional certification of the class under the FLSA is warranted.  *Ruggles*, 591 F. Supp. 2d 157.

The putative class of opt-in plaintiffs proposed in the pending motion extends over a large number of restaurant locations throughout New York State, and encompasses a wide range of managerial and hourly employees.  It is true that for purposes of section 216(b) parties may be similarly situated despite not occupying the same positions or performing the same job functions and in the same locations, provided they are in fact subject to a common unlawful policy or practice.  *See Ruggles*, 591 F.

Supp. 2d at 160; *Abrams v. Gen. Elec. Co.*, No. 95-CV-1734, 1996 WL 663889, at *2 (N.D.N.Y. Nov. 4, 1996) (Scullin, J.).  For the proposed class members to be deemed similarly situated, however, there must be "demonstra[ble] similarity among the individual situations, . . . some identifiable factual nexus which binds the named plaintiffs and potential class members together *as victims of a particular alleged discrimination*." *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (citing *Palmer v. Readers Digest Ass'n*, 42 Fair Empl. Prac. 212, 213 (S.D.N.Y. 1986)) (emphasis added and other emphasis omitted); *see also Realite,* 7 F. Supp. 2d at 306.  The similarly situated analysis, then, turns upon the features that make the particular policy or practice unlawful.  *See Ruggles*, 591 F. Supp. 2d at 161 (citing cases).

Although the standard governing plaintiffs' application is lax and their burden modest, a court must nonetheless take a measured approach when addressing a request for collective action certification, mindful of the potential burdens associated with defending against an FLSA claim involving a large and broadly defined collective group of plaintiffs.[9]  *See*

---

[9]      If plaintiffs' motion is granted in full the FLSA collective action classes could include as many as 4,270 employees who work or have worked in the fifty-three Applebee's restaurants owned and operated by the defendants within New York.

*Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008).  To focus on only one element of an FLSA claim gives rise to the potential for overreaching and would result in loss of the efficiencies envisioned by the drafters of the FLSA.

The type of commonality, or nexus, required to support collective action certification under the FLSA is aptly illustrated by the principal cases cited by plaintiffs in support of their application.  In *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005), for example, the required connection was demonstrated where the evidence showed that the defendant treated the named plaintiffs and other employees throughout all of its 108 facilities located across twenty-one states similarly, classifying those employees as exempt for FLSA purposes when, according to the plaintiff, they should properly have been treated as hourly employees entitled to overtime compensation under the Act.  *See Young*, 229 F.R.D. at 54-55.  Of significance to the court in arriving at its determination in that case was the defendant's admission that all persons in the plaintiff's position performed the same duties and were in fact classified as exempt. *Id.* at 55.

Similarly, in *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249 (S.D.N.Y.

1997), plaintiffs sued the owners of a nationwide chain of restaurants

alleging violation of the FLSA stemming from a uniform, company-wide

policy requiring restaurant managers to reimburse defendants for cash

shortages and other losses and permitting recovery of those losses

through wage deductions.  *Hoffman*, 982 F. Supp. at 251.  Because the

defendants in that case similarly admitted the existence of such a uniform

policy, applicable to all management employees, the court concluded that

collective action certification was appropriate.  *Id.* at 261-64.  *See also*

*Dumitrescu,* 2008 WL 2600667 (sufficient factual nexus established where

plaintiffs' submissions demonstrated, and defendants confirmed, that the

employees at both of the defendant's two restaurant locations were

subjected to the same practice related to allocation of tips allegedly

running afoul of the FLSA); *Ravenell v. Avis Budget Car Rental, LLC*, No.

08-CV-2113 (SLT)(ALC), 2010 WL 2921508 (E.D.N.Y. July 19, 2010)

(collective action certification granted where plaintiffs, all former Avis shift

managers at either the company's Laguardia Airport, Dulles Airport, or

Reagan National Airport locations, alleged improper classification of

themselves and other similarly situated employees under the FLSA's

17

"bona fide executive" exemption to avoid paying for overtime when, in

reality, those employees performed non-managerial tasks, where

defendant conceded that all shift managers nationwide were classified as

exempt, and corporate documents from the defendant revealed that all

shift managers, wherever located, were similarly treated); *Schwed v.*

*General Electric Co.,* 159 F.R.D. 373 (N.D.N.Y. 1995) (collective action

certification permitted in ADEA action where preliminary evidence tended

to establish the existence of a ranking system utilized by the defendants

on a division-wide basis to target employees to be laid off, resulting in a

disparate impact on the basis of age).

The decision of Magistrate Judge Randolph F. Treece in *Ruggles*

discusses the type of showing that can surpass the relatively modest

FLSA collective action hurdle and illustrates why the plaintiffs in this case

have failed to meet that threshold requirement as to the FLSA classes

proposed.  591 F. Supp. 2d 150.  *Ruggles* involved a large corporation

with a presence in fourteen states, and claims by the plaintiffs that they

were designated as exempt employees under the FLSA and paid a salary

accordingly when, in fact, they should have been classified as non-exempt

employees and compensated for any overtime work.  The three named

plaintiffs in *Ruggles* worked at three different Wellpoint locations, one in

Albany, New York, one in Indianapolis, Indiana, and one in Georgia.

*Ruggles*, 591 F. Supp.2d at 153-54.  The plaintiffs' application for

collective action certification was supported by ten affidavits, given by

employees stationed at seven of the fourteen Wellpoint locations,

uniformly setting out facts strongly suggesting the existence of a

company-wide policy of mis-designating nonexempt employees such as

the named plaintiffs.  *Id.* at 160-61.  On that basis Judge Treece

concluded the plaintiffs had met their relatively modest burden of

demonstrating that the plaintiffs and the proposed opt-in class members

were similarly situated.  *Id.* at 161-62.  *Contrast Diaz v. Electronrics*

*Boutique of America, Inc.,* 04-CV-0840 E(Sr), 2005 WL2654270, * 3-4

(W.D.N.Y. Oct. 17, 2005) (allegations that the named  plaintiff worked "off-

the-clock" without compensation and that his time sheets were altered to

delete overtime hours worked deemed too individualized to warrant

collective action treatment).

Here, plaintiffs seek collective action certification under the FLSA

with regard to three groups.  The first, designated in their complaint as

Class II, is described as comprised of non-exempt employees where:

> Those employees were not paid regular and/or
> overtime compensation for all the hours to which
> they were entitled, including but not limited to those
> hours as articulated in the Third [spread of hours]
> Fourth [split shifts] and Fifth [rest time, regular time
> and overtime under the New York Labor Law]
> Claims for Relief, when such time was
> compensable time subject to the regular time and
> overtime provisions of the FLSA pursuant to 29
> U.S.C. §§ 206, 207 and 216 (Seventh Claim for
> Relief).

Complaint (Dkt. No. 1) ¶ 25.  The second group, designated as Class III is

broken down into two subclasses, both consisting of exempt managers.

*Id. at* ¶ 27.  Class III-A is described as follows:

> Managers classified by Defendants as exempt
> "bona fide executive" employees who were not
> paid overtime compensation, and who were
> actually non-exempt employees where such time
> was compensable under the regular time and
> overtime provisions of the FLSA pursuant to 29
> U.S.C. §§ 206, 207, 213(a)(1), 216 and 29 C.F.R.
> §§ 541.100 and 779.401-404 (Eighth Claim for
> Relief).

*Id.*  Class III-B consists of the following workers:

> Managers classified by Defendants as exempt
> employees who were not paid overtime
> compensation, but, who were not paid on a "salary
> basis" as that term is defined at 29 C.F.R. §§
> 541.600-606, and, therefore, were non-exempt
> employees where such time was compensable
> under the regular time and overtime provisions of
> the FLSA pursuant to 29 U.S.C. §§ 206, 207,

20

213(a)(1), 216 and 29 C.F.R. §§ 541.600-604
(Ninth Claim for Relief).

*Id.*

The offending practices alleged to be common to all of the

defendants' employees are described principally in plaintiffs' complaint,

which is verified by each of the named plaintiffs.  Many of the allegations

of the complaint, however, are not made based on personal knowledge,

but instead are stated "upon information and belief," and are

conspicuously lacking detail.  *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 145-47,

161, 168, 176, 179, 182, 186, 197, 198, 199, 208, 210.  The allegations of

the complaint are supplemented by form affidavits from the plaintiffs

setting forth the locations at which they have worked as well as the dates

of their employment and the positions held, and stating generically as

follows:

> 8.  Moreover, during my employment with T.L.
> Cannon at its Applebee's Restaurants and
> continuing up and to this day, I have spoken to
> numerous co-workers, managers, and employees
> in general, both [sic] the stores in which I worked
> and from other stores, who have stated in sum and
> substance that they were experiencing the same
> conditions and circumstances as I was and as
> alleged in the complaint in this action.
>
> 9.  Accordingly, I am reaffirming that I have read a

copy of the complaint filed in this action and based upon my personal experiences and knowledge, the complaint accurately represents my work experiences at T.L. Cannon's Applebee's restaurants and the allegations are true to the best of my knowledge.

10.    Based upon my knowledge and experience, it is my belief that the above referenced complaint represents an accurate depiction of how T.L. Cannon ran all of its Applebee's restaurants, not just the restaurant located at Front Street (Store No. 58) in Binghamton, New York.

*See, e.g.,* Rudd Reply Aff'd (Dkt. No. 30-4) ¶¶ 8-10.

An affidavit from Christina Apple, a former employee of the defendants who was recently fired, provides slightly more detail regarding the working conditions and compensation at defendants' locations.  Apple Aff. (Dkt. No. 31-2).  Apple has worked at defendants' DeWitt, Clay, North Syracuse, and Auburn locations in both managerial and hourly positions.  *Id.* at ¶¶ 7-8.  In her affidavit, Apple recounted the times she worked over six hours on a shift without a break, to find later that her time records were unofficially adjusted, and added that there were "countless times" when management employees were required to perform hourly functions.  *Id.* at ¶ 24(e) and (f).  Apple also indicated that "the 10-hour spread requirement was regularly overlooked" at defendants' restaurants.  *Id.* at ¶ 24(l).

Unfortunately for the plaintiffs, the affidavits of those former employees of the defendants fall short of identifying a particular policy or practice applied by the defendants uniformly across the board at all of their locations, leading to FLSA violations.  Despite pointed questioning regarding the issue, during oral argument of plaintiffs' certification motion their counsel was unable to identify any unlawful policy or practice applied systemically throughout defendants' many restaurant operations, causing the plaintiffs and other putative opt-in employees to suffer the same types of injury.  The fact that all of the potential opt-in plaintiffs are employees of the defendants does not suffice.  *See, e.g., Diaz*, 2005 WL 2654279.  Nor, in the court's view, does the bare assertion that all of the alleged violations spring from the defendants' mandate to all restaurant managers that they should control labor costs to the extent possible establish the existence of the requisite common denominator.[10]  *See Harper v. Lovett's Buffett, Inc.*, 185 F.R.D. 358, 361, 363 (M.D. Ala. 1999).

In many ways this action presents circumstances similar to those that were before the court in *Harper*.  There the plaintiffs, all former employees of Lovett's, alleged that defendant had engaged in a long-

---

[10]     The court suspects that the goal of minimizing or controlling labor costs is one shared by most employers.

standing, wide-spread practice of failing to pay its hourly employees

proper wages pursuant to the FLSA, going on to describe specific

practices allegedly associated with that policy.  As in this action, the

plaintiffs in *Harper* also alleged that managerial employees were under a

directive to control expenses, including labor costs, a mandate which,

plaintiffs argued, provided incentive for managers to engage in practices

running afoul of the Act.  *See id.* at 361.  The court rejected the plaintiffs'

contention that allegations of FLSA violations at a single location could

provide the requisite factual support for the plaintiffs' assertion of similar

wrongdoing at other restaurants.  *Id.* at 363, 365.  The court therefore

denied plaintiffs' application for the broad certification sought, although it

did permit certification of the case as a collective action limited to

employees at the single location where the named plaintiffs all worked.  *Id.*

at 363-64.

    As in *Harper*, I find that plaintiffs have made the requisite modest

showing that they and other former employees at the Front Street

Appelebee's location are similarly situated, notwithstanding the fact that

they may have occupied different job descriptions, in that they were

allegedly subject to the same challenged practices while working at that

location, and worked under the same restaurant manager whose practices

are alleged to have resulted in FLSA violations.  Accordingly, I will certify

this as a collective action for the purposes of all hourly and managerial

employees who worked at defendants' Front Street Applebee's

Restaurant during any portion of the three years preceding plaintiffs' filing

of this lawsuit, and who fall within the scope of plaintiffs' proposed Class

II, Class III-A, or Class III-B.  In addition, as requested by the plaintiffs,

defendants will be ordered to provide a list of names and addresses of all

present and former employees potentially falling within those classes, and

those members of the putative class will be provided with notice of the

pendency of this action and afforded the opportunity to opt-in as plaintiffs.

*See Hoffman-LaRoche*, 493 U.S. at 170, 110 S. Ct. at 486.

As for consideration of certification of this matter as a collective

action extending beyond the Front Street location, however, I find that

plaintiffs' claims are too particularized, and that they have not submitted

evidence disclosing the existence of a company-wide policy or practice

applicable to all of defendants' locations, and that the action therefore

does not lend itself to collective action status at this time.  *Diaz,* 2005 WL

2654270 (plaintiffs, two management employees stationed at a single

location of the defendant, which operates 1460 stores nationwide,

claiming FLSA violations failed to establish the existence of company-wide

policies or practices, as opposed to particularized experiences at the

single location, thereby negating suitability of pursuing the claims raised

by way of a collective action).

Although inclined to deny plaintiffs' application for the broad

conditional collective action certification now sought, the court is

nonetheless empowered, in view of the broad remedial purposes to be

served by the FLSA to order the production of names and last known

addresses of individuals employed by the defendants at their other

Appelebee's locations, and finds it appropriate to do so in this case.

*Morales v. Plant Works, Inc.,* No. 05 Civ 2349 (DC), 2006 WL 278154, at

*3 (S.D.N.Y. Feb. 2, 2006).  I will therefore direct that defendants provide

plaintiffs with the names and last known addresses of all individuals

employed by the defendant presently or at any time within three years

prior to commencement of this suit at their other Applebee's locations for

purposes of permitting plaintiffs to engage in discovery in an attempt to

detect the existence of a common policy or practice in order to renew their

application for collective action certification.

B.    Rule 23 Class Certification

Both in their complaint and through the pending motion, plaintiffs

request class certification with regard to certain of their claims under Rule

23 of the Federal Rules of Civil Procedure.  That class certification is

sought in connection with the first five causes of action set forth in

plaintiffs' complaint, all alleging violations of the New York Labor Law, with

a separate subclass identified for each claim.  Defendants oppose

plaintiffs' application, arguing that the prerequisites for class certification

have not been met.

The parties do not materially dispute the standard or burden of proof

associated with requests for class certification.  In this circuit the

principles informing the determination of such requests are well-settled, in

large part as a result of the Second Circuit's decision in *In re Initial Public

Offerings Security Litigation,* 471 F.3d 24 (2d Cir. 2006).  At the outset, to

qualify for class certification a party must meet the requirements of Rule

23(a) by demonstrating that 1) the proposed class is "so numerous that

joinder of all members is impracticable"; 2) the case presents "questions

of law or fact common to the class"; 3) the class will be represented by

parties whose claims or defenses are "typical to the claims or defenses of

27

the class"; and 4) the class will be represented by parties who "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *see In re Initial Public Offerings Securities Litigation*, 471 F.3d at 33.  In addition, to qualify for certification a party must also meet one of the requirements of Rule 23(b), which sets out the different varieties of class actions available under the rule.  *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *Thompson v. Linvatech Corp.,* No. 6:06-CV-00404 (MPM/GJD), 2010 WL 2560524, *3 (N.D.N.Y. June 22, 2010) (McCurn, S.J.).  To qualify for certification, the plaintiff must meet each of the Rule 23 requirements by a preponderance of the evidence.  *Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202-05 (2d Cir. 2008).

Unlike its FLSA collective action counterpart, the certification decision under Rule 23 requires "rigorous analysis."  *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364 (1982).  Significantly, the Supreme Court has noted that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 160, 102 S.Ct. 2364 (internal quotation marks omitted).  In *In re Initial*

*Public Offering*, recognizing the uncertainty in some quarters regarding its

prior holdings, the Second Circuit articulated the following guidelines for

deciding class certification motions:

> (1) a district judge may certify a class only after making
> determinations that each of the Rule 23 requirements has
> been met; (2) such determinations can be made only if the
> judge resolves factual disputes relevant to each Rule 23
> requirement and finds that whatever underlying facts are
> relevant to a particular Rule 23 requirement have been
> established and is persuaded to rule, based on the relevant
> facts and the applicable legal standard, that the requirement is
> met; (3) the obligation to make such determinations is not
> lessened by overlap between a Rule 23 requirement and a
> merits issue, even a merits issue that is identical with a Rule
> 23 requirement; (4) in making such determinations, a district
> judge should not assess any aspect of the merits unrelated to
> a Rule 23 requirement; and (5) a district judge has ample
> discretion to circumscribe both the extent of discovery
> concerning Rule 23 requirements and the extent of a hearing
> to determine whether such requirements are met in order to
> assure that a class certification motion does not become a
> pretext for a partial trial of the merits.

*Id.* at 41.

As with their collective action motion, to support their request for

class certification plaintiffs rely upon their complaint, which while verified

by the five named plaintiffs sets forth many allegations made only "upon

information and belief", as well as form reply affidavits from four of the five

plaintiffs, including Ann Marie Rudd, Melissa Longo, Matthew Roach, and

Garrett Titchen, disclosing limited information regarding their periods of

employment with the defendants, and affidavits from two non-parties,

Todd Martens and Kristina Apple, similarly limited in scope.

Given the number of locations and employees at each restaurant it

appears that there may be as many as 5,300 putative class members

falling within one or more of the five subclasses of Class I, with

considerable overlap and many members common to all five. *See*

Complaint (Dkt. No. 1) ¶ 24.  Plaintiffs' motion therefore appears to satisfy

the numerosity requirement of Rule 23(a).

The remaining three elements of Rule 23(a), however, are seriously

in doubt.  While plaintiffs' amended complaint suggests the existence of

policies or offending practices under the New York Labor Law extending

to all of the defendants' restaurants, each of the named plaintiffs was

principally employed at a single Applebee's location in Binghamton, New

York.  It is true that the affidavits of Ann Marie Rudd, Matthew Roach,

Todd Martin, and Kristina Apple reference working at other of defendants'

locations where similar practices apply, widening the number of the

restaurants potentially implicated to those in Elmira, Ithaca, Cortland,

Vestal, Painted Post, North Syracuse, Clay, DeWitt, and Auburn, for a

total of ten stores out of the fifty-three New York locations.

In their opposition to plaintiffs' class certification motion defendants have submitted the declaration of Susan Sabio, the company's Director of Human Resources, in which she states that defendants' New York locations are managed by different individuals with varying levels of experience, have different sales volumes, and are not identical in size. Defendants also offer the affidavits of nine different managers of various Applebee's locations, all of whom dispute that the unlawful practices alleged have occurred in their locations.  Having weighed the competing evidence against the backdrop of plaintiffs' burden to show qualification for class action treatment of their claims, I conclude that plaintiffs have failed to establish by a preponderance of the evidence that they can meet the requirements of commonality and typicality set forth in Rule 23(a)(2) and (3).

The parties' submissions also raise serious questions regarding adequacy of plaintiffs' representation of the proposed Rule 23 sub-classes.  In an effort to satisfy the requirements of Rule 23(b), plaintiffs have designated the class as being certifiable under Rule 23(b)(2), which focuses upon the availability of injunctive and declaratory relief to the

class as a whole.[11]  Fed. R. Civ. P. 23 (b); *Brown*, 609 F.3d at 476.  In this

instance, each of the named plaintiffs is no longer employed by the

defendants, and as such lacks standing to request the issuance of

injunctive relief.  *See Brown*, 609 F. 3d at 482 (certification of plaintiff

class improper where injunctive relief not appropriate as to the class as a

whole); *Charrons v. Pinnacle Group N.Y. LLC*, No. 07 Civ. 6316, 2010 WL

1752501, at *5 (S.D.N.Y. Apr. 7, 2010) ("Former tenants, even if they were

subjected to Defendants' alleged tactics and/or wrongfully evicted, would

not benefit from prospective injunctive relief.  Thus, they are not properly

part of a [Fed. R. Civ. Pr. 23] (b)(2) class.").  With their obvious interest in

obtaining remedial relief for past violations in the form of monetary

compensation, the named plaintiffs are not well-suited to represent the

interests of current employees who stand to realize as much or more

benefit by the issuance of injunctive relief.  The manifest inadequacy of

the plaintiffs as representatives of a putative (b)(2) class therefore

---

[11]    That portion of the rule provides that class certification is appropriate if

the party opposing the class has acted or refused to act on
grounds that apply generally to the class, so that final
injunctive relief or corresponding declaratory relief is
appropriate to the class as a whole.

Fed. R. Civ. P. 23(b)(2).

presents yet another, independent reason for denying plaintiffs' motion for

class certification.[12]  *See Charrons*, 2010 WL 1752501, at *5.

Plaintiffs' pursuit of money damages also gives rise to additional

basis for denial of their class certification motion.  Courts have held that

"class actions may be maintained pursuant to Rule 23(b)(2) only in those

cases in which the primary relief sought is injunctive or declaratory".

*Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 478 (E.D.N.Y. 2001) (citing

*Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998); *Eisen*

*v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir.1968); Fed.R.Civ.P. 23,

Advisory Committee Notes (stating that Rule 23(b)(2) "does not extend to

cases in which the appropriate final relief related exclusively or

---

[12]     The basis for plaintiffs' class certification motion are those claims alleged in the complaint seeking redress for violations of the New York Labor Law, including section 663, among others.  Those aggrieved by a willful violation of the New York Minimum Wage Act may recover liquidated damages equivalent to twenty-five per cent of unpaid wages found to be due them.  N.Y. Labor Law §§ 198(1)-a, 663.  However, "under New York Law they cannot do so as part of a class action."  *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y. 2001) (citing N.Y.C.P.L.R. § 901(b)).  As a result, those affected must be given an option: to gain the convenience of class membership and forego any claim for liquidated damages or to opt out and sue individually, and some courts have determined that Rule 23(b)(3) provides a superior mechanism to accommodate this opt-out procedure.  *Ansoumana*, 201 F.R.D. at 88.  In view of the availability of liquidated damages, therefore, it appears that Rule 23 (b)(2) certification of plaintiffs' New York Labor Law claims may be inappropriate, providing yet another potential reason for denial of plaintiffs' request for Rule 23(b)(2) certification.

predominately to money damages")); *see also Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir.1999) (holding that "[w]hen substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out."); *Weigmann v. Glorious Food, Inc.*, 169 F.R.D. 280, 288 (S.D.N.Y.1996) (providing that Rule 23(b)(2) was intended to assist litigants seeking wide-spread institutional reform through injunctive and/or declaratory relief) (citation omitted).  Because it seems clear that the named plaintiffs would be predominantly interested in money damages, their request for certification pursuant to Rule 23(b)(2) also should be denied on this basis.

In sum, as was the case with respect to their FLSA collective action certification, plaintiffs' request for class certification under Rule 23 is premature and not presently well-supported.  I therefore recommend that the motion be denied.  In order to allow the plaintiffs a fair opportunity to develop the information needed to support a plausible class certification motion, however, I recommend that they be permitted to engage in discovery, initially focusing upon the Rule 23 elements for establishing a basis for class certification, and to renew their application for certification at a later date, if desired.

C.    Collective Action Notice

The last issue to be addressed is the form of a notice to be sent for collective action purposes to potential opt-in plaintiffs apprising them of the pendency of this action and their right to join as opt-in plaintiffs. Section 216(b) manifests a preference that when collective action certification is granted, the court sanction a carefully-controlled notice to be provided to potential putative plaintiffs, rather than permitting unregulated solicitation efforts to secure joinder by those individuals.  *See Ruggles*, 591 F. Supp. 2d at 163-64.  The court-supervised notice feature of section 216(b) helps to ensure that employees receive accurate and timely notice regarding the pendency of a collective action in order to allow them to make a reasoned decision regarding whether or not to participate.  *Lynch,* 491 F. Supp. 2d at 371 (citing *Hoffman-La Roche*, 493 U.S. at 170, 110 S. Ct. at 486).

The parties will be directed to negotiate concerning the contents of a notice to potential opt-in plaintiffs that would be acceptable to the court and consistent with the mandates of section 216(b).  If the parties are unable to reach agreement, then the court stands ready to draft its own notice, guided by the parties' counter proposals.

35

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiffs' application for collective action certification under the

FLSA and for class certification under Rule 23, filed virtually

simultaneously with commencement of this action, is premature and

deficient.  Addressing first the FLSA collective action request, plaintiffs

have failed to sustain even their modest burden of showing, at this early

juncture, that they and the proposed opt-in plaintiffs are similarly situated

for purposes of the FLSA violations alleged in their complaint, except as to

those of defendants' employees assigned to work at their Front Street

location.  Turning to the Rule 23 class certification motion, plaintiffs'

submissions fail to show, by a preponderance of the evidence, that they

can meet the commonality, typicality, and adequacy of representation

elements of the Rule 23(a).  Accordingly, it is hereby respectfully

ORDERED, that certification of this action as a collective action for

purposes of the FLSA be GRANTED, in part, but otherwise DENIED, and

that the persons authorized to opt-in as collective action plaintiffs include

those falling within one or more of the following classes:

> Class II: All employees of the defendants working at their Front
> Street location, or who worked at that location at any time within
> three years prior to commencement of this action, who were not paid
> regular and/or overtime compensation for all the hours to which they

were entitled, including but not limited to those hours as articulated in the Third, Fourth, and Fifth Claims for Relief, when such time was compensable time subject to the regular time and overtime provisions of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 216 (Seventh Claim for Relief).

Class III-A: All employees of the defendants working at their Front Street location, or who worked at that location at any time within three years prior to commencement of this action, classified by defendants as exempt "bona fide executive" employees who were not paid overtime compensation, and who were actually non-exempt employees where such time was compensable under the regular time and overtime provisions of the FLSA pursuant to 29 U.S.C. §§ 206, 207, 213(a)(1), 216 and 29 C.F.R. §§ 541.100 and 779.401-404 (Eighth Claim for Relief); and

Class III-B: All employees of the defendants working at their Front Street location, or who worked at that location at any time within three years prior to commencement of this action, classified by defendants as exempt employees who were not paid overtime compensation, but, who were not paid on a "salary basis" as that term is defined at 29 C.F.R. §§ 541.600-606, and, therefore, were non-exempt employees where such time was compensable under the regular time and overtime provisions of the FLSA pursuant to 29 U.S.C. §§ 206, 207, 213(a)(1), 216 and 29 C.F.R. §§ 541.600-604 (Ninth Claim for Relief);

and it is further

RECOMMENDED that plaintiffs' motion for Rule 23, class certification with regard to their claims under the New York Labor Law (Dkt. No. 13) be DENIED, without prejudice, and that plaintiffs be permitted to engage in discovery initially focused on both certification

issues in the case; and it is further

ORDERED that the parties negotiate and submit to the court, within thirty days, either a form collective action notice acceptable to both parties or, alternatively, counter-proposed language for inclusion in such a notice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      January 4, 2011
            Syracuse, NY