```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------x
ANN MARIE RUDD, MATTHEW ROACH,
MELISSA LONGO, JENNIFER DOTY,
and GARRETT TITCHEN,

                        Plaintiffs,

vs.                                    10-CV-591

T.L. CANNON CORP., d/b/a APPLEBEES;
T.L. CANNON MANAGEMENT CORP.; TLC WEST, LLC;
TLC CENTRAL, LLC; TLC UTICA, LLC;
TLC EAST, LLC; and TLC NORTH, LLC;
DAVID A. STEIN, Individually and as Owner
and Chairman of T.L. Cannon Corp. and as
Director and Chairman of T.L. Cannon
Management Corp.; MATTHEW J. FAIRBAIRN,
Individually and as Owner and President
of T.L. Cannon Corp. and as Director and
Chief Executive Officer of T.L. Cannon
Management Corp.; and JOHN A. PERRY,
Individually and as Vice-President and Director
of Operations of T.L. Cannon Corp. and as
President of T.L. Cannon Management Corp.,

                        Defendants.
-------------------------------------x
```

Transcript of *Digitally Recorded Telephone Conference* held on April 12, 2011, at the James Hanley Federal Building. 100 South Clinton Street, Syracuse, New York, the HONORABLE DAVID E. PEEBLES, Magistrate-Judge, Presiding.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13260*
*(315)234-8546*

A P P E A R A N C E S

| | |
|---|---|
| For Plaintiffs: | O'HARA, O'CONNELL & CIOTOLI<br>Attorneys at Law<br>7207 East Genesee Street<br>Fayetteville, New York 13066<br>  BY:  FRANK S. GATTUSO, ESQ.<br><br>JEFFERSON LEWIS BOCES<br>Attorney at Law<br>20104 State Route 3<br>Watertown, New York 13601<br>  BY:  DOMINIC S. D'IMPERIO, ESQ. |
| For Defendants: | LITTLER, MENDELSON LAW FIRM<br>Attorneys at Law<br>900 Third Avenue<br>New York, New York 10022<br>  BY:  CRAIG R. BENSON, ESQ.<br>       ELENA PARASKEVAS-THADANI, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13260*
*(315)234-8546*

1              THE CLERK:  Hi.  This is Shelly with Judge
2     Peebles' chambers.  We're recording this conference call.
3     Case is Ann Marie Rudd, et al. versus T.L. Cannon Corp., et
4     al.; 10-cv-591.  Please note your appearances for the record.
5              MR. GATTUSO:  Frank Gattuso for the plaintiff.
6              MR. D'IMPERIO:  Dominic D'Imperio for the
7     plaintiff.
8              MR. BENSON:  Craig Benson for defendant.
9              MS. PARASKEVAS-THADANI:  Elena
10    Paraskevas-Thadani for defendant.
11             THE COURT:  Good morning.  This is Judge
12    Peebles.  I understand that we have three agenda items for
13    this morning and I also wanted to discuss the contents of the
14    counter-proposed notices to be sent to putative opt-in class
15    members.
16             The first issue that the parties have raised
17    and briefed concerns whether defendants counsels' contact
18    information should be included in the notices.  The issue was
19    ably briefed.  Is there anything additional that you would
20    like to say from the defendants' point of view regarding this
21    issue, Mr. Benson or Ms. Paraskevas-Thadani?
22             MS. PARASKEVAS-THADANI:  Our position is in
23    our papers, Your Honor.  To summarize, what's fair is fair.
24    They're not clients of the plaintiffs' counsel until they
25    opt-in and they certainly have a right to inquire of anybody

1  for additional information.
2              THE COURT:  Well, as you know, this is an
3  issue which has somewhat split the courts.  I addressed it
4  previously in the three hospital cases and I agreed with
5  those courts, including *Ahle against Veracity Research Co.*
6  that considered the issue and found that the limited, if any,
7  utility to be served in notifying potential opt-in plaintiffs
8  of the identity of defendants' counsel is outweighed by the
9  confusion that it might engender.  And so I will deny
10 defendants' request to have that information included in the
11 notice.
12             The second issue relates to whether or not
13 plaintiff should be provided with telephone numbers of
14 potential opt-in plaintiffs.  Would someone, Mr. Gattuso or
15 Mr. D'Imperio, like to address why the need for those, that
16 information?
17             MR. GATTUSO:  I believe the reason behind
18 ordering the disclosure of names and addresses is for
19 plaintiffs' counsel contact the putative plaintiffs, gather
20 additional information and make the certification motion
21 again at the appropriate time.  Disclosing telephone numbers
22 can only help us accomplish that goal in reaching and doing
23 it quicker.  And this was all pointed out by the courts that
24 have allowed telephone numbers to be disclosed.  In the
25 hospital cases when Your Honor did not allow telephone

1  numbers, that was a different point in the litigation.  The
2  class was already certified and notices were being mailed
3  out.  I would agree that I don't know that telephone numbers
4  needed to be disclosed with a list of names and addresses for
5  the mailing to go out to, but the purpose of getting us
6  contact information is to quickly gather information, go back
7  to the court, expedite the whole process and move this along.
8  And providing telephone numbers is just another means to make
9  that happen quicker.  It does not cause any additional
10 difficulty for the defendant.  This information has got to be
11 in the same place in the file as the names and addresses and
12 it just further serves the purpose of the names and addresses
13 being disclosed.
14            THE COURT:  What is the defendants' position?
15 Why the opposition to supplying this information?
16            MS. PARASKEVAS-THADANI:  Your Honor has
17 already ordered defendants to produce the list of names and
18 addresses of all the members of the collective class.  In
19 addition, the names and addresses of the individuals, you
20 know, outside of the class.  In those two hospital cases,
21 Your Honor, in *Fengler* and *Colozzi*, the Court ordered the
22 production of phone numbers of people already in the
23 collective class, so -- I'm sorry, denied the production of
24 phone numbers of people already in the collective class.
25 Here plaintiffs are seeking phone numbers of people who are

1   beyond what the court has recognized as the collective
2   action.  So there is even less of a reason and more of a
3   privacy concern here to release this information of our
4   employees.
5              THE COURT:  Well, let me inquire.  But the
6   decision of Judge McAvoy based on my report and
7   recommendation concerning class certification left open the
8   possibility of revisiting the issue and expressly provided
9   for discovery.  To address the issues associated with the
10  Rule 23 request, why wouldn't it be far more efficient and
11  expeditious to permit the use of telephonic communications
12  rather than require the plaintiffs' counsel to make written
13  contact and then request telephone numbers directly from the
14  persons whose names are supplied?
15             MS. PARASKEVAS-THADANI:  I mean, is the Court
16  suggesting that the phone numbers would be for people
17  outside, only outside of the collectively recognized class,
18  or for everybody?  I mean, because the Court has previously
19  addressed this and denied it, and I don't see any more of a
20  need here.  In fact, there is less of a need.
21             THE COURT:  Well, let me see.  I guess I have
22  to go back to the plaintiffs' motion to see what they're
23  requesting.
24             MR. GATTUSO:  Your Honor, I'm a little
25  confused on when we ever requested telephone numbers before.

1  We made a motion to certify the class and the Court denied
2  that without prejudice and gave us time to gather additional
3  information to go back and make the motion again and to
4  accomplish that order that names and addresses be disclosed.
5  We are now for the first time requesting telephone numbers in
6  addition to that.  So, I'm confused about the argument there
7  that this has been addressed and denied in the past.
8              THE COURT:  I think counsel was referring to
9  my decisions in *Fengler* and *Colozzi*.
10             MR. GATTUSO:  Okay.
11             MS. PARASKEVAS-THADANI:  That's correct.
12             MR. GATTUSO:  If I can add one more point on
13 this?  There is a rolling statute of limitations, and the
14 longer it takes for the class to be certified and to get
15 opt-in notices out there, the more greater the prejudice to
16 the putative class members.  So besides a logistical concern,
17 there is also a concern for potential damages to be for
18 putative class members.
19             THE COURT:  In answering defendants' counsels
20 question, I'm not sure that your letter dated March 28, 2011
21 is clear on whose telephone numbers you are requesting.  Can
22 you enlighten me?
23             MR. GATTUSO:  The putative class members, the
24 same individuals that the names and address will be
25 disclosed, the employees outside of the Front Street store,

1  basically.
2              THE COURT:  So, this goes beyond what has been
3  ordered to date as the scope of the FLSA opt-in class?
4              MR. GATTUSO:  Yes.  The order from the Court,
5  as I read it, I think we're all in agreement and defense
6  counsel is in agreement with this, the order was you certify
7  the Front Street store and we're going to be mailing opt-in
8  notices to those folks, and you had ordered disclosure of
9  names and addresses for all employees of the defendants
10 across their entire company who fit the class description,
11 and we're asking in addition to names and addresses, their
12 telephone numbers.  So we're not asking for information for
13 individuals that hasn't already been ordered; it's just
14 additional information for the same individuals covered
15 previously.
16             THE COURT:  Right, I understand.  Well, I note
17 that, as I said previously, Judge McAvoy's decision adopting
18 my recommendation and denying in large part -- well, denying
19 totally the Rule 23 class certification clearly contemplated
20 additional discovery, and I think to facilitate and expedite
21 communications and gathering of information that would be
22 used potentially by the plaintiffs' counsel to renew the
23 application for class certification or for a broader
24 definition of an opt-in class under the FLSA, I think that
25 providing telephone numbers makes sense.

1               Admittedly, I did address the *issue in Fengler*
2     and *Colozzi*.  I'll note that in that case Judge Hurd
3     suggested that he may have gone the other way but he did not
4     find clear error, and clearly Judge Sand in *Whitehorn against*
5     *Wolfgang's Steakhouse, Inc.* disagreed with me.  In that case
6     my concern really was we were at a stage where notices were
7     being sent out to FLSA opt-in plaintiffs, potential opt-in
8     plaintiffs, and I was very concerned about the court being
9     able to control communications that were going to potential
10    opt-in plaintiffs during this delicate stage.  And I felt
11    that if telephone numbers were utilized and oral
12    communications followed, it would be -- it would be
13    difficult, if not impossible, for the Court to control as
14    distinct from seeing what written communications were
15    exchanged with potential plaintiffs.  I don't see that same
16    concern here.  The primary goal and objective, as I hear it,
17    is to gather information to support or renew class
18    certification motions.  So I will grant plaintiffs' request
19    to be provided not only with names and addresses, but also
20    telephone numbers.
21              The third issue relates to attorney D'Imperio,
22    and I was a little unclear as to what precisely defendants
23    were asking.  Can you explain to me what relief you would
24    like me to afford at this stage in the litigation?  You don't
25    apparently seek disqualification formally as of yet.  What

1    kind of an order would you like me to issue?
2                    MS. PARASKEVAS-THADANI:  Your Honor, we don't
3    seek disqualification of the firm at this time but we would
4    like attorney D'Imperio walled off from the case.  He is
5    actually, despite plaintiffs' submissions, he would be
6    precisely the type of witness that we would like to speak to
7    because he held various positions in various stores.  To the
8    extent that he has information that would show that there is
9    no violation, the violations alleged by plaintiff, we would
10   respectfully submit that there is a conflict there.  And if
11   there are violations, and Your Honor knows very well with
12   these cases they're often at the local level and they were in
13   the hands of local leadership, and we would be entitled to
14   explore these issues with a witness like attorney D'Imperio.
15   So we would like him personally, not the entire firm at this
16   time, from being permitted from working on the case.
17                   THE COURT:  Well, but you would agree, would
18   you not, that it doesn't appear that Mr. D'Imperio worked as
19   a managerial level employee for the defendants at any time
20   during the relevant period?  He last worked as a manager
21   apparently in August of 2004?
22                   MS. PARASKEVAS-THADANI:  Yes, Your Honor, that
23   is correct.  According to my records as well, 2004 was the
24   last time he served as a manager, right.  But under the state
25   claims there is a six-year statute of limitation, and he

1  would be a good witness to tell us what he was telling his
2  employees to do as to his state claims.  So this kind of
3  brings us beyond the state collectively certified actions and
4  helps us focus on the larger actions as a whole.  They have
5  raised state claims with respect to the statute of
6  limitations.
7              THE COURT:  So, to be clear you actually are
8  seeking disqualification at this juncture of attorney
9  D'Imperio, although not the firm?
10             MS. PARASKEVAS-THADANI:  Correct.
11             THE COURT:  And do you contend that
12 Mr. D'Imperio was privy to any attorney/client confidences
13 during the time that he worked for the defendants?
14             MS. PARASKEVAS-THADANI:  Not at this time,
15 Your Honor.  I don't believe that he has.  But certainly as a
16 manager he may have been -- he was definitely privy to
17 material that was solely for managers to practices that we
18 will be claiming and that we've shared with opposing counsel
19 that we believe was in manager's hands, and he would also be
20 privy as a witness not necessarily who had information
21 concerning attorney/client communication but as a witness who
22 worked on and off in several locations.  He is precisely the
23 type of person we would want to speak to.
24             MR. D'IMPERIO:  If I may, Your Honor.  First I
25 want to clear up what I think is a misconception or a

1  misunderstanding here.  The complaint in this case, the state
2  law claims that are alleged in the complaint with the
3  six-year statute of limitations, are all hourly employee
4  claims.  The only manager claims in this complaint are the
5  FLSA claims.  So the statute of limitations is two years,
6  three years if we can prove willful conduct.  So as a manager
7  I do not fall within the statute of limitations.
8           As far as what I did as an hourly employee,
9  there is just no way around the fact that I worked as an
10 hourly employee.  I was not privy to any potentially personal
11 or confidential information.  As I represented in the letter
12 we sent to the court, I completely waived any right
13 whatsoever that I have to recover as a potential or putative
14 class member in this case, specifically because the named
15 party plaintiffs in this case came to me and asked me for my
16 advice as an attorney.  I have no decision-making process or
17 authority whatsoever in this firm.  I have no part whatsoever
18 in this firm's decision whether to or not to take this case.
19           But at the end of the day the plaintiffs chose
20 to talk with me and to ask me to help represent them in this
21 action.  And frankly, it's our position that that choice is
22 what is being implicated in the defendant's motion to
23 disqualify.  Just to be clear, under the model rules now in
24 effect in New York State, a disqualification to me operates
25 as a disqualification to this firm, and it is our position

1   that the defendants can't have it both ways.  They can't
2   choose to wall me off but also gain the benefit of my
3   decision to waive my participation in the class but then
4   claim that they're not seeking total disqualification of the
5   firm.
6               THE COURT:  I'm not sure I agree with that.  I
7   know that under the Code of Professional Responsibility I
8   seem to recall that New York did not recognize the
9   effectiveness of we used to back in the day call it a Chinese
10  wall, but that's no longer politically correct, so we'll call
11  it an ethical wall.  But Rule 3.7 of the New York Rules of
12  Professional Conduct distinguish between circumstances under
13  which a lawyer cannot act as an advocate and a lawyer who is
14  in a firm where another lawyer is likely to be called as a
15  witness, they're not coextensive.
16              MR. D'IMPERIO:  I would agree with that, Your
17  Honor.  But I also believe, and I don't remember the exact
18  number, but I believe it's Rule 7.4, the ultimate issue comes
19  down to the fact that this is a small firm, there is six
20  attorneys in this firm.  To wall me off from a participation
21  in this case is effectively eliminating 20 percent of this
22  firm's manpower to be able to litigate this case.  And this
23  isn't a situation of, you know, of a law firm that involves
24  forty attorneys and walling me off is a simple act of just
25  not discussing this case with me.  You know, so that would be

1  our first.  But at the end of the day we also believe that
2  what this really boils down to is the advocate witness rule
3  that the defendants are advocating for and under the Advocate
4  Witness Rule the Court of Appeals has clearly said I have to
5  have unique or particularized knowledge that is also against
6  my client's interests.  Defendants assume that the
7  information that I have will be supportive of their position
8  that there were no violations.  And I'm not indicating one
9  way or another whether that's the truth or not, but they
10 don't have any evidence that that's the case to justify that
11 type of disqualification.
12             THE COURT:  Well, your participation in the
13 case certainly raises some issues, you would have to agree.
14 And I'm not sure I agree with your assessment as to your
15 involvement dating back six years under the state law
16 provision, because as a manager directing the hourly
17 employees and telling them what they can and cannot do, you
18 might actually be a witness in connection with the hourly
19 class members' state law claims.  But be that as it may, this
20 is the type of motion that I don't favor; it's the type of
21 motion the Second Circuit doesn't favor.  I have to consider
22 the potential interference with a plaintiff's choice of
23 counsel and I don't feel that I have a sufficient record
24 before me at this juncture to find a basis to disqualify
25 Mr. D'Imperio from working on this case.

Case 3:10-cv-00591-TJM-DEP   Document 81   Filed 07/13/12   Page 15 of 20

15

1                    So, at this point I'm going to deny what I
2    gather is a request for disqualification of attorney
3    D'Imperio without prejudice to defendant's right to reapply
4    to the Court on a fuller record.  And if that application is
5    made, I would want more thorough briefing and I would want
6    oral argument because this is an issue that I'm sensitive to
7    from both perspectives.  I'm sensitive to the potential for
8    conflict, I'm also sensitive to the potential for abuse when
9    this type of motion is brought.  So the motion is denied at
10   present without prejudice.
11                   The last issue that I wanted to address was
12   the notice issue.  I have before me two form notices that
13   appear similar but not identical, and my question is, are you
14   folks at an impasse or do you foresee the ability to agree
15   between yourselves on a notice to be sent so that we can move
16   this case forward?
17                   MR. GATTUSO:  Your Honor, I think the last two
18   issues were addressed this morning, so I think we're okay,
19   unless Mr. Benson or Mrs. Paraskevas-Thadani thinks there is
20   something else.
21                   THE COURT:  Well, there is additional
22   language.  Here's how I would handle, there is one issue that
23   I tend to agree with.  Despite what I just ruled, I'm a
24   little hinky about -- and that's a legal term of art,
25   hinky -- with having Mr. D'Imperio's name appear on these

1  notices.  The way I would handle would be to simply
2  eliminate -- since you're a small firm we don't have to worry
3  about notices being misdirected.  I would eliminate the names
4  of counsel and just put in the firm name and address in the
5  notice.  If we can eliminate the one issue which would be the
6  potential for Mr. D'Imperio exercising influence over
7  potential class members to join the class, the issue that was
8  kind at play in the Western District of Pennsylvania case,
9  the name of which escapes me.  So --
10              MR. BENSON:  And, Your Honor, that is in the
11 nutshell really our main problem here is the sort of undue
12 influence or, you know, I don't know exactly what the right
13 term is, but the fact that Mr. D'Imperio has in fact worked
14 for this company in the past and the effect that that will
15 have in terms of his ultimate ability to talk to class
16 members and potentially get them to be involved.  If an
17 attorney says, oh, I worked there too, I know about A, B and
18 C, you know, that's just not contemplated as part of the
19 representational process and it's difficult to quantify what
20 effect that will have.  But I think that's exactly the type
21 of thing that these rules try to get at and that's really
22 what causes us more concern than anything else is the notion
23 that as a result of his past involvement with the company
24 that he is suing and in bringing a lawsuit claiming that
25 those -- that that company is engaging in unlawful practices,

1  it's as if he has inside information to that effect and it's
2  not sitting well with me at all, and the potential here for
3  abuse is really problematic.
4              MS. PARASKEVAS-THADANI:  Especially, Your
5  Honor, to supplement what my colleague just said, if he is
6  going to be making phone calls now, it's not written
7  communication that was easily produced and that we could see
8  what was said.  It's basically bordering on solicitation,
9  which the courts have found improper, and it's legitimizing
10 the lawsuit; hey, remember me, it's Dominic, I used to work
11 there, and I can only imagine how else the conversation is
12 going to go, especially with the phone calls to people
13 outside of the collective class, so it is problematic.
14             THE COURT:  I understand your concern.  I had
15 a similar concern in the hospital cases and Judge Hurd found
16 that the First Amendment rights overrode my concerns, so --
17             MR. BENSON:  Well, in those cases, though, did
18 you have an attorney on the line who had, you know, again
19 this inside information, this knowledge of the inner workings
20 of the defendant, you know, who in this case he is trying to
21 sue?  I mean, I know if I was a potential plaintiff, that
22 would be meaningful to me.
23             THE COURT:  Well, I understand what you're
24 saying, and the only, at this point the only relief I'm going
25 to grant is that I am going to direct that Mr. D'Imperio's

1  name not appear in the notices.  I've given you the option,
2  you have my permission to file a formal motion to disqualify,
3  and if and when that motion is made we'll have briefing and
4  argument.
5              The other issue looking at plaintiffs' notice,
6  Judge McAvoy's name should be taken out at the end because I
7  will be the one that will be approving the contents of the
8  notice, so I don't think that we need to put a judge's name
9  there.
10             I also agree with plaintiffs that the no
11 retaliation provision is important and I did, in fact,
12 include that in the hospital cases.  I think that's fair for
13 balance.  I think those were the only major differences.
14 There were language differences that were fairly minor.
15             Can I ask that you folks confer and attempt
16 by, say, Monday, April 18th, to either agree or if you
17 disagree to send me counter-proposed versions and I will
18 either pick one or draft my own so that we can get this case
19 moving forward?
20             MR. GATTUSO:  That's fine with plaintiffs,
21 Your Honor.
22             THE COURT:  Okay.  Does that give defendants
23 enough time?
24             MR. BENSON:  Yes, that's fine, Your Honor.
25             MS. PARASKEVAS-THADANI:  Yes.

```
 1              THE COURT:  I'll issue a short form order
 2   memorializing my decision today and incorporating my bench
 3   ruling, which has been digitally recorded.  You obviously
 4   have a right to appeal my ruling on any of these issues to
 5   Judge McAvoy.  And we have a Rule 16 conference for May 12,
 6   so I'll be seeing you then in Syracuse and we can discuss in
 7   depth how this case is going to proceed.  All right?
 8              MR. BENSON:  Thank you.
 9              MR. GATTUSO:  Thank you, Your Honor.
10              MS. PARASKEVAS-THADANI:  Thank you.
11                   *              *              *
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T I O N

       I, EILEEN MCDONOUGH, RPR, CRR, Official Court Reporter in and for the United States District Court, Northern District of New York, DO HEREBY CERTIFY that I transcribed the foregoing proceedings from a digital recording, and that the foregoing is a true and correct transcript thereof.

_____
EILEEN MCDONOUGH, RPR, CRR
Official U.S. Court Reporter