**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MATTHEW ROACH, MELISSA LONGO,**
**GARRETT TITCHEN, and CHRISTINA**
**APPLE,**

                              **Plaintiffs,**

                                                              **3:10-CV-0591 (TJM/DEP)**

          **v.**

**T.L. CANNON CORP., d/b/a Applebee's,**
**T.L. CANNON MANAGEMENT CORP.,**
**TLC WEST, LLC, TLC CENTRAL, LLC,**
**TLC UTICA, LLC, TLC EAST, LLC, TLC**
**NORTH, LLC, DAVID A. STEIN, MATTHEW**
**J. FAIRBAIRN, and JOHN A. PERRY,**

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                              **DECISION & ORDER**

**I.      INTRODUCTION**

          The plaintiffs in this action, all former employees of the defendants, have

commenced this action, styled as a Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et

seq., and New York State Labor Law collective and class action, against the operators of

approximately fifty-three Applebee's Neighborhood Grill and Bar Restaurants

("Applebee's") throughout New York State. In their complaint Plaintiffs allege the existence

of systemic policies and practices in place at defendants' restaurants resulting in violations

of various provisions of the New York State Labor Law and the FLSA. This action has

                                        1

been preliminarily certified as a collective action for purposes of Plaintiffs' claims under the FLSA, limited to one Applebee's location. The motion for broader FLSA collective action certification, and for Rule 23 class certification with regard to their claims under the New York Labor Law, however, was denied without prejudice.

Defendants have now moved for summary judgment pursuant to Fed. R. Civ. P. 56 seeking judgment in their favor on certain claims pertaining to the named Plaintiffs. See Mot. dkt. # 66. Plaintiffs opposed the motion, dkt. # 72, and Defendants replied. dkt. # 73. Since the submission of the summary judgment motion, Plaintiffs moved for leave to file a second amended complaint, dkt. # 90, and filed a motion for class certification pursuant to Rule 23 and for conditional certification pursuant to the Fair Labor Standards Act. See dkt. # 91. The motion to amend was granted by Magistrate Judge Peebles on the consent of Defendants. See 8/15/12 Text Ord. The Second Amended Complaint does not add new claims, see dkt. # 90-1, p. 1,[1] and the motion for class certification is currently outstanding. See 8/15/12 Text Order (granting parties' request to adjourn motion to the 9/28/12 motion calendar). This Decision and Order will be limited to the arguments presented in the motion addressed to certain claims by the named Plaintiffs.[2]

## II.   BACKGROUND

The majority of the material facts on this motion are not disputed, see Plaintiffs'

---

[1]("The Plaintiff's bring this motion to amend the complaint not to add any new claims, but rather so that the complaint accurately reflects the current status of the claims and classes sought to be certified, as well as to change the relief requested from equitable to monetary relief.").

[2]Plaintiffs' argument that Defendants' motion is premature is without merit. Each of the named Plaintiffs have been deposed, and Plaintiffs have failed to identify any additional information that they hope to obtain that would raise a genuine issue of material fact sufficient to defeat Defendants' present motion, nor have they filed an affidavit stating as much as required by Fed. R. Civ. P. 56(d).

Response to Defendants' Local Rule 7.1(a)(3) Statement, Doc. # 72-2, and such facts will be discussed where relevant below.

## III.    STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011).

## IV.    DISCUSSION

### a.  Spread of Hours Claims

The first dispute concerns application of New York's former restaurant industry "spread of hours" provision,[3] 12 N.Y.C.R.R. § 137–1.7. See Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234, 242  n. 4 (2d Cir. 2011).[4]  Section § 137–1.7 appeared in New York's Compilation of Codes, Rules and Regulations in the subpart of Chapter 12 addressed to minimum wages in the restaurant industry.  It provided: "On each day in which the spread of hours exceeds 10, an employee shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required in this Part." 12 N.Y.C.R.R.  § 137–1.7 (2010); see Shahriar, 659 F.3d

---

[3]The spread of hours is the length of the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty.

[4]"As of December 29, 2010, former N.Y. Comp. Codes R. & Regs. tit. 12, § 137–1.7 was replaced by N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.6, which also requires employers to pay employees an extra hour's pay at the minimum wage when their workday lasts longer than 10 hours." Shahriar, 659 F.3d at 242 n. 4  None of the named Plaintiffs were employed by Defendants after April 2010.

at 241-42 (Section 137–1.7 "required employers to pay servers an extra hour's pay at the regular minimum wage for each day they work more than ten hours.").

Defendants contend that § 137–1.7 applied only to employees earning at the minimum wage; Plaintiffs contend that § 137–1.7 applied to all non-exempt employees regardless of pay rate. There is no controlling authority on this issue, and case law has varied as to its interpretation of this regulation.

Plaintiffs argue that the Court should follow the reasoning of Doo Nam Yang v. ACBL Corp., 427 F. Supp.2d 327 (S.D.N.Y. 2005), and the cases that have cited Yang. In Yang, the District Court chose not to defer to an April 12, 2006 New York State Department of Labor Opinion Letter that interpreted 12 N.Y.C.R.R. § 142–2.4, an analogous provision to § 137–1.7.[5] The Opinion Letter stated that "the 'spread of hours' regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours worked at the minimum wage plus one additional hour at the minimum wage." NY DOL April 12, 2006 Opinion Letter. The Yang Court, noting that it was not bound by the New York State Department of Labor's interpretation, chose to interpret § 142–2.4 itself and held that the

---

[5] N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4 provides:

**Section 142-2.4. Additional rate for split shift and spread of hours**

An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:

    (a) the spread of hours exceeds 10 hours; or

    (b) there is a split shift; or

    (c) both situations occur.

N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4.

4

regulation was applicable to all hourly paid employees regardless of whether they made more than the minimum wage. Yang, 427 F. Supp.2d at 339-40.

As Defendants point out, however,

> a majority of the cases since Yang have disagreed as to both the holding that the plain language of the statute did not limit its applicability to minimum wage workers, Chan v. Triple 8 Palace, Inc., No. 03–CV–6048, 2006 WL 851749, at *21 (S.D.N.Y. March 30, 2006) (holding that because section 142–2.4 explicitly provides for an additional wage only "in addition to the *minimum wage*" required under New York law, "[i]t is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate") (emphasis in original), and the court's decision not to grant deference to the Department of Labor opinion letter, Seenaraine v. Securitas Security Services USA, Inc., 37 A.D.3d 700, 701–02, 830 N.Y.S.2d 728, 729 (2d Dep't 2007) ("[T]he Department of Labor's interpretation of the regulation is neither unreasonable nor irrational, nor is it in conflict with the plain meaning of the promulgated language. Thus, it is entitled to deference."). See also Almeida v. Aguinaga, 500 F. Supp.2d 366, 370 (S.D.N.Y. 2007) ("The 'exception' perceived by the Yang court is illusory: no group of well-paid workers is carved out from getting more 'minimum' pay, because the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law."); Espinosa v. Delgado Travel Agency, No. 05–CV–6917, 2007 WL 656271, at *1–2 (S.D.N.Y. March 2, 2007) ("By its plain language, section 142–2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor."); Jenkins v. Hanac, Inc., 493 F. Supp.2d 556, 558 (E.D.N.Y. 2007)(citing the statutory interpretation in Chan and the rationale for deferring to the Department of Labor from Seenaraine in concurring with the court in Espinosa that "the regulation does not ensure additional compensation to employees whose wages sufficiently exceed the minimum wage floor") (internal quotations and alteration omitted); Franklin v. Breton Int'l, Inc., No. 06–CV–4877, 2006 WL 3591949, at *4 (S.D.N.Y. Dec. 11, 2006) (holding that New York's " 'spread of hours' provision applies only to workers earning the minimum wage"); but see Cuzco v. Orion Builders, Inc., No. 06–CV–2789, 2010 WL 2143662 (S.D.N.Y. May 26, 2010) (relying solely on Yang without discussion as to the split in holding that "[u]nder the NYLL, if an employee's workday exceeds 10 hours, he must receive one additional hour's pay 'at the basic minimum hourly wage rate'").

Sosnowy v. A. Perri Farms, Inc., 764 F. Supp.2d 457, 473-74 (E.D.N.Y. 2011); see also

Carrasco v. West Village Ritz Corp., Slip Copy, 2012 WL 2814112, at *4, n. 6 (S.D.N.Y. July 11, 2012)("Most courts in this Circuit have ruled that New York's spread of hours provision applies only to employees earning minimum wage . . . ."); Berrios v. Nicholas Zito Racing Stable, Inc., No. CV 04-22, 2012 U.S. Dist. LEXIS 43290 at *43 (E.D.N.Y. March 28, 2012) (holding that limiting spread of hours pay to those employees who earned minimum wage was a correct interpretation of the law in the Second Circuit);  Li Ping Fu v. Pop Art Intern. Inc., No. 10 Civ. 8562, 2011 U.S. Dist. LEXIS 113614, 2011 WL 4552436, at *6 (S.D.N.Y. Sept. 19, 2011) ("Most courts in this Circuit have ruled that New York's spread of hours provision applies only to employees earning minimum wage.").

This Court agrees with those cases that have found that New York's former spread of hours regulations applied only to workers earning at the minimum wage.  Section §137-1.7, applicable in this case, explicitly provided that spread of hours pay shall be "in addition to the *minimum wages otherwise required in this Part."* 12 N.Y.C.R.R. § 137–1.7 (emphasis added).  Giving meaning to all terms of the regulation, as the Court must when attempting to interpret the intent of the drafters, see Smith v. Donovan, 878 N.Y.S. 2d 675, 678 (1st Dept. 2009), the "in addition to the minimum wages otherwise required" language indicates that the regulation applied only to those already earning the minimum wage. This conclusion is further buttressed by the fact that §137-1.7 appeared in a subpart of title 12 addressed to minimum wages of restaurant industry employees.

The Court also does not find that the newly enacted spread of hours regulation, 12 N.Y.C.R.R. § 146-1.6, was a clarification of § 137–1.7 (as plaintiffs argue) as opposed to a

6

change in the law (as defendants argue).  See Shahriar, 659 F.3d at 242  n. 4.[6]

Furthermore, the new regulation explicitly provides that spread of hours pay "shall apply to

*all employees* in restaurants and all-year hotels, *regardless of a given employee's regular*

*rate of pay*," §  146-1.6(d) (emphasis added), thereby indicating that the drafters of the

regulations knew how to apply the spread or hours regulation to all wager earners if that

was their intention.

Therefore, the Court finds that, before January 1, 2011, the spread of hours

regulations were intended to apply only to employees earning at the minimum wage, as

interpreted by the New York States Department of Labor and the cases cited above.

Summary judgment is granted to Defendants dismissing: (a) Plaintiff Titchen's claims for

spread of hours pay for when he worked either as a cook or a key employee;[7] (b) Plaintiff

Roach's claims for spread of hours pay for when he worked as a cook;[8] and (c) Plaintiff

Longo's claims for spread of hours pay for when she worked as a key employee.[9]

**b.  Uniform and Laundering Claims**

The next dispute concerns Plaintiffs' claims under the New York Labor Law alleging

---

[6]("As of December 29, 2010, former N.Y. Comp. Codes R. & Regs. tit. 12, § 137–1.7 *was replaced by* N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.6 . . . )(emphasis added).

[7]Titchen worked for Defendants from May 2005 to August 2009, with the exception of a three month period in 2006. (Titchen Dep. 18-19, 20-22). It is undisputed that, with the exception of approximately ten shifts that he worked as a server, Titchen worked either as a cook or a key employee and earned in excess of minimum wage. (Titchen Dep. 48).

[8]Roach was hired by Defendants on May 5, 2005 as a cook and, during the five year period that Roach worked for Defendants, he worked in a variety of positions. (Roach Dep. 81).  It is undisputed that Roach always earned in excess of minimum wage working as a cook.

[9]Longo worked for Defendants from April 2005-January 2009 in a number of different positions, including server, bartender, and key employee. (Longo Dep. 14, 16).  It is undisputed that Longo always earned in excess of minimum wage when she worked as a key employee.

Defendants' failure to reimburse them for the costs of purchasing and laundering the apparel they are required to wear to work.  The parties dispute whether most of the apparel constituted parts of a uniform for which the employer was obligated to reimburse purchase and laundering costs; whether the applicable regulations applied only to employees earning minimum wage; and whether Plaintiffs are entitled to any compensation.

The undisputed evidence indicates that the named Plaintiffs worked in various positions for Defendants, with none working past March of 2010.  In all the positions they held, Plaintiffs were required to wear black, nonslip shoes that each Plaintiff purchased from various footwear retail stores or outlets.  In certain positions during certain periods of time, some Plaintiffs were required to wear shirts and baseball style caps that had the Applebee's logo.  At other times, Plaintiffs were required to wear black pants, black shirts, jeans, khaki pants, and/or plain, non-descriptive t-shirts and baseball caps.  Except for the Applebee's logo shirts and hats, Plaintiffs purchased their work clothing at various retail stores, and some already owned some items before starting work at Applebee's.  See Apple Dep.;[10] Roach Dep.;[11] Longo Dep.;[12] Titchen Dep.[13]  All four Plaintiffs washed their

---

[10]Apple wore a black button-down shirt, black slacks, black non-slip shoes, and a belt to work. (Apple Dep. 156). These items could be purchased at any store of her choosing. (Apple Dep. 152). In Apple's case, she obtained her shirts and slacks from Target (Apple Dep. 156) and her shoes from a vendor called Shoes For Crews. (Apple Dep. 157).

[11]Roach worked in a variety of positions during the five year (2005-2010) period that he worked for Defendants. His dress code evolved from 2005-2010, and varied according to position. In 2005, when he worked as a cook, Roach wore a t-shirt and cap (both with an Applebee's logo), chef pants, and black, non-slip shoes. (Roach Dep. 134-135). According to Roach, he already owned his chef pants and first pair of black shoes when he started working for Defendants (Roach Dep. 135-136), and he was provided with two t-shirts and a cap at no cost when he was hired. (Roach Dep. 132-134). Roach never paid for another t-shirt or cap. (Roach Dep. 141-142).  As of the Fall of 2006, Roach primarily worked as a server and a bartender. In these positions, Roach wore a polo shirt with an Applebee's logo and an apron, which were provided free of
(continued...)

work clothes at home, using regular laundry detergent.  None of the Plaintiffs have

submitted evidence of the costs of purchasing or laundering their work clothes.

Defendants assert that they are entitled to an Order dismissing the claims because:

(1) black, nonslip shoes are not a uniform as a matter of law; (2) the various apparel items

within Defendants' dress code (black pants, black shirts, jeans, khaki pants, and plain,

non-descriptive t-shirts and baseball caps) all may be worn as a part of an employee's

"ordinary wardrobe" and are not a uniform as a matter of law; (3) even if Plaintiffs' work

clothes are found to be "uniforms," Plaintiffs' have proffered no evidence that their wages

were reduced below minimum wage as a result of the purchase or laundering of their work

---

[11](...continued)
charge, along with black pants, a black belt, black socks, and black non-slip shoes. (Roach Dep. 137-139).
According to Roach, he never paid for a polo shirt or apron. (Roach Dep. 141-142). At some point in 2007,
the dress code changed and when Roach worked as a server or bartender, he wore a black, button-up shirt
with the same black pants, belt, shoes, and socks that he wore previously. (Roach Dep. 149). Roach could
obtain the items he wore to work from any place and chose to obtain his shirts from mainstream stores like
Bon Ton and T.J. Maxx, and his shoes from a store named ECCO. (Roach Dep. 144-145).

[12]According to Longo, she worked for Defendants from April 2004 to January 2009 (Defendants'
payroll records indicate that she was actually employed from April 2005 to January 2010) in a number of
different positions, primarily as a server, bartender, and key hourly employee. Longo testified that when she
started working for Defendants, she was given two polo shirts with an Applebee's logo, one server apron, and
one hat with an Applebee's logo, at no cost. (Longo Dep. 36). When she worked as a server, Longo wore this
polo shirt with khaki pants and black shoes. (Longo Dep. 36, 53). Longo obtained her khaki pants from Target
(Longo Dep. 47) and her shoes from Payless and Shoes For Crews. (Longo Dep. 48-49). When she worked
as a bartender, Longo wore the polo shirt with an Applebee's logo with black pants which she purchased from
Kohl's. (Longo Dep. 47-48). According to Longo, the dress code changed in 2006. (Longo Dep. 51-52). At
that point she wore a black top, black pants, black socks, and black shoes to work. (Longo Dep. 52). Longo
purchased her black tops from Kohls or Macys. (Longo Dep. 53-54).

[13]With the exception of approximately ten shifts that he worked as a server, Titchen worked either as
a cook or a key employee for Defendants from May 2005 to August 2009. (Titchen Dep. 18-19, 20-22, 47-48).
Titchen's dress code evolved throughout his employment. In 2005, when Titchen was first hired, he was given
two t-shirts and a cap with an Applebee's logo. (Titchen Dep. 50-51). He wore the t-shirt and cap with blue
jeans or khakis. (Titchen Dep. 54). According to Titchen, when he needed more caps and kitchen t-shirts, he
simply took them from the storage closet in his restaurant. (Titchen Dep. 52). Titchen never paid for any of
these items. (Titchen Dep. 52). According to Titchen, the dress code changed in late 2007 to early 2008, and
he wore whatever cap he wanted when he worked as a cook. (Titchen Dep. 61-62). When he worked as a
key employee, Titchen wore khaki pants and a polo shirt with an Applebee's logo that he had previously
taken. (Titchen Dep. 63). Titchen wore pants that he already owned to work, (Titchen Dep. 65), although he
contends that he also purchased pants for work purposes.

clothes; and (4) Plaintiffs Apple, Titchen, and Roach never purchased a shirt with an

Applebee's logo, and therefore, lack standing to bring a claim to recover for the purchase

of these shirts.

### 1.  Purchase and Laundering of Required Uniforms

"Prior to January 1, 2011, New York law provided that 'No allowance for the supply,

maintenance, or laundering of required uniforms shall be permitted as part of the minimum

wage.'" Flores v. Anjost Corp., 2012 WL 2339267, at *4 (S.D.N.Y. June 19, 2012)(quoting

12 N.Y.C.R.R. § 137–1.8 (2010)).[14]  "If an employee's uniform costs reduce his pay below

the statutory minimum wage, the employee is entitled to recover the cost of the uniform

items for which he paid and a statutory uniform maintenance allowance for all weeks in

which the employer did not provide such maintenance." Garcia v. La Revise Associates

LLC, 2011 WL 135009, at *6 (S.D.N.Y. Jan.13, 2011)(citing 12 N.Y.C.R.R. § 137–1.8);

see also Ayres v. 127 Restaurant Corp., 12 F. Supp.2d 305, 310 (S.D.N.Y. 1998)("New

York law . . . require[d] employers to compensate employees for the purchase and

maintenance of required uniforms if the employees' expenditures for these purposes

would reduce their wages to below minimum wage.").

Under applicable New York law, a "required uniform" is

> clothing worn by an employee, at the request of an employer, while performing
> job-related duties or to comply with any State, city or local law, rule or regulation. It
> does not, however, include clothing that may be worn as part of an employee's
> ordinary wardrobe.

12 N.Y.C.R.R. § 137–3.13.

---

[14]Since January 1, 2011, the law requires that employers pay for their employees' required uniforms "regardless of a given employee's rate of pay." 12 N.Y.C.R.R. §§ 146–1.7, 146–1.8.

Thus, ordinary wardrobe items that can be worn as a part of non-work apparel do not qualify as uniform as a matter of law. See Jin M. Cao v. Wu Liang Ye Lexington Restaurant, Inc., 2010 WL 4159391, at *5 (S.D.N.Y. Sept. 30, 2010)(Granting summary judgment because "[p]laintiff waiters were required to wear a white shirt, black pants, a tie, and a red vest. The only item that arguably could not have been worn as part of the employee's ordinary wardrobe, the red vest, was provided by defendants."); Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp.2d 706, 712 (S.D.N.Y. 2007) (holding that black leather shoes, white-button down shirts, black dress pants, and black socks did not qualify as a "uniform" in accordance with N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.13); but see Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp.2d 253, 293 (S.D.N.Y. 2011)(finding that it was a question of fact whether apparel constituted a uniform where restaurant captains were required to wear suits of a "shiny, Liberace style", and where busboys were required to wear black aprons and vests, the "particular brand and style" of which were "dictated" by the employer); Ramirez v. CSJ & Co., 2007 WL 700831, at *2 (S.D.N.Y. Mar. 6, 2007) ("Although I am sorely tempted, given current dress norms, to hold that a blue T-shirt bearing a deli's name and logo is 'clothing that may be worn as part of an employee's ordinary wardrobe,' the question probably is better decided by a trier of fact than as a matter of law."); Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *22 (S.D.N.Y. Feb. 1, 2007)("The uniforms that plaintiffs and other employees wear at 88 Palace, consisting of either suits or jackets, and pants, shirts, and ties of specific colors, constitute 'required' uniforms."); Ayres, 12 F. Supp.2d at 310 ("On this record, a reasonable juror could conclude that Le Madri's required outfit constituted a uniform. Although most of the articles of clothing at issue arguably 'may be worn as part of an

11

employee's ordinary wardrobe' and no specific brands are mandated, specific colors are required (black shoes and socks and white shirts)....").[15]

### 2. Shirts With Applebee's Logo

"Defendants acknowledge, for purposes of this motion only, that the issue of whether a shirt with an Applebee's logo satisfies the statutory definition of a uniform may present a question of fact.  Therefore, Defendants do not move for summary judgment at this time on whether shirts with a company logo are a uniform." Def. MOL, p. 12. However, Plaintiffs failed to address Defendants' argument that Apple, Roach, and Titchen lack standing to pursue claims for the purchase price of a shirt with an Applebee's logo because they never purchased such shirts.  Based on the evidence presented, and Plaintiffs' failure to respond to this argument, summary judgment is granted dismissing Apple, Roach, and Titchen's claims for reimbursement for the costs of purchasing shirts with an Applebee's logo.

A question of fact exists, however, on whether Apple, Roach, Longo, and Titchen's wages were reduced below the minimum wage by the costs of laundering Applebee's

---

[15]Ayres interpreted the employer-mandated wardrobe claim under New York Labor Law and the FLSA, Ayres, 12 F. Supp.2d at 310, writing:

> Although the term "uniform" is not expressly defined under federal law, the U.S. Department of Labor has suggested certain guiding principles:
>
> > If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress the garments chosen would not be considered to be uniforms.... On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work, e.g., where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms.
>
> (DOL's Wage & Hour Field Operations Handbook § 30c12(f)).

Id.  As is apparent, the federal law is more encompassing as to what constitutes a uniform.

shirts when they worked as servers or bartenders and were paid the minimum wage with a tip credit. See Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *22 (S.D.N.Y. Feb. 1, 2007)("Because, at all relevant times, plaintiffs were paid wages of no more than the New York minimum wage with a tip credit, their uniform expenses necessarily decreased their wages below minimum wage.... Accordingly, plaintiffs are entitled to recover from defendants (1) the cost of those uniform items for which they paid; [and] (2) the full statutory weekly uniform maintenance allowance for all weeks that the defendants did not offer any laundry service ..."). Although Defendants contend that clothes washing machines were available at the restaurants, Plaintiffs assert that the washing machines were not available for personal use by employees. Even though Plaintiffs could not produce receipts for the cost of their laundering, a reasonable inference could be drawn that there was some cost associated therewith and that Plaintiffs had no alternative but to launder their clothes at home. Thus, the motion is denied as to the laundering costs of Applebee's shirts.

### 3. Other Apparel Items

The Court next turns to the claims for purchase and laundering costs of the other items of work apparel. The descriptions of the other clothing items that the employer required Plaintiffs to wear in their various positions indicate, from an objective perspective, that the items are within the category of clothes "that may be worn as part of an employee's ordinary wardrobe." There is no evidence that the employer imposed any stylistic requirements of the garments other than color, or, in the case of caps and t-shirts, that they be non-descriptive. Further, the employees purchased their wardrobe items at various footwear and clothing retailers open to the general public, leading to the

13

conclusion that the items were of the nature that an objectively reasonable person would wear outside of a restaurant employment situation. While each Plaintiff might have subjectively determined not to wear the clothing outside of working hours, the New York regulation is not drafted from a subjective perspective. Thus, the non-Applebee's logo employer-required clothing items do not constitute a "uniform" within the meaning of  N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.13.  Accordingly, summary judgment is granted dismissing Plaintiffs' claims for the purchase and laundering costs of black, non-slip shoes; black pants; black shirts; jeans; khaki pants; plain, non-descriptive t-shirts; and plain, non-descriptive baseball-style caps.

## V.     CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [dkt. # 66] is **GRANTED IN PART and DENIED IN PART**. The motion is granted inasmuch as the following claims are **DISMISSED**:

(a) Plaintiff Titchen's claims for spread of hours pay for when he worked either as a cook or a key employee;

(b) Plaintiff Roach's claims for spread of hours pay for when he worked as a cook;

(c) Plaintiff Longo's claims for spread of hours pay for when she worked as a key employee;

(d) Plaintiffs Apple, Roach, and Titchen's claims for reimbursement for the costs of purchasing shirts with an Applebee's logo;

(e) Plaintiffs Apple, Roach, Longo, and Titchen's claims for the purchase and laundering costs of black, non-slip shoes; black pants; black shirts; jeans; khaki pants; plain, non-descriptive t-shirts; and plain, non-descriptive baseball-style caps.

The motion is denied in all other respects.

14

**IT IS SO ORDERED**

**Dated:** August 24, 2012

Thomas J. McAvoy
Senior, U.S. District Judge