IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MATTHEW ROACH, *et al.*,

                          Plaintiffs,         Civil Action No.
                                              3:10-CV-0591 (TJM/DEP)

          v.

T.L. CANNON CORP., *et al.*,

                          Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFFS:

THOMAS & SOLOMON LLP          ANNETTE M. GIFFORD, ESQ.
693 East Avenue                       MICHAEL J. LINGLE, ESQ.
Rochester, NY 14607                   J. MICHAEL THOMAS. ESQ.

O'HARA O'CONNELL & CIOLTOLI   FRANK S. GATTUSO, ESQ.
LAW FIRM                              DENNIS G. O'HARA, ESQ.
7207 E. Genesee St.
Fayetteville, NY 13066

FOR DEFENDANTS:

LITTLER MENDELSON, P.C.        CRAIG BENSON, ESQ.
900 Third Avenue                      ELENA PARASKEVAS-THADANI, ESQ.
New York, NY  10022-4834              ERIN W. SMITH, ESQ.

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION, AND ORDER

Plaintiffs Matthew Roach, Melissa Longo, Garrett Titchen, and Christina Apple, four of the defendants' former employees, have commenced this action against T.L. Cannon Corp., as well as several of its corporate and individual affiliates, that collectively own and operate sixty-one Applebee's Neighborhood Grill and Bar Restaurants ("Applebee's") located throughout New York and portions of Connecticut. In their amended complaint, plaintiffs assert violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") arising from the alleged existence of systemic, company-wide policies and practices in place at defendants' Appelebee's restaurants, resulting in violations of the FLSA and NYLL, and estimated to have affected thousands of current and former Applebee's employees.

Immediately upon commencement of the action, plaintiff moved for leave to pursue a collective action for purposes of their FLSA claim, and for class certification with respect to their NYLL claims, pursuant to Rule 23 of the Federal Rules of Civil Procedure. That motion resulted in a partial approval of plaintiffs' request to pursue their FLSA claim as a collective action, limited to the Applebee's Front Street restaurant. The

remaining portions of the motion, however, were denied without prejudice to renewal following discovery.

Currently before the court is plaintiffs' renewed motion for company-wide collective action FLSA certification and Rule 23 class certification with regard to the NYLL claims. For the reasons set forth below, I find that, while plaintiffs have met their modest burden of establishing the requisites for the FLSA collective action certification they now seek, they have failed to meet their more demanding burden to show that they satisfy the requirements for class action certification under Rule 23 with respect to all of their NYLL claims, with the exception of the spread of hours claim.

I.    BACKGROUND

Together, the defendants own and operate approximately sixty-one Applebee's restaurants. Amended Complaint (Dkt. No. 94) at ¶ 3. Those restaurants vary in size, sales volume, and configuration, and include fifty-three located throughout the New York, and eight in Connecticut. *Id.*; Sabio Decl. (Dkt. No. 26) at ¶ 2. Defendants opened their first New York Applebee's restaurant in 1991, in Rochester, New York. Amended Complaint (Dkt. No. 94) at ¶ 37. Among the Applebee's restaurants operated by the defendants is one located at 842 Upper Front Street,

Binghamton, New York, where three of the four named plaintiffs were employed at various times between April 2005 and August 2010. Sabio Decl. (Dkt. No. 26) at ¶¶ 1, 6, 7, 9; Apple Aff. (Dkt. No. 31-1) at ¶ 4.

Each of the defendants' New York restaurants is managed by a general manager, who is regarded as the highest ranking employee on location and supervises all other managerial and hourly workers at the facility. Sabio Decl. (Dkt. No. 26) at ¶¶ 4-5. Among the responsibilities of defendants' general managers is ensuring compliance with applicable wage and hour laws. *Id.* at ¶ 5. Some, although not all, of defendants' restaurants also have other management employees who work under the general manager, including assistant general managers, training managers, kitchen managers, and bar managers. *Id.* at ¶ 4.

The workforce at each of defendants' Applebee's locations also includes hourly employees who occupy positions typically broken down into three categories, including front of the house ("FOH") positions, back of the house ("BOH") positions, and key hourly managers ("Key"). Amended Complaint (Dkt. No. 94) at ¶ 63. BOH employees typically serve as either general utility dishwashers, prep cooks, line cooks, or expediters, all of which are non-tipped hourly positions generally paying at

4

or slightly above the prevailing minimum wage.  *Id.* at ¶¶ 64-65.  FOH positions at defendants' locations can include hosts, servers, bartenders, and carside to-go ("carside") employees; hosts and carside employees are classified as non-tipped hourly employees generally paid the minimum wage, while servers and bartenders are treated as tipped workers for wage-hour purposes.  *Id.* at ¶¶ 95-97.  Key hourly employees are those who are assigned to work regular management shifts when a particular store is either short a manager or needs coverage for a management shift for some other reason.[1]  *Id.* at ¶ 134.

The named plaintiffs in this action are all former employees, most of whom worked primarily at defendants' Front Street Applebee's location. Sabio Decl. (Dkt. No. 26) at ¶¶ 3, 6-9.  Matthew Roach worked at that location from May 2005 until March 2010 as an hourly employee, including as a server, host, carside employee, prep cook, general utility dishwasher, and expediter.[2]  Roach Aff. (Dkt. No. 30-6) at ¶¶ 3-4; Sabio Decl. (Dkt. No. 26) at ¶ 6.  Melissa Longo was employed at the Front Street restaurant

---

[1]     Key employees can also serve as approved trainers who train new employees hired by defendants.  Amended Complaint (Dkt. No. 94) at ¶ 135. These employees typically receive $0.50 more per hour during those shifts when they are engaged in training.  *Id.* at ¶ 136.

[2]     Plaintiff Roach also worked at an Applebee's in Vestal, New York. Roach Aff. (Dkt. No. 30-6) at ¶ 6.

from April 2005 until January 2010 as a bartender, carside employee, prep cook, neighborhood marketing coordinator, cook, and key hourly employee. Longo Aff. (Dkt. No. 30-5) at ¶¶ 3-5; Sabio Decl. (Dkt. No. 26) at ¶ 7. Garrett Titchen worked at the Front Street Applebee's from May 2005 until August 2009 in various hourly positions, including as a mid-line cook, fry cook, broil cook, prep cook, server, carside employee, general utility dishwasher, and food expediter, as well as in managerial positions as an opening manager and a middle manager.[3] Titchen Aff. (Dkt. No. 31-1) at ¶¶ 3-5; Sabio Decl. (Dkt. No. 26) at ¶ 9. Christina Apple worked at various Appelbee's locations, including in Clay, Dewitt, North Syracuse, and Auburn, New York, between October 2005 and August 2010. Apple Aff. (Dkt. No. 31-1) at ¶¶ 4, 8. During her employment, plaintiff Apple worked as a bar manager, FOH manager, training manager, and an hourly employee. *Id.* at ¶ 9.

---

[3] Plaintiff Titchen also worked at an Applebee's in Vestal, New York, and in an Appelbee's located outside of Castle Rock, Washington. Titchen Aff. (Dkt. No. 31-1) at ¶ 6. There does not appear to be any connection between the Applebee's location in Washington state and the defendants, whose operations are allegedly centered in New York and Connecticut. Amended Complaint (Dkt. No. 94) at ¶ 3.

## II.    PROCEDURAL HISTORY

Plaintiffs commenced this action on May 19, 2010, asserting nine causes of action arising from the alleged existence of various policies and practices at the defendants' restaurants that violate the FLSA and NYLL. *See generally* Complaint (Dkt. No. 1).  The next day, plaintiffs moved for certification of the case as a collective action under the FLSA, permitting individuals similarly situated to the named plaintiffs to opt in to the lawsuit, and for class certification with respect to their NYLL claims under Rule 23 of the Federal Rules of Civil Procedure.  Dkt. No. 13.  By report dated January 4, 2011, I ordered certification of the matter as a collective action for purposes of the FLSA limited to the Front Street location only, but recommended denial of plaintiffs' motion for class certification for purposes of the NYLL without prejudice to renewal following discovery. Dkt. No. 36.  That report was adopted by decision and order issued by Senior District Judge Thomas J. McAvoy, dated March 3, 2011.  Dkt. No. 37.

On August 15, 2012, plaintiffs filed an amended complaint, which remains the operative pleading in the action at this juncture.  Dkt. No. 94. The amended complaint asserts five claims.  *Id.* at ¶¶ 177-204.  The first

four arise under the NYLL, alleging defendants' failure to (1) pay laundry fees, (2) pay uniform fees, (3) compensate employees one additional hour for all ten hour "spread of hours" shifts, and (4) provide required breaks and pay regular time and overtime for all time worked. *Id*. at ¶¶ 177-97. The fifth claim arises under the FLSA, alleging defendants' failure to pay regular time and overtime to employees for all time worked. *Id.* at ¶¶ 198-204.

Portions of plaintiffs' claims, as pleaded in their original complaint, were challenged by the defendants in a motion for summary judgment filed on May 11, 2012. Dkt. No. 66. By decision and order dated August 24, 2012, Judge McAvoy granted the motion, in part, and dismissed certain of plaintiffs' claims, including (1) plaintiff Titchen's spread of hour claim for periods when he worked as either a cook or a key employee; (2) plaintiff Roach's spread of hours claim during periods that he worked as a cook; (3) plaintiff Longo's spread of hours claim for when she worked as a key employee; (4) plaintiffs Apple, Roach, and Titchen's claims for reimbursement for the costs of purchasing shirts with an Applebee's logo; and (5) all of the named plaintiffs' laundering claims except those related

to the costs of laundering shirts bearing the Appelebee's logo.[4]  Dkt. No. 98 at 14.

On August 10, 2012, prior to the filing of plaintiffs' amended complaint and the issuance of Judge McAvoy's decision on defendants' summary judgment motion, plaintiffs moved for expansion of the collective action certification to cover current and past employees of all locations for purposes of their FLSA claim, and class certification with respect to their NYLL claims.  Dkt. No. 91.  Defendants have opposed that motion, Dkt. No. 104, and plaintiff's have replied to that submission, Dkt. No. 106. Plaintiffs' motion, which is now fully briefed and was the subject of oral argument conducted on October 24, 2012, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).[5]

_____

[4]    Because plaintiff's amended complaint did not add any new claims, the fact that Judge McAvoy issued his decision after its filing is of no relevance.  The purpose of plaintiff's amended complaint was to accurately reflect the status of the claims and classes sought to be certified, and to change the relief requested from equitable to monetary.  Plfs.' Memo. of Law (Dkt. No. 90-1) at 4.

[5]    Unlike the pending application for class certification under Rule 23, which is considered to be dispositive and thus beyond my non-consensual jurisdiction as a magistrate judge, *Nelson v. Nationwide Mortg. Corp.*, 659 F. Supp. 611, 619-20 (D. D.C. 1987), plaintiffs' motion to certify a collective action under the FLSA is regarded as non-dispositive in nature, and thus falls within my purview.  *Ruggles v. WellPoint, Inc.,* 591 F. Supp. 2d 150, 156 n.6 (N.D.N.Y. 2008) (Treece, M.J.); *Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *1 n.1 (E.D.N.Y. June 12, 2006); *Barrus v. Dick's Sporting Goods, Inc.,* 465 F. Supp. 2d 224, 229 n.1 (W.D.N.Y. 2006).

III.  DISCUSSION

   A.   FLSA Collection Action Certification

      1.   Legal Standard

The FLSA requires employers to pay their workers minimum wages and overtime compensation.  29 U.S.C. §§ 206, 207; *Helton v. Factor 5, Inc.*, No. 10-CV-4927, 2012 WL 2428219, at *3 (N.D. Cal. June 26, 2012). In addition, it allows similarly situated employees to pursue collective actions against an employer for violations of the 29 U.S.C. §§ 106 and 107.  29 U.S.C. § 216(b).  Specifically, the FLSA provides, in relevant part, that

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  The collective action mechanism serves to both further the broad, remedial purposes of the FLSA, and to promote efficiency in adjudication of such claims.  *Lynch v. United Servs. Auto. Ass'n,* 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).  As one court within this

circuit has observed,

> [t]he collective action procedure allows for efficient adjudication of similar claims, so 'similarly situated' employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims. . . . [It also] avoid[s] the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring [the named plaintiff] and opt-in plaintiffs to file separate cases in multiple federal district courts would not be an economic use of judicial resources.

*Lynch,* 491 F. Supp. 2d at 367, 371 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)).

Both in this circuit and elsewhere, courts generally employ a two-part analysis to determine whether an FLSA suit should proceed as a collective action. *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 157 (N.D.N.Y. 2008) (Treece, M.J.); *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009); *Helton*, 2012 WL 2428219, at *3. First, the court examines the named plaintiffs' pleadings and affidavits to determine whether they and the other members of the proposed class are sufficiently "similarly situated" to warrant issuing notice of the pendency of the suit, and to permit it to proceed as a collective action through discovery. *Ruggles*, 591 F. Supp.

2d at 157 (citing *Lynch,* 491 F. Supp. 2d at 367-68).[6]

The plaintiffs' burden at this preliminary juncture is minimal. *Helton*, 2012 WL 2428219, at *4; *Lynch*, 491 F. Supp. 2d at 368. "Plaintiff need only make a 'modest factual showing' that plaintiff and potential collective action members were victims of 'a common policy or plan that violated the law.'" *Lynch*, 491 F. Supp. 2d at 368 (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007)); *Ruggles*, 591 F. Supp. 2d at 158*; Helton*, 2012 WL 2428219, at *4; *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (Mordue, J.). At this stage, the court does not weigh the merits, resolve factual disputes, or make credibility assessments. *Lynch*, 491 F. Supp. 2d at 368; *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 229-30

---

[6]     Some courts also require that a plaintiff seeking certification of a collective action under section 216(b) establish that there are similarly situated employees with an interest in opting in and becoming plaintiffs in the case. *Dybach v. State of Florida Dep't of Corr.,* 942 F.2d 1562, 1567 (11th Cir. 1991); *Ohsann v. L.V. Stabler Hosp.,* No. 07-CV-0875, 2008 WL 2468559, at *2 (M.D. Ala. June 17, 2008); *but see Cuzco v. Orion Builders, Inc.,* 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007) ("Plaintiff is not required to indicate specifically how many potential opt-in plaintiffs may join the suit, nor must an FLSA plaintiff join with other potential plaintiffs at the time a suit is filed in order for a representative action to be pre-certified."); *Dumitrescu v. Mr. Chow Enters., Ltd.,* No. 07-CV-3601, 2008 WL 2600667, at *6 (S.D.N.Y. June 30, 2008) (finding that the fact that plaintiffs were unable to identify any persons desiring to opt-in was not deemed fatal where there were at least fifty other tipped employees who were subject to the same policies as the plaintiffs). Here, the plaintiffs in this case have likely satisfied this potential, additional factor, as demonstrated by the 78 affidavits they have collected from potential class members. Gifford Aff. Exh. K (Dkt. Nos. 91-13, 91-14).

(W.D.N.Y. 2006). Upon determining that the potential opt-in plaintiffs are similarly situated for purposes of authorizing notice, the court will conditionally certify the collective action, granting the named plaintiffs permission to send a court-approved notice to potential members, advising them of their right to join the action by filing consent forms with the court. *Lynch*, 491 F. Supp. 2d at 368.

"During the second stage, the court undertakes a more stringent factual determination as to whether members of a class are, in fact, similarly situated." *Lynch,* 491 F. Supp. 2d at 368; *Iglesias-Mendoza,* 239 F.R.D. at 367. This more exacting standard serves as a failsafe mechanism, off-setting the lenity shown by the court at step one. *See Levy v. Verizon Info. Servs. Inc.*, Nos. 06-CV-1583, 06-CV-5056, 2007 WL 1747104, at *3 (E.D.N.Y. June 11, 2007) ("Plaintiffs' burden [at the first step] is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage."). This second step is typically initiated by the defendant's filing a motion for decertification.[7] *Iglesias-Mendoza*, 239

---

[7]     Here, in their opposition to plaintiffs' motion, defendants urge the court to proceed to step two of the FLSA analysis, and in essence preemptively de-certify the FLSA claim as a collective action. Defs.' Memo. of Law (Dkt. No. 104) at 29. Engaging in the in-depth factual analysis required at that step would be premature at

F.R.D. at 367.

    2.   <u>Application</u>

In their motion, plaintiffs propose extending the putative collective action class to cover all of defendants' current and former hourly employees, regardless of the location at which they have worked. Plfs.' Memo. of Law (Dkt. No. 91-1) at 20-22. In support of this proposal, plaintiffs emphasize that defendants lack policies that ensure employees will be appropriately compensated on the occasions that they work through a scheduled break. *Id.* at 20; Gifford Decl. Exh. E (Dkt. No. 91-7) at 11. Defendants' directives to managers include that overtime compensation is not permissible and all breaks must be accounted for. Gifford Decl. Exh. J (Dkt. No. 91-12) at 6, 16, 17. While most hourly employees are apparently able to punch out and back in at the beginning and endings of breaks, servers who have open tickets are not, and must instead sign a break log, following which the manager later must manually

––––––––––––––––––––

this juncture, however, because it is not clear from the record that defendants produced class-wide, merit-based discovery that would render discovery complete as it relates to all potential opt-in plaintiffs. *Compare* Defs.' Memo. of Law (Dkt. No. 104) at 29 n.21 *with* Plfs.' Reply Memo of Law (Dkt. No. 106) at 5 n.2. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467-68 (N.D. Cal. 2004) ("[E]ven accepting that leapfrogging over necessary steps is proper, the court believes that such an approach is inappropriate in this case [because] . . . it is unclear whether the factual record of this case is complete.").

enter the break time into the payroll system.  Gifford Decl. Exh. A (Dkt.

No. 91-3) at 40; Gifford Decl. Exh. B (Dkt. No. 91-4) at 43; Gifford Decl.

Exh. J (Dkt. No. 91-12) at 17.  No forms are provided for employees to

note instances in which they miss or work through breaks to ensure they

are not entered into the payroll system.  Gifford Decl. Exh. E (Dkt. No. 91-

7) at 14-15.  According to one of defendants' former managers, Ann-Marie

Rudd, defendants trained their restaurant managers to improperly deduct

breaks from the time records of hourly employees, even when the

employees did not actually take a break.  Gifford Decl. Exh. I (Dkt. No. 91-

11) at 6, 8, 22-24, 28, 35.

Plaintiffs' motion is also supported by time records and pay stubs

from plaintiff Roach, a comparison of which suggests deductions were

made from his time card for breaks not taken.  Gifford Decl. Exhs. M, N

(Dkt. Nos. 91-16, 91-17).  During his deposition, Andrew Williams, one of

defendants' current managers with experience in several of defendants'

Syracuse-area Applebee's restaurants, testified that he had heard

complaints of occasions where hourly employees' time records would

reflect that they took a break when, in fact, they had missed it.  Gifford

Decl. Exh. H (Dkt. No. 91-10) at 5-6.  Finally, of the 78 declarations of

present or former hourly employees submitted by the plaintiffs, at least 45 reveal claims of improper deductions from pay for breaks that were not taken.  Gifford Decl. Exh. K (Dkt. Nos. 91-13, 91-14).

In their opposition to this portion of plaintiffs' motion, defendants argue that an individualized analysis is required to determine whether a deduction made for a break not taken has, in any particular instance, resulted in violation of the FLSA's minimum wage or overtime provisions. This argument, however, implicates questions of damages, not liability, and is not appropriately considered at this juncture.  *Cf. Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) ("Although plaintiff's claims may raise individualized questions regarding the number of hours worked and how much each employee was entitled to be paid, those differences go to the damages that each employee is owed, not to the common question of Defendants' liability.").  At this stage of the proceedings, the only question is whether the plaintiffs have satisfied the requirement of making a modest showing that allegedly unlawful policies or practices have existed throughout defendants' restaurants at various locations.  Having reviewed plaintiffs' submissions, I conclude that they have met this minimal burden, and therefore will extend certification of the

collective action in this matter to all of defendants' locations, including those in Connecticut.[8]

To be sure, this case is materially distinguishable from those FLSA actions involving definitive companywide policies or practices that are supported by evidence indicating that the allegedly-unlawful practices are known and universally implemented. *See*, *e.g.*, *Helton*, 2012 WL 2428219, at *4 (involving the two-months lost pay for employees of a software and video game developer that simply stopped paying its employees' wages and benefits). Nonetheless, plaintiffs' evidence suggests the existence of company-wide practices that have led to employees receiving less wages than actually earned. As was discussed above, the plaintiffs' burden at the preliminary juncture when seeking

---

[8] In their motion, plaintiffs seek an order directing that a notice, in the form of that previously approved by the court, be forwarded to the additional potential collective action opt-in plaintiffs, and that defendants be required to produce a list, in PDF format, of all present and former hourly employees for purposes of sending those notices. Plfs.' Memo. of Law (Dkt. No. 91-1) at 21-22. The court is cognizant of the need for expediency, given the potential effect of the FLSA's statute of limitations that may result in expiring claims literally on a daily basis. *See Lynch*, 491 F. Supp. 2d at 371 ("Unlike Rule 23 class actions, the statute of limitations for those who have not filed Consent forms is not tolled by the commencement of this action. As a result, the statute of limitations continues to run on each individual's claim until they file a Consent Form with this court. Thus, every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover." (internal citations omitted)). Accordingly, defendants are directed to provide such a list within twenty-one days of the date of this decision. The parties are directed to negotiate the form of that notice, as well as the manner in which it will be promulgated, within that same twenty-one day period and notify the court of whether agreement has been reached.

FLSA collective action certification is extremely modest, requiring only that the potential opt-in plaintiffs be similarly situated. In my view this modest burden has been met by plaintiffs' submissions.

Accordingly, and without making any determination on the merits, or whether this case will ultimately survive an anticipated decertification motion by the defendants, I will grant plaintiffs' application to certify the matter as a collective action, applicable to past and present hourly employees at all of defendants' restaurant locations in New York and Connecticut.

B.    Rule 23 Class Certification

In their amended complaint and pending motion, plaintiffs seek class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure, with respect to each of the four NYLL claims, to be broken down into the following four subclasses:

> a.    'Class I-A' – employees entitled to but who never received required laundry fees as part of and in addition to their wages as required by NYLL §§ 652, 655, 663, and, particularly, 12 NYCRR § 137-1.8 (First Claim for Relief); and/or
>
> b.    'Class I-B' – employees entitled to but who never received required uniform fees as part of and in addition to their wages as required by

NYLL §§ 652, 655, 663, and, particularly, 12 NYCRR § 137-1.8 (Second Claim for Relief); and/or

c. 'Class I-C' – employees entitled to but who never received the required additional hour of work time as part of their wages where their 'Spread of hours,' as that term is defined in 19 NYCRR §§ 137-3.11 and 142-2.18, exceeded 10-hours and payment of the additional hour was required under NYLL §§ 652, 655, 663, and, particularly, 12 NYCRR §§ 137-1.7, 137-2.6, 142-1.1, and 142-2.4 (Third Claim for Relief); and/or

d. 'Class I-D' – employees entitled to rest periods and to be paid for all hours worked, including those hours as articulated in the Third and Fourth Claims for Relief, but who were not given proper rest periods or paid for all hours to which they were entitled in violation of New York's minimum wage and overtime wage requirements pursuant to NYLL §§ 190, *et seq*, 650, *et seq*, and, particularly, 19 NYCRR §§ 137-1.3 and 142-2.2 (Fourth Claim for Relief).

Amended Complaint (Dkt. No. 94) ¶ 22. Plaintiffs estimate that the members of each of the four classes could extend into the thousands, and contend that they have met the requirements for class certification under Rule 23.

As an exception to the general rule that litigation should be conducted by and only on behalf of the named parties, an action maybe

maintained by one or more named plaintiffs on behalf of a class of

individuals when they are members of a group that possess a common

interest and have suffered the same injury.  *Wal-Mart Stores, Inc. v.*

*Dukes,* 131 S. Ct. 2541, 2550 (2011); *Califano v. Yamasaki*, 442 U.S.

682, 700-01 (1979).  To qualify for class certification, a party must meet

the requirements of Rule 23(a) by demonstrating that

> (1)   the class is so numerous that joinder of all
>        members is impracticable;
>
> (2)   there are questions of law or fact common to
>        the class;
>
> (3)   the claims or defenses of the representative
>        parties are typical of the claims or defenses of
>        the class; and
>
> (4)   the representative parties will fairly and
>        adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24,

33 (2d Cir. 2006).  In addition, the party seeking certification must also

meet one of the requirements of Rule 23(b), which sets out the different

varieties of class actions available under the rule.  *See generally* Fed. R.

Civ. P. 23(b); *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *Thompson*

*v. Linvatec Corp.,* No. 06-CV-0404, 2010 WL 2560524, *3 (N.D.N.Y. June

22, 2010) (McCurn, J.).  To qualify for certification, the plaintiff must meet

each of the Rule 23 requirements by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202-03 (2d Cir. 2008).

Unlike its FLSA collective action counterpart, the certification decision under Rule 23 requires "rigorous analysis." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551 (citing *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 161 (1982)). Significantly, the Supreme Court has noted that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Gen. Tel. Co. of SW*, 457 U.S. at 160 (internal quotation marks omitted). In recognizing the uncertainty that resulted from its prior holdings, the Second Circuit articulated the following guidelines in deciding motions for class certification:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue,

> even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re Pub. Offerings Sec. Litig.*, 471 F.3d at 41.

In light of the inherent interplay between the class certification inquiry and the merits of a plaintiff's claims, one court has cautioned that "[a] motion for class certification should not . . . become a mini-trial on the merits." *Lewis Tree Serv., Inc. v. Lucent Techs.,* 211 F.R.D. 228, 231 (S.D.N.Y. 2002). At the certification stage, the court should remained focused on whether the requirements of Rule 23 have been met, and not whether the plaintiffs are likely to prevail on the merits of their claims. *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012). In determining whether those prerequisites have been met, a court must remain mindful of the public policy considerations behind Rule 23, and the Second Circuit's preference that Rule 23 be given liberal construction. *Flores*, 284 F.R.D. at 122; *Brickey v. Dolgencorp., Inc.*, 272 F.R.D. 344, 349 (W.D.N.Y. 2011); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124

22

(S.D.N.Y. 2011).

### 1. Numerosity

Plaintiffs' claims involve individuals who have worked at the relevant times as non-exempt employees at defendants' sixty-one Applebee's locations. Amended Complaint (Dkt. No. 94) at ¶¶ 8, 18, 22. Because, by plaintiff's estimate, there could be as many as 10,000 present and former employees that fall within those categories, *id.* at ¶ 23, and defendants have not disputed this, I find that plaintiffs easily satisfy the numerosity requirement of Rule 23(a). *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members[.]"); *accord LaFlamme v. Carpenters Local No. 370 Pension Plan*, 212 F.R.D. 448, 452 (N.D.N.Y. 2003) (Hurd, J.).

### 2. Commonality/Typicality

The next two provisions of Rule 23(a) require the existence of common questions of law or fact, and that the claims being raised by the named plaintiffs are typical of the claims of the class. Fed. R. Civ. P. 23(a)(2)(3); *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2550. "These two requirements may be considered together, as they 'tend to merge.'" *Selzer v. Bd. of Educ. of City of N.Y.*, 112 F.R.D. 176, 178 (S.D.N.Y.

1986) (quoting *Gen. Tel. Co. of SW*, 457 U.S. at 157 n.13).[9]

As the Supreme Court noted in *Wal-Mart*, a degree of commonality is always present where the plaintiffs have moved for certification. *See Wal-Mart*, 131 S. Ct. at 2551 ("Th[e] language [requiring that questions of law or fact common to the class] is easy to misread, since any competently crafted class complaint literally raises common questions." (internal quotation marks omitted)). To justify class certification, however, the named plaintiffs must demonstrate that their claims "can productively be litigated at once." *Id.* In other words, the claims "must depend upon a common contention . . . capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The fact that this inquiry may be inextricably intertwined with a merits–based inquiry does not offend the intent of Rule 23. *See id.* at 2552 ("[T]here is nothing unusual about that consequence: The necessity of touching aspects of the

---

[9]     In addition to overlapping with the typicality inquiry, the commonality requirement under Rule 23(a) also possesses many of the same attributes with the predominance requirement under Rule 26(b)(3). *Vang v. Kohler, Co.,* No. 09-CV-0842, 2012 WL 2917788, at *4 (E.D. Wis. July 17, 2012). Rule 23(b)(3), however, imposes a more demanding threshold, requiring not only that common issues exist, but that they dominate over others in the action. *Vang,* 2012 WL 291778, at *4 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24 (1997); *Nicholson v. UTi Worldwide, Inc.,* No. 09-CV-0722, 2011 WL1775726, at * 7 (S.D. Ill. May 10, 2011)).

merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation." (citing *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676-77 (7th Cir. 2001)).

As one court has noted, to satisfy the requirements of Rule 23, "[p]laintiffs must produce some 'quantum of evidence to satisfy the commonality and typicality requirements, usually in the form of affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by company-wide policy or practice of discrimination.'" *Eng-Hatcher v. Sprint Nextel Corp.,* No. 07-CV-7350, 2009 WL 7311383, at *6 (S.D.N.Y. Nov. 13, 2009) (quoting *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 95 (S.D.N.Y. 2006)).

To the extent that the Supreme Court's decision in *Wal-Mart* called into question whether class certification is appropriate in wage and hour cases, "[t]he weight of authority rejects th[at] argument[.]" *Morris v. Affinity Health Plan, Inc.,* No. 09-CV-1932, 2012 WL1608644, at *2 (S.D.N.Y. May 8, 2012) (collecting cases). Applying a more rigorous analysis in light of *Wal-Mart*, however, courts have looked to whether company-wide policies or practices exist that result in a common injury susceptible of class wide resolution. *See Ramos v. SimplexGrinnell LP*,

796 F. Supp. 2d 346, 356 (E.D.N.Y. 2011) (rejecting the cases cited by the defendant in which liability was not susceptible to class-wide proof); *Espinoza*, 280 F.R.D. at 130 ("Plaintiffs have alleged a common injury that is capable of class-wide resolution without inquiry into multiple employment decisions applicable to individual class members.").

a.    <u>Laundry and Uniform Fees</u>

The first two claims for which plaintiffs seek class certification surround reimbursement for uniform and laundry fees.  Under the NYLL, as it existed prior to January 1, 2011, a violation is established if the cost of obtaining and/or maintaining a uniform, as that term is defined by regulation, results in an employee's compensation being reduced below the statutory minimum wage.  *Flores*, 2012 WL 2339267, at *4.  This portion of the plaintiffs' NYLL claim has been significantly narrowed as a result of Judge McAvoy's decision dated August 24, 2012, and now focuses only on shirts with the Applebee's logo.  As a result, the relevant commonality inquiry is whether plaintiffs' proposed class members "suffered the same injury" such that the purchase or laundering of shirts with an Applebee's logo resulted in employees' compensation being reduced below the statutory minimum wage.  *Wal-Mart Stores, Inc.*, 131

S. Ct. 2551.

As it relates to the purchasing of Applebee's shirts, only one of the named plaintiffs, Melissa Longo, retains a viable cause of action with regard to this portion of plaintiffs' NYLL claims.[10] Paraskevas-Thadani Decl. Exh. B (Dkt. No. 104-6) at 12. Plaintiffs have submitted form declarations from present and former Applebee's employees addressing the uniform claim. Nearly every declaration provides as follows:

> During my time at Applebee's, I was required to wear a uniform, either consisting of a polo shirt with an Applebee's logo or an all black uniform, that was not appropriate to wear outside of work, and I was never compensated for the cost of the uniform.

*See generally* Gifford Decl. Exh. K (Dkt. Nos. 91-13, 91-14).

In opposition to the certification motion, defendants have submitted evidence that suggests that it is not their policy to require employees to purchase items with an Applebee's logo. This evidence includes a transcript of the deposition of Susan Sabio, the defendants' Director of Human Resources, in which she testified that defendants' provided employees with shirts with Applebees' logos and aprons. Paraskevas-Thadani Decl. Exh. M. (Dkt. No. 140-6) at 94. In addition, defendants

---

[10] According to Judge McAvoy's decision, plaintiffs Roach and Titchen were not required to purchase such shirts. Dkt. No. 98 at 12.

submitted declarations of nineteen managers and eight directors of

operations confirming that employees were not required to purchase

uniform clothing with an Applebee's logo.[11]  Paraskevas-Thadani Decl.

Exh. R (Dkt. No. 104-12).  In addition, defendants have submitted ninety-

one declarations of hourly employees working at twenty-three different

Applebee's restaurants, all stating that they were not required to pay for

any uniform item with an Applebee's logo.[12]  Paraskevas-Thadani Decl.

---

[11]     By way of example, Michael Huffcut, the director of operations responsible for Applebee's restaurants in the Southern Tier of New York, stated that, when he was general manager, defendants supplied t-shirts with Applebee's logos for BOH employees, and that FOH employees were provided three polo shirts with an Applebee's logo on it upon hiring and that if an employee's shirt became soiled, he would issue a clean one.  Huffcut Decl. (Dkt. No. 104-12) at 47.  John Bargnesi, a training manager at the Milestrip Road Applebee's in Blasdell, New York, was employed by defendants in 2007.  Bargnesi Decl. (Dkt. No. 104-12) at 10.  He averred that, approximately three years ago, defendants supplied hourly FOH employees with polo shirts that had an Applebee's logo, and BOH employees received t-shirts with Applebee's logos. *Id.* at 11.  He also stated that employees received between two and five shirts upon hiring.  *Id.* at 12. The uniform policy that is currently in place requires that hourly employees wear their own clothes, except for hats for BOH employees and aprons for FOH employees.  *Id.* at 11.

    These two examples are representative of the information contained in the remaining declarations of managers and directors of operations.  Although each declaration contains slightly different language, none are materially different from one another or suggest that, at any time, defendants required employees to purchase clothing with an Applebee's logo.  *See generally* Paraskevas-Thadani Decl. Exh. R (Dkt. No. 104-12).

[12]     By way of example, Priscilla Brigden was hired by defendants in October 2000. Brigden Decl. (Dkt. No. 104-10) at 32.  She has worked as a host, prep cook, general utility, and is currently a line cook.  *Id.*  Up until five years ago, employees were required to wear a shirt with an Applebee's logo, but they were not required to pay for them.  *Id.* at 33.  Upon hiring, she received at least two shirts, and she never paid for additional ones when she needed one.  *Id.* Currently, as a line cook, she is required to wear black t-shirts, jeans and black shoes with a hat that has an

Exh. O (Dkt. No. 104-10).

Careful analysis of the competing evidence presented on this issue reveals that there is no commonality between plaintiff Longo and the proposed class members. Plaintiff's evidence, consisting of form declarations, does not squarely address whether defendants required their employees to purchase uniform clothing with an Applebee's logo on it. Instead, the common paragraph in nearly all of those declarations suggests that the clause "and I was never compensated for the cost of them" could refer to the polo shirt with the Applebee's logo or the all-black uniform. That paragraph also fails to squarely state that employees were affirmatively required to purchase the polo shirts with the logo, for which, according to plaintiffs, reimbursement would be necessary. As a result, I cannot conclude that plaintiffs have demonstrated that plaintiff Longo has suffered a common injury with the proposed class members, sufficient to find that plaintiffs have satisfied the commonality requirement.

---

Applebee's logo. *Id.* Defendants provide the hat, and she is required to purchase the remaining items. *Id.*

Brigden's declaration is similar in substance to the remaining ninety declarations from hourly employees submitted by defendants. Although each declaration contains slightly different language, none are materially different from one another or suggest that, at any time, defendants required employees to purchase clothing with an Applebee's logo. *See generally* Paraskevas-Thadani Decl. Exh. O (Dkt. No. 104-10).

Finally, I note that the only one piece of evidence in the record that unequivocally states that an employee purchased uniform clothing from defendants directly is the transcript of plaintiff Longo's deposition. Paraskevas-Thadani Decl. Exh. B (Dkt. No. 104-6) at 12. Plaintiff Longo did not testify, however, that *all* of defendants' employees were *required* to purchase aprons. *Id.* Instead, her testimony is that *she* purchased aprons every other month. *Id.* This is not sufficient to meet the typicality requirement under Rule 23. *See*, *e.g.*, *Kapiti v. Kelly*, No. 07-CV-3782, 2008 WL 3874310, at *6 (S.D.N.Y. Aug. 18, 2008) (finding that the plaintiffs failed to satisfy the typicality requirement where "[p]laintiff has not identified 'any other person who has been subjected to the same or similar treatment as he has' and 'only speculates that such is the case.'" (quoting *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983) (alterations omitted)). Accordingly, I conclude that the evidence does not support a finding that plaintiffs meet the typicality requirement with respect to their uniform claim.

The second component of this NYLL class claim concerns laundering of uniforms, which is, by virtue of Judge McAvoy's decision, limited to shirts bearing an Applebee's logo. The logo shirts were only in

place as part of a defendant's uniform until approximately 2009. *See*

*generally* Paraskevas-Thadani Decl. Exhs. Q, R (Dkt. Nos. 104-10, 104-

12). Nearly all of the form affidavits submitted by plaintiffs contain the

following paragraph relating to whether defendants made laundry facilities

available to their employees:

> The Applebee's restaurant in which I worked did not
> have a washer and dryer for the employees to use to
> wash our uniforms and the company did not launder
> our uniforms for us.

*See generally* Gifford Decl. Exh. K (Dkt. Nos. 91-13, 91-14). In

opposition, defendants submitted forty-seven declarations from hourly

employees who state that washers and dryers were available in the

restaurant where they worked that was available for use by employees in

laundering their uniform items. Paraskevas-Thadani Decl. (Dkt. No. 104-

5) at ¶ 25; Paraskevas-Thadani Decl. Exh. Q (Dkt. No. 104-10). Notably,

during her deposition testimony, plaintiff Longo confirmed the availability

of such washers and dryers, and stated that she has witnessed hourly

employees washing their logo shirts using those facilities. Paraskevas-

Thadani Decl. Exh. B (Dkt. No. 104-6) at 45-46.

As with the uniform reimbursement claim, I cannot find that the

record evidence gives rise to a common question with respect to the

uniform laundering claim.  Generally, plaintiffs argue that the issue to be resolved is whether defendants made available laundry facilities for their employees during the time that the uniform requirement included an item with an Applebee's logo.  However, the plaintiffs' affidavits, considered in light of the affidavits and deposition testimony submitted by defendants, are not sufficient to demonstrate that defendants failed to make available laundry facilities to their employees such that the employees' laundry costs, resulting from washing their uniform items with the Applebee's logo, decreased their pay below the minimum wage.  For this reason, I find that plaintiffs have not met the commonality requirement as it relates to this claim.

With respect to typicality, I also find that this requirement has not been satisfied because, again, the competing record evidence that suggests defendants failed to make laundry facilities available to their employees is speculative at best.  *Kapiti*, 2008 WL 3874310, at *6. Indeed, plaintiff Longo even testified that she witnessed the line cooks use the washer and dryer at her restaurant to wash their clothes.  Paraskevas-Thadani Decl. Exh. B (Dkt. No. 104-6) at 14-15.

b.    Spread of Hours

Plaintiffs' spread of hours claim centers upon a former New York

State regulation, intended principally for application in the restaurant

business, providing that, "[o]n each day in which the spread of hours

exceeds 10, an employee shall receive one hour's pay at the basic

minimum hourly wage before allowances, in addition to the minimum

wages otherwise required by this Part."[13]  12 N.Y.C.R.R. § 137-1.7 (2010);

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 242 (2d

Cir. 2011).  In his decision dated August 24, 2012, addressing a split of

authority on this question, Judge McAvoy held that this regulation applies

only to workers compensated at the minimum wage rate.  Dkt. No. 98 at 6.

In support of this portion of their motion, plaintiffs submitted

declarations from sixty of defendants current and present employees

claiming not to have been properly compensated for working a ten hour

period.  Gifford Decl. Exh. K (Dkt. Nos. 91-13, 91-14).  Twenty-one of

those declarants, however, are precluded from sustaining a spread of

---

[13]    That provision was replaced by a regulation that also requires employers to pay employees one extra hour's pay, at minimum wage, when their work shift spans a period longer than ten hours.  N.Y.C.R.R. §146-1.6; *see also Shahriar*, 659 F.3d at 242 n.4.  None of the named plaintiffs were working when this revised provision became effective.

33

hours claim against defendants either because they earned more than the minimum wage or because they never worked a ten-hour spread. *See generally id.* Defendants have countered with sixty-seven declarations from hourly employees, managers, and directors of operations that purport to demonstrate that defendants' policies and practices were in full compliance with New York State's spread of hours regulation that was effective until January 1, 2011. Paraskevas-Thadani Decl. Exhs. Q, R (Dkt. Nos. 104-10, 104-12).

Unlike plaintiff's uniform and laundry claims, I find that plaintiffs have submitted sufficient evidence to find they satisfy the commonality requirement for their spread of hours claim. The common issue that must be answered is whether defendants' policies – or lack thereof, as plaintiffs argue – resulted in defendants' failure to compensate employees earning minimum wage for an additional hour as required under 12 N.Y.C.R.R. § 137-1.7 (2010). *See Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 910 (7th Cir. 2012) (finding that the plaintiffs' satisfied the commonality requirement where they "maintain[ed] a common claim that unofficial company policy compelled them to perform duties for which they should have been entitled to collect overtime"). Because the declarations submitted by

plaintiffs are explicit on this point, I have no hesitation relying on them.[14]

Similarly, I find that plaintiffs have satisfied the typicality requirement as it relates to this claim. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.").

### c.   Rest Period Claim

The remaining portion of plaintiffs' NYLL claims center upon their contention that they were denied pay for all hours worked as a result of managers allegedly altering time records to reflect that employees were given a break that they had not actually taken.[15]  Amended Complaint (Dkt. No. 94)at  ¶¶ 193-197.  In support of this portion of their motion, plaintiffs are unable to point to a company-wide policy that, in essence, has forced local managers to violate the NYLL.  There is sufficient

---

[14]     Although the declarations contain form paragraphs as it relates to plaintiffs' spread of hours claim, they expressly state that the declarant worked a ten hour spread but was not compensated for the extra hour.  *See*, *e.g.*, Christa Decl. (Dkt. No. 91-13) at 13.

[15]     The NYLL requires that hourly employees, such as the plaintiffs, be provided with a one half hour rest break for every shift of six hours or more.  N.Y. Labor Law § 162.

evidence, however, to give rise to the suggestion that it was common practice, at the relevant times, for managers to change time records after an employee's shift to reflect that he took a break, even if he did not actually take it.  For example, Rudd explicitly testified that she witnessed managers altering time records and instructed them otherwise. Paraskevas-Thadani Decl. Exh. D (Dkt. No. 104-6) at 28.  Here, then, the common question among the proposed class members is whether defendants' alleged practice of altering time records resulted in an employee receiving inadequate wages for the time they actually worked. Accordingly, I find that plaintiffs have satisfied the commonality requirement for their rest period claim.  *See Espinoza*, 80 F.R.D. at 127 ("[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." (collecting cases)).

With respect to typicality, plaintiffs' evidence suggests that defendants' failure to adequately compensate their employees arises from a single practice: managers altering time records.  *See, e.g.*, Paraskevas-Thadani Decl. Exh. D (Dkt. No. 104-6) at 28; Gifford Decl. Exh. A (Dkt. No.

91-6) at 7.  As a result, I find that plaintiffs have satisfied the typicality requirement for this claim.  *See Espinoza*, 280 F.R.D. at 128 ("Where the named plaintiff as well as members of the proposed class all have similar claims arising from the same scheme, the typicality requirement is satisfied[.]" (internal quotation marks omitted)).

### 3.    Adequacy of Representation

The adequacy of representation requirement imposed under Rule 23(a)(4) implicates a two-part inquiry: "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2008).  This inquiry "serves to uncover conflicts of interests between the named parties and the class they seek to represent."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Because I have concluded that plaintiffs satisfy the commonality and typicality requirements for their spread of hours and rest period claims under the NYLL, I will only address whether they have satisfied the adequacy of representation requirement with respect to those two claims.

### a.  Spread of Hours Claim

Because the parties do not question whether the named plaintiffs serve as adequate representatives of the purposed class, and I have not found any reason to find them inadequate, I conclude that plaintiffs have satisfied this requirement.

### b.  Rest Time Period Claim

The focus of defendants' opposition is whether the named plaintiffs have standing to represent the class' interests because there are potential conflicts of interest as it relates to the rest period claim.  Specifically, during a portion of the relevant time period, plaintiff Apple was an assistant manager of Applebee's restaurants in Clay and Auburn. Paraskevas-Thadani Exh. A (Dkt. No. 104-6) at 5-7.  Although she also testified that she never deducted time from an employee's payroll record when a break was not actually taken, if plaintiffs prove that defendants' practice violates the NYLL meal break requirement, including at the restaurant in which she worked while serving in a managerial capacity, plaintiff Apple faces the potential for individual liability under both the FLSA and the NYLL.  *See Vysovsky v. Glassman*, No. 01-CV-2531, 2007 WL 3130562, at *17-18 (S.D.N.Y. Oct. 23, 2007) (finding individual liability

under the New York Labor Law); *Bravo v. Eastpoint Int'l, Inc.*, No. 99-CV-9474, 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) ("Individuals may be liable as joint employers under the FLSA only if they possess the power to control the workers in question." (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999)).[16]  In that scenario, a conflict of interest would certainly arise for plaintiff Apple's counsel, who, at that point, would also represents the class.

Similarly, plaintiffs Longo and Titchen both testified at their depositions that, when acting in managerial capacities for defendants, they shaved not only their own time, but time of other hourly workers. Paraskevas-Thadani Decl. Exh. B (Dkt. No. 104-6) at 16-18 (Longo Dep.

---

[16]     In *Herman*, the Second Circuit determined that,

> [b]ecause the [FLSA] defines employer in such broad terms, it offers little guidance on whether an individual is or is not an employer.  In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case.  Under the 'economic reality' test, the relevant factors include 'whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'

*Herman*, 172 F.3d at 139 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).

Tr.); Paraskevas-Thadani Decl. Exh. C (Dkt. No. 104-6) at 23 (Titchen Dep. Tr.). Serious concerns arise from these potential conflicts, making it undesirable for those plaintiffs to represent the putative class members. As a result, I find that plaintiffs have failed to satisfy the adequacy of representation requirement for their rest period claim.

### 4. Ascertainability

"Although Rule 23(a) does not expressly require that a class be definite in order to be certified, Second Circuit courts have implied a requirement that a class be identifiable before it may be properly certified." *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 275 F.R.D. 75, 85 (N.D.N.Y. 2011) (Hurd, J.). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of N.Y.*, 282 F.R.D. 360, 373 (S.D.N.Y. 2012) (internal quotation marks omitted). While part of the overarching Rule 23(a) inquiry, which has been described as demanding, the ascertainability requirement is more relaxed as applied in this circuit. *Flores*, 2012 WL 2339267, at *8. Additionally, "class members need not be ascertained prior to certification, but must be ascertainable at some point in the case." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2003).

Because the only remaining claim that may warrant class certification is plaintiffs' spread of hours claim at this stage of the analysis, I have only addressed ascertainability as it relates to that claim.

The class to be certified for plaintiff's spread of hours claim is ascertainable.  Specifically, the purported class would consist of any of defendants' employees earning minimum wage that worked a ten-hour spread and was not compensated for the required extra hour.  That identifying those employees who may fall into this class may require an analysis of each employees' time records does not make the class any less ascertainable.  *See Flores*, 284 F.R.D. at 123 (finding ascertainability where "[t]he class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements"); *Noble*, 224 F.R.D. at 341-42 ("[C]ertification is routinely granted where the proposed class definition relies in part on the consideration of the defendants' alleged liability.").  As a result, I find that plaintiffs have satisfied the ascertainability requirement of their spread of hours claim.

5.    Rule 23(b) Requirements

In addition to meeting the requirements of Rule 23(a), plaintiffs must

also qualify their putative class action under one of the paradigms set

forth in Rule 23(b).  Plaintiffs assert that their class action satisfies Rule

23(b)(3), which allows certification if

> [t]he court finds that the questions of law or fact
> common class members predominate over any
> questions affecting only individual members, and that
> a class action is superior to other available methods
> for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests

whether proposed classes are sufficiently cohesive to warrant adjudication

by representation."  *Amchem Prods., Inc.*, 521 U.S. at 623.  The Second

Circuit has held that

> [c]lass-wide issues predominate if resolution of some
> of the legal or factual questions that qualify each
> class member's case as a genuine controversy can
> be achieved through generalized proof, and if these
> particular issues are more substantial than the issues
> subject only to individualized proof.

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  "The

predominance requirement . . . ensures that the class will be certified only

when it would 'achieve economies of time, effort, and expense, and

promote uniformity of decision as to persons similarly situated, without

42

sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quoting *Amchem Prods., Inc.*, 521 U.S. at 615 (alterations omitted)).

Here, with respect to plaintiffs' spread of hours claim, the common issue to all purported class members is whether defendants exercised a practice that resulted in minimum-wage employees not receiving the extra hour pay when they worked a ten-hour spread. For a Rule 23(b)(3) inquiry, the question is whether that issue is subject to generalized proof that predominates over those issues subject to individualized proof. *Moore*, 306 F.3d at 1252. I find that is the case in this action. Specifically, the generalized proof should demonstrate whether defendants applied a practice that resulted in minimum wage employees earning less money than deserved. The individualized proof will relate to the number of occasions defendants failed to pay an employee what he earned, which ultimately is a question bearing on damages, not liability. For that reason, I find that plaintiff's spread of hours claim satisfies the criteria under Rule 23(b)(3).

III.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiffs' complaint in this matter asserts several claims under the FLSA and NYLL arising from allegedly unlawful policies and practices employed by defendants.  As a result, plaintiffs have moved to have the action certified as a collective action under the FLSA and a class action pursuant to Rule 23.  With respect to the motion to certify a collective action under the FLSA, because I find that plaintiffs have met their met their modest burden of demonstrating the existence of similarly situated employees, I will preliminarily certify the matter as a collective action.

With respect to plaintiff's motion to certify the action as a class action, only plaintiffs' spread of hours and rest period claims meet the commonality and typicality requirements of Rule 23(a).  The rest period claim, however, fails to satisfy the adequacy of representation requirement.  Having determined that the spread of hours claim meets the requirements of ascertainability and under Rule 23(b)(3), I find that class certification is appropriate for this claim only.  Accordingly, it is hereby

ORDERED that certification of this action as a collective action for purposes of the FLSA be GRANTED, in part, and that the persons authorized to opt-in as collective action plaintiffs include those falling

within the following class:

> Those of defendants' employees who were employed at any time within three years prior to commencement of this action, and who were not paid regular and/or overtime compensation for all the hours to which they were entitled, including but not limited to those hours as articulated in the Third and Fourth Claims for Relief in plaintiffs' amended complaint, when such time was compensable time subject to the regular and overtime provisions of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 216 (plaintiffs' amended complaint, Fifth Claim for Relief);

and it is further respectfully

RECOMMENDED that plaintiffs' motion for Rule 23 class certification with regard to their claims under the NYLL be GRANTED in part as follows:

> 1. The class to be certified is any of defendants' current or former employees earning minimum wage between April 2005 and August 2010, and who, during that same time period, worked a ten-hour spread but did not receive the additional hour of compensation as required by 12 N.Y.C.R.R. § 137-1.7 (2010);

> 2. The only claim to be certified for class action is plaintiffs' NYLL spread of hours claim;

and it is further

RECOMMENDED that, except as described in the preceding paragraph, plaintiffs' motion for Rule 23 class certification be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    March, 4, 2013
          Syracuse, New York

David E. Peebles
U.S. Magistrate Judge