UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MATTHEW ROACH, MELISSA LONGO,
GARRETT TITCHEN and CHRISTINA APPLE,

               Plaintiffs,

         -against-

T.L. CANNON CORP., d/b/a APPLEBEES, T.L.
CANNON MANAGEMENT CORP., TLC WEST,
LLC, TLC CENTRAL, LLC, TLC UTICA, LLC,
TLC EAST, LLC, and TLC NORTH, LLC; DAVID
A. STEIN, individually and as Owner and Chairman
of T.L. Cannon Corp. and as Director and Chairman
of T.L. Cannon Management Corp.; MATTHEW J.
FAIRBAIRN, individually and as Owner and
President of T.L. Cannon Corp. and as Director and
Chief Executive Officer of T.L. Cannon
Management Corp.; and JOHN A. PERRY,
individually and as Vice-President and Director of
Operations of T.L. Cannon Corp. and as President of
T.L. Cannon Management Corp.,

               Defendants.

CIVIL CASE NO.
3:10-cv-00591-TJM-DEP

## DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S SEPTEMBER 27, 2017 ORDER REGARDING DAMAGES

**LITTLER MENDELSON**
 A Professional Corporation
*Attorneys for Defendants*
375 Woodcliff Drive, 2nd Floor
Fairport, NY  14450
585-203-3400

Craig R. Benson, Esq.
Jessica F. Pizzutelli, Esq.

## <u>TABLE OF CONTENTS</u>

**Page(s)**

QUESTION PRESENTED ................................................................................................1

BRIEF ANSWER .........................................................................................................1

DETAILED ANSWER ...................................................................................................2

    I.    This Court's Multiple, And Correct, Holdings That Damages Are
Highly Individualized Is Law Of The Case .........................................................2

    II.   Individual Testimony Is Required To Determine Individual Entitlement
To Damages ........................................................................................3

        A.   Off The Clock Break Claim.........................................................4

        B.   Spread of Hours Claim...........................................................13

    III.  Defendant Is Entitled To Defend Itself Against Each Class Members'
Individualized Damages Claim Pursuant To The Rules Enabling Act
And Due Process Of Law .......................................................................14

    IV.  The Procedure For The Court To Receive Individual Testimony ....................20

CONCLUSION.........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angeles v. U.S. Airways, Inc.*,
    No. C 12-05860 CRB, 2017 U.S. Dist. LEXIS 20161 (N.D. Cal. Feb. 13,
    2017) ................................................................................................16

*Bell v. Reading Hosp. & Med. Ctr.*,
    No. 13-CV-05927, 2016 WL 3902938 (E.D. Pa. July 19, 2016)......................................18

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)..............................................................11, 12, 13, 21

*Desilva v. North Shore-Long Island Jewish Health Sys., Inc.*,
    27 F. Supp. 3d 313 (E.D.N.Y. 2015) ................................................6, 17, 18, 19

*Gorham-DiMaggio v. Countrywide Home Loans, Inc.*,
    No. 1:08-CV-019, 2009 WL 1748743 (N.D.N.Y. June 19, 2009) .....................................3

*Gregory v. Stewart's Shops Corp.*,
    No. 7:14-CV-33, 2016 WL 8290648 (N.D.N.Y. July 8, 2016) ........................................16

*Hinterberger v. Catholic Health Sys.*,
    299 F.R.D. 22 (W.D.N.Y. 2014)...................................................................4, 6

*Jacob v. Duane Reade, Inc.*,
    293 F.R.D. 578 (S.D.N.Y. 2013) ...........................................................9, 16, 20

*Local 589, Amalgamated Transit Union v. Mass. Bay Transp. Auth.*,
    No. 13-CV-11455-ADB, 2016 WL 5109508 (D. Mass. Sep. 20, 2016) ..........................16

*Maneely v. City of Newburgh*,
    208 F.R.D. 69 (S.D.N.Y. 2002) ...............................................................14, 20

*Mendez v. U.S. Nonwovens Corp.*,
    314 F.R.D. 30 (E.D.N.Y. 2016)........................................................................6

*Mendez v. U.S. Nonwovens Corp.*,
    No. 12-5583 (ADS) (SIL), 2016 WL 1306551 (E.D.N.Y. Mar. 31, 2016) ............6, 18, 19

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015).......................................................................2, 12

*Roach v. T.L. Cannon Corp.*,
    No. 3:10-CV-0591 (TJM/) DEP, 2015 WL 10818750 (N.D.N.Y. Sep. 4, 2015)...............3

*Roach v. T.L. Cannon, et al.*,
    No. 3:10-CV-0591 TJM/DEP, 2013 WL 1316452 (N.D.N.Y. Mar. 29, 2013) ...............1, 2

*Scott v. Chipotle Mexican Grill, Inc.*,
    No. 12-cv-8333 (ALC)(SN), 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) ...................16

*Stinson v. City of N.Y.*,
    No. 10-cv-4228 RWS, 2014 WL 4742231 (S.D.N.Y. Sept. 23, 2014).............................3

*Tardiff v. Knox Cty.*,
    365 F.3d 1 (1st Cir. 2004) ........................................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ........................................................................................15, 16

*In re Visa Check/MasterMoney Antitrust Lit.*,
    280 F.3d 124 (2d Cir. 2001)................................................................................20, 21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541 (2011) ...............................................................15

*Wolman v. Catholic Health Sys. of Long Island, Inc.*,
    853 F. Supp. 2d 290 (E.D.N.Y. 2012) .................................................................6

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011).................................................................9, 18, 19

**Statutes**

28 U.S.C. § 2072....................................................................................................14, 15

**Other Authorities**

Rule 23(b)(3)................................................................................................................12

**QUESTION PRESENTED**

In its September 27, 2017 Decision and Order, the Court bifurcated the trial in this case between liability and damages.  The Court directed the parties to brief the following:  If class liability is established on either of Plaintiffs' meal break or spread of hours claims, what procedure should be employed to address damages?  *See* Dkt. 237 at 21, 30, 36.

**BRIEF ANSWER**

There is only one response to the Court's question:  the only procedure that can be employed here to assess damages -- especially with respect to the off the clock break claim -- is individual testimony from each potential putative class member regarding both whether they are eligible for an individual recovery in the first place, and the nature and extent of such a recovery where warranted.  Assuming this case proceeds to trial on liability, this may be accomplished either through: (1) decertification of the damages class with notice to the class members regarding how they may proceed individually; or (2) with Court supervision during the damages phase of the trial, where each class member must be called to testify as to whether an individual recovery is warranted and their purported damages.

In this seven (7) year old case, Plaintiffs have yet to put forward any trial plan regarding how they intend to prove class liability, much less damages.  *Roach v. T.L. Cannon, et al.,* No. 3:10-CV-0591 TJM/DEP, 2013 WL 1316452, *3 (N.D.N.Y. Mar. 29, 2013) ("Plaintiffs have not offered a damages model susceptible of measurement across the entire class").  There is a reason: there is no way to prove damages (or liability, for that matter), short of the Court receiving individual testimony for each potential putative class member.  Indeed, the law of the case, the established record, the Rules Enabling Act, and due process of law require such individual testimony here.

1

## DETAILED ANSWER

**I.**   **This Court's Multiple, And Correct, Holdings That Damages Are Highly Individualized Is Law Of The Case.**

This Court has already correctly held that damages must be ascertained on an individual basis in this case.  Importantly, this Court previously acknowledged, after a "demanding and rigorous analysis" of the record, that damages are not capable of measurement on a classwide basis on either of Plaintiffs' class claims:

> [A] demanding and rigorous analysis of the evidentiary proof on [Plaintiffs' spread of hours] claim ***does not yield a finding that damages are capable of measurement on a classwide basis***.  Rather, Plaintiffs' proof that some employees, on various occasions, were denied their 10-hour spread payments indicates that ***damages in this putative class are in fact highly individualized***.
>
> * * *
>
> A demanding and rigorous analysis of the evidentiary proof on [Plaintiffs' meal break] claim indicates that ***damages are individualized***… The proof of damages on this claim is ***highly individualized*** in that it is ***dependent on the circumstances of each individual employee*** such as whether: [a] each had access to a time clock or had to use the break log; [b] each actually used/signed the break log; and [c] the manager each worked under failed to enter the correct information onto the payroll records.  ***Damages are also individual to the various class members depending on the number of times each was in a situation falling within the scope of the claim***.  As with the 10-hour spread claim, ***Plaintiffs have offered no model of damages susceptible of measurement across the entire putative break period class***.

*Roach,* 2013 WL 1316452, *3-4 (emphasis added).  This determination was not overturned by the Second Circuit.  To the contrary, the Second Circuit credited this Court's determination that damages are not measurable on a classwide basis.  *See Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 408-409 (2d Cir. 2015).

On remand, this Court again recognized that, for the spread of hours claim, "there will be disparate damages for each class member," "individualized proof of damages," and "if the [spread of hours] claim is successful, there will be ***scores of individual damages assessments***."

*Roach v. T.L. Cannon Corp.,* No. 3:10-CV-0591 TJM/DEP, 2015 WL 10818750, *5 (N.D.N.Y. Sep. 4, 2015) (emphasis added).   The Court agreed with Magistrate Judge Peebles that "individualized proof will relate to the number of occasions defendants failed to pay an employee what he earned, which ultimately is a question bearing on damages." *Id.* at *5.  With respect to the meal break claim, this Court also found that "individualized proof will relate to the number of occasions defendants [allegedly] failed to pay an employee what he earned" and that there will be "***individualized proof of damages***." *Id.* at *11 (emphasis added).  This, of course, assumes that there is any individual liability in the first place, which also can only be determined on an individual basis.

This Court's prior findings regarding the individualized nature of damages is law of the case.  *See* Dkt. 237 at 5 ("the factual underpinnings of a court's prior certification order are deemed to be the law of the case") (citations omitted); *Stinson v. City of N.Y.,* No. 10-cv-4228 RWS, 2014 WL 4742231, *2 (S.D.N.Y. Sept. 23, 2014) (same); *accord Gorham-DiMaggio v. Countrywide Home Loans, Inc.,* No. 1:08-CV-019 (LEK/RFT), 2009 WL 1748743, *8 n.11 (N.D.N.Y. June 19, 2009) ("any decision made on an issue of law made at one stage of a case becomes a binding precedent to be followed throughout the litigation").   Accordingly, any contention that damages can be determined on a classwide basis, through representative proof or that some sample set of the individual damages can be extrapolated across the entire class, must be rejected, as fundamentally unfair, impractical, and inconsistent with this Court's prior orders.

## II.   <u>Individual Testimony Is Required To Determine Individual Entitlement To Damages</u>.

This Court's prior findings regarding the individualized nature of damages were accurate on all accounts.   If liability is somehow established, individual testimony from each class member is required to assess if they are entitled to any damages, and if so, the amount.

A.      **Off The Clock Break Claim.**

Establishing class liability with respect to Plaintiffs' break claim is extraordinarily tricky given the nature of the claim and the many possible alternative outcomes.  In order to prevail on their claim, Plaintiffs bear the ultimate burden of proving that each class member: (1) performed uncompensated work; and (2) Defendants had actual or constructive knowledge of that work.  *See Hinterberger v. Catholic Health Sys.,* 299 F.R.D. 22, *37, 45 (W.D.N.Y. 2014) (to establish claim for non-payment of work during meal break, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work"); *accord* Dkt. 237 at 24.

If Plaintiffs were to prevail during the liability phase of this trial, however, Plaintiffs will not have established either (1) or (2) with respect to any particular class member.  Instead, they will have only succeeded in somehow establishing that some form of a "companywide *de facto* policy existed to ***insert break deductions*** in employees' time records ***whether or not a break was actually taken***."  Dkt. 237 at 27, 28, 29 (emphasis added).  This is the only issue certified for class treatment respecting the meal break class.  *Id.*  In other words, did the Company have a policy to automatically deduct a half-hour lunch break regardless of whether a break was taken?  But what about the situations where a break was inserted and it was actually taken?   Not even Plaintiffs are claiming that there is liability in this situation, or that damages are due for every single instance where a break was inserted.   In other words, we need to determine exactly when alleged damages were incurred -- that is, only when breaks were inserted and ***none were taken***.  Because, as will be demonstrated below, it is not possible to make such a determination without an individualized inquiry, this does not lend itself to representative evidence and class treatment.

As an initial matter, the record is clear that the Company has a formal, published policy providing that employees who work a shift of more than six hours: "MUST clock out for 30

minutes sometime near the middle of his/her scheduled shift for a meal break."  Dkt. 72-15 at D0380 (emphasis original).  Thus, even if Plaintiffs were successful in establishing that a *de facto* policy existed to automatically deduct breaks, a class member will not have suffered a dollar in damages if that class member always followed the Company's official policy that when they worked over six hours, they were required to take a 30 minute, uninterrupted meal break.  *Id.*  Therefore, unless Plaintiffs' position is that no class member ever took a break, and thus any insertion of a break into a class members' time was false in every single instance (in which case Plaintiffs would be able to establish the requisite uniformity such that representative evidence as to damages would be appropriate here), then individual testimony must be offered to prove that class members deviated from the Company's lawful, published policy that when they worked a shift of over six hours, they were required to take a 30 minute uninterrupted meal break.  There is no way around this.

Here, Plaintiffs do not take the position that class members never received their 30 minute uninterrupted break.  Consequently, based on the automatic deduction issue certified by the Court, even if the answer to the Court's question is "YES" -- *i.e.*, that Defendants did automatically deduct a half-hour meal break from employee time when they worked over six hours -- this does not advance the ball one inch in determining liability and/or damages for any given class member.  Certainly, if every class member followed the Company's published break policy, there would be ***no damages***.  This is why scores of cases in this Circuit have held that such automatic deduction polices are not *per se* unlawful, that claims for uncompensated time worked during automatically deducted meal breaks are not susceptible to classwide proof, and that an individual inquiry must be utilized to determine if any off the clock work was in fact performed, to the employer's knowledge, during the automatically deducted break.  *See, e.g.,*

*Desilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 321, 324 (E.D.N.Y. 2015) (automatic deduction of half-hour meal period not *per se* unlawful, and variations in "whether and when Plaintiffs took meal breaks, and the frequency with which they took them depended upon their particular work environment" and militate against proceeding as a collective action); *Mendez v. U.S. Nonwovens Corp.,* No. 12-5583 (ADS) (SIL), 2016 WL 1306551, *6 (E.D.N.Y. Mar. 31, 2016) (automatic deduction policy not *per se* illegal and decertifying class); *Mendez v. U.S. Nonwovens Corp.,* 314 F.R.D. 30, 49-50 (E.D.N.Y. 2016) (same); *Hinterberger,* 299 F.R.D. at 36 ("Courts in this Circuit have expressly recognized that automatic meal deduction policies are not *per se* illegal" and declining to certify class where there were "tremendous variation in the circumstance of any frequency with which CHS employees experienced missed or interrupted meal breaks"); *accord Wolman v. Catholic Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 300-01 (E.D.N.Y. 2012) (rejecting argument by same Plaintiffs' counsel that it was unlawful for Defendants to have automatic deduction policy where employees alleged they were also "forced" to work through their meal breaks).

Here, the record reveals that class members consistently took their breaks, as required by Company policy.  Defendants provided **_91_** declarations of hourly employees, from **_23_** different restaurants, all of whom **_verified under penalty of perjury_** that they took a 30 minute meal break if they worked a shift over 6 hours, evidencing that the Company's break policy was uniformly enforced.  *See* Dkt. 104-10, 104-11.[1]  Class members also testified at deposition that they always

---

[1]      *See, e.g.,* Dkt. 104-10 at 85, Hurley Decl., ¶ 5 ("I have **_always_** taken a break when I have worked a shift of six hours or more"); Dkt. 104-10 at 93, James Decl., ¶ 4 ("When I work six hours or more, I **_always_** take a break"); Dkt. 104-10 at 98, Jesberger Decl., ¶ 11 ("When I [work shift longer than 6 hours], I **_always_** get my half hour break"); Dkt. 104-10 at 103, Keranen Decl., ¶¶ 11, 13 ("I **_haven't ever worked_** a 6 hour shift and not gotten a [half hour] break"); Dkt. 104-10 at 110, Lestenkof Decl., ¶ 4 ("I **_always_** took a thirty minute break"); Dkt. 104-10 at 112, Lynn Decl., ¶ 14 ("I have **_always_** taken a half hour break when I have worked [shifts that are six hours

received their 30-minute uninterrupted meal break.  *See* Dkt. 217-15, Jacob Dep. 14:11-15:4 (always received 30-minute uninterrupted meal break); Dkt. 217-14, Miller Dep. 16:3-17:4 (same); Dkt. 217-13, Rockhill Dep. 12:24-13:12 (same); *accord* Dkt. 217-4 (Niagara breaks 14 for dinner and 12 for lunch and "Every server takes a break") (emphasis original). These class members have not been treated unlawfully in any manner and would not be entitled to any damages, even if Plaintiffs somehow succeeded in the liability phase of the trial.  The same would be true for an individual who filled out a break log and actually took the break or an individual who failed to fill out the break log even though they took a break.  The point is that there is no way to know which bucket(s) an individual fell into on any particular day without very specific individualized proofs.

In addition, even if a class member worked during their break, day to day damages will vary depending on how long they worked during their break -- which could span anywhere from 1 to 30 minutes -- and how frequently this occurred.  In fact, every class member deposed admitted to taking breaks, although their testimony regarding the frequency and length of those breaks differed considerably.  *See, e.g., Supra* at 7 (Jacob, Miller and Rockhill always received breaks); Dkt. 217-7, Resue Dep. 29:20-24, 36:15-19, 39:2-4, 42:23-43:20 (Amanda Resue testified that some days she received a full 30-minute break, other days she received a shorter break, whether she received a break varied from day to day); Dkt. 217-9, Sitarski Dep. 30:3-7, 37:20-39:8 (Sarah Sitarski testified that sometimes she received a break, but she "probably"

---

or longer]"); Dkt. 104-111 at 5, Mauro Decl, ¶ 19 ("During ***my entire time at Applebee's***, I have ***always*** taken a half hour break when I have worked a shift of 6 hours or more"); Dkt. 104-11 at 12, D. Miller Decl., ¶ 6 ("I have ***never*** worked a shift of six hours or more and ***not taken a break***"); Dkt. 104-11 at 65, Schihl Decl., ¶ 3 ("Whenever I work a shift of six hours or more, I take a break for thirty minutes"); Dkt. 104-11 at 74, Sherlock Decl., ¶ 17 ("I have ***always*** gotten a half hour break when I have worked a shift of 6 hours or more"); Dkt. 104-11 at 80, Smith Decl., ¶ 3 (same); Dkt. 104-11 at 88, Swan Decl., ¶ 4 (same); Dkt. 104-11 at 99, Torres Decl., ¶ 3 (same); Dkt. 104-11 at 118, Yates Decl., ¶ 5 (same) (emphasis supplied as to all).

would not receive a break on Mondays and Wednesdays, during the time period prior to November 2009, but not after); Dkt. 217-10, Soluri Dep. 18:3-9 (Barbara Soluri testified that when she worked a shift over six hours, she sometimes received a break); Dkt. 217-6, Barber Dep. 26:18-27:2, 30:3-6, 40:13-41:8, 44:18-45:10 (Amy Barber testified she "never" received a break, but then again she had time to "eat [her] French fries and mini burgers" and this would take anywhere between 10 and 40 minutes); Dkt. 72-4 at 169, Roach Dep. 169:3-7 (60% of the time, named Plaintiff Matthew Roach would receive a break).  Thus, even if some form of a *de facto* policy existed, in limited instances, to insert breaks regardless of whether one was taken, the damages for each class member would vary depending on the frequency and duration of their missed breaks.  For example, an employee's damages who worked 10 minutes during their break would be different than an employee who worked during their entire 30 minute meal break, and an employee who only missed their meal break on 4-5 occasions would have different damages than an employee who missed their meal break more frequently.

In addition, an individualized inquiry is required to determine whether, respecting each individual class member, the *de facto* policy of inserting breaks where none were taken was, in fact, applied to them.  The record reflects many instances where the time between when an employee clocked-in and clocked-out exceeded six hours, without any break deducted from their time records.  *See* Dkt. 228-19, Curwin Decl., Ex. D; Dkt. 234-1, Pizzutelli Reply Decl., ¶¶ 8-12.[2]

---

[2]     The damages calculation is also further complicated because even if it is determined that a class member worked off the clock during their meal break, determining what *wage rate* they should be paid is an individual by individual analysis.  Pursuant to N.Y.L.L. § 652(4), "the wage for an employee who is a food service worker receiving tips shall be a cash wage of at least [tipped minimum wage]… provided that the tips of such an employee, when added to such cash wage, are equal to or exceed the minimum wage in effect pursuant to subdivision one of this section…".  N.Y.L.L. § 652(4) (effective 12/6/2004 through 3/28/2013).  Thus, if a class

Plaintiffs' decertification papers intimate that they may propose calculating damages by comparing break logs to time records. ***As this Court previously acknowledged, however, a comparison of the time records and break logs does not definitively establish a NYLL violation***. *See* Dkt. 85, pp. 12-13 ("a comparison of the break records to time logs would not reveal the existence of a Labor Law violation"); Dkt. 108, pp. 3-4 ("the [time records and break logs] sought by Plaintiffs would not definitively establish a New York Labor Law violation"). Even if Plaintiffs were to argue that such records evidence that the Company's policy that employees sign a break log when they took a break was not uniformly followed, there is nothing unlawful in this regard.[3] And, it by no means establishes that employees uniformly failed to take their breaks and/or failed to be compensated when they worked through their breaks. Indeed, the record shows that some class members signed break logs, and others did not, and some restaurants used break logs, and others did not consistently do so. *See, e.g.,* Dkt. 217-19, Blesinger Interrogatory Response, ¶ 10 (there was no "break system" at Brewster restaurant);

---

member claims to have worked 15 minutes of a 30 minute meal break, whether they are entitled to the tipped minimum wage for those 15 minutes, or the standard minimum wage (if they did not receive enough in tips to equal or exceed the minimum wage), would be an additional, individualized, inquiry. *See Jacob v. Duane Reade, Inc.,* 293 F.R.D. 578, 592 (S.D.N.Y. 2013) (individualized inquiry required where regular rate of pay differed among class members and required a week-by-week analysis per class member).

Finally, respecting Plaintiffs' overtime claims, for each class member, whether or not he or she was entitled to overtime in any pay period would also require a determination of whether or not that individual worked in excess of 40 hours in any pay period when they also allegedly worked during their meal break and were not properly compensated. The record demonstrates that class members did not uniformly work over 40 hours, nor were they uniformly deprived of their meal break. *See* Dkt. 104-10, 104-11; Dkt. 228-19, Curwin Decl., Ex. L.

[3]      Defendants had no obligation to use break logs to record breaks. "While the FLSA requires that employers 'make, keep, and preserve' a record of hours worked by their employees" -- which Defendants clearly did here, with their time records -- "it does not prescribe ***any particular form of recordkeeping.***" *Zivali v. AT&T Mobility, LLC,* 784 F. Supp. 2d 456, 461 (S.D.N.Y. 2011) (emphasis added). "There is no legal requirement that employers maintain time clocks, that hours worked be contemporaneously recorded, or that employees be permitted to enter their own adjustments to a time record without verification." *Id.*

Dkt. 217-8, Cook Dep. 37:1-13 ("break log was not always present" at Amherst and sometimes she took a break and did not sign a break log); Dkt. 104-10 at 123, Martinez Decl., ¶¶ 3, 5, 22, 23 (it was never a regular practice for her to sign a break log, but she worked 6 hours every shift and "always gets a 30 minute break").  The record also shows that some class members claim to have clocked in and out for their breaks (Dkt. 217-7, Resue Dep., 29:7-19; Dkt. 217-9, Sitarski Dep. 45:1-9), and at least one restaurant had their servers transfer their tables and clock out for breaks (Dkt. 217-4, Sabio Aff., Ex. B).  Thus, whether a break log exists, or is signed or unsigned, is not determinative of whether an employee, in fact, received a break.  Indeed, a manager may have asked for an employee's consent to sign the break log on their behalf and/or the employee might have left at the end of the day before signing the break log but having nevertheless still taken their break, as they were required to do by Company policy.  *See* Dkt. 72-15 at D0380.  Further, the manager may have forgotten to use a break log on any given day, but employees nevertheless received their 30 minute uninterrupted meal break.  The break logs could have been lost.  Or, the employee could have simply clocked in/out for his or her break, instead of signing a break log. The possibilities are endless.  The only way for Plaintiffs to establish that they either took, or did not take, a break, and for how long they worked during their break, is through individual testimony.  There is no short cut.  For these same reasons, sampling also does not work given the nature of the claim and extreme variances between class members.

Plaintiffs' own submissions illustrate this point.  In opposition to Defendants' motion for decertification, Plaintiffs' attorney submitted an analysis where she claims that "plaintiffs' rest break claims occurred at various locations and times."  Dkt. 228-19, Curwin Decl. ¶ 6.  However, in support, she proceeds only to compare time records against break logs.  For example, she

compares the time records for one alleged class member, S.P., against the break logs.  *Id.* at ¶ 9.[4]

She concludes that on October 12, 2007 there was an "unsupported rest break deduction" for S.P.

because there was allegedly a rest break inserted into her time, and because her name was

allegedly not listed on a corresponding break log for this day.  *Id.* at ¶¶ 9, 21, 23.  Similarly,

Plaintiffs' counsel looked at an instance where, on April 25, 2009, another alleged class member,

C.D., had a rest break allegedly deducted from her time, and where she was allegedly listed on,

but did not sign, a break log.  *Id.* at ¶ 10.  Again, Plaintiffs' counsel concludes this is an

"unsupported rest break deduction."  *Id.* at ¶¶ 21, 23.  Plaintiffs claim to have performed this

same analysis for a select number of restaurants during a short time frame and identified other

purported "unsupported rest break deductions."  *Id.*  However, Plaintiffs do not, because they

cannot, conclude, based on this analysis, that any class member performed uncompensated work

during their meal break.  *Id.*  Certainly, just because S.P. and C.D. did not sign a break log does

not mean that they, or any other class member for that matter, did not take a break.  Perhaps they

simply forgot to sign the break log.  Maybe it was not the practice of their managers to require

signing a break log.  Again, the possibilities are endless.  We simply do not know without

additional evidence.  Instead, S.P., C.D., and every other potential putative class member would

be required to testify as to this point.  Due Process dictates that Defendants be given the

opportunity to question class members regarding their testimony in this regard, as well.

More fundamentally, even if Plaintiffs were to propose this (faulty) comparison of the

break logs to the time records to establish damages, such proposal runs afoul of *Comcast Corp.*

*v. Behrend,* 133 S. Ct. 1426 (2013), which held that plaintiffs are only entitled to damages

resulting from their theory of class injury.  *Id.* at 1433.  "[A] model purporting to serve as

---

[4]     The initials of individual class members referenced in Plaintiffs' counsel's analysis are
used instead of their full name to protect their privacy.

evidence of damages… must measure only those damages attributable to that theory." *Id.* "If the model does not even attempt to do that," the Court explained, "it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*   As the Second Circuit held in this case:  "*Comcast* held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury."  *Roach,* 778 F.3d at 407.

In this case, the only common issue of liability recognized by the Court is whether Defendants had a policy to automatically insert meal breaks into employee time, regardless of whether a break was taken.  *See* Dkt. 237 at 27, 28, 29.  Aside from the fact that there is nothing *per se* illegal or improper about automatically deducting a meal break from an employee's time, Plaintiffs' proposed damages model (comparing break logs to time records) does not even purport to calculate class damages based on their "automatic deduction" theory of liability. Plaintiffs' analysis only purports to assess whether any break in any employee's time punches is either supported or "unsupported" by a break log -- it does nothing to establish whether a break was, in fact, automatically deducted from an employee's time when no break was, in fact, taken. This is exactly the type of mismatch between a damages model and theory of liability that was rejected in *Comcast,* and reaffirmed by the Second Circuit in this case.

Simply put, the variance between the putative class members and the records make clear the lack of uniformity when it comes to whether there is any individual liability, much less the extent of that individual liability.   There is no way to prove or calculate damages through representative evidence, and individual testimony is unavoidable.   To the extent Plaintiffs propose a comparison of the break logs to the time records, this approach has already been rejected by this Court as a mechanism for establishing liability (and therefore damages), and

does not pass muster under *Comcast.*   In sum, class treatment is not feasible with respect to liability or damages, even if the common question as to liability adopted by the Court is answered in the affirmative.

### B.      Spread of Hours Claim.

It is not disputed that during the relevant time period, Defendants had a formal policy of providing spread of hours pay in situations where it was required.  *See* Dkt. 91-5 at 2; Dkt. 91-6 at 2.   Thus, like the meal break claim, with respect to Plaintiffs' spread of hours claim, if Plaintiffs were to prevail on liability, Plaintiffs will have only succeeded in establishing that Defendants had some form of a *de facto* contrary policy of failing to pay spread of hours compensation when minimum wage employees worked a ten-hour spread.  Dkt. 237 at 13, 17. However, the record is indisputably clear that not all employees who worked a ten-hour spread were deprived of their spread of hours pay.  For example, Defendants submitted *67* declarations from hourly employees, managers and Directors of Operations, which all confirm Defendants' lawful policy with regard to spread of hours, and which also confirm that employees were properly paid spread pay.  *See* Dkt. 104-5, ¶ 28, Ex. Q, R.  In addition, class members testified that they received spread pay.  Angela Mete testified at deposition that in the 12 years she has been employed at the Johnstown restaurant, she may have worked a ten hour spread once a year, and that she has received payment for working a spread of hours.  *See* Dkt. 217-12, Mete Dep. 38:16-40:10.  Jessica Rockhill similarly testified that she was always paid an extra hour at the regular minimum wage when she worked a spread of hours.  *See* Dkt. 217-13, Rockhill Dep. 22:21-23:2.  Barbara Soluri also confirmed that she received spread of hours pay.  *See* Dkt. 217-10, Soluri Dep. 32:7-17, 33:4-34:24.  Thus, even if a form of a *de facto* policy was proven, this is of little utility in determining whether any particular minimum wage employee, much less all of them, is entitled to any damages.  *Maneely v. City of Newburgh,* 208 F.R.D. 69, 76 (S.D.N.Y.

13

2002) (certifying class to determine if policy was unconstitutional, but finding that class representative "may be precluded from recouping damages at a recovery stage" as that policy was applied to him). Each potential putative class member would be required to come forward with individualized proof as to whether the *de facto* policy was followed, or deviated from, as applied to them, and to what extent, in order to establish any entitlement to damages. Again, this is not the case where Defendants did not ever pay spread of hours pay, and therefore any minimum wage employee who worked a spread of over ten hours is entitled to damages. Instead, every employee who worked in a minimum wage position for a spread of more than ten hours will have to be scrutinized, on a case by case basis, to determine if the Company's alleged *de facto* policy was applied to them.

### III.   Defendant Is Entitled To Defend Itself Against Each Class Members' Individualized Damages Claim Pursuant To The Rules Enabling Act And Due Process Of Law.

The factual variety among the individual class members also means that Defendant's defenses vary from class member to class member. Any suggestion that sampling or some other form of representative proof is permissible here would run afoul of the Rules Enabling Act and due process of law by absolving each class member of their responsibility to prove personal injury, and by depriving Defendants of their right to litigate their defenses to Plaintiffs' individual claims.

The Rules Enabling Act, 28 U.S.C. § 2072, provides that the Supreme Court shall have the power to prescribe general rules of practice and procedure for cases in the United States District Courts, however, "[s]uch rules shall not abridge, enlarge or modify any substantive right." *Id.* at § 2072(a), (b).

The Rules Enabling Act was considered in the context of an employer's right to defend itself against damages in a class action in the seminal case of *Wal-Mart Stores, Inc. v. Dukes,*

564 U.S. 338, 131 S. Ct. 2541 (2011).  In *Dukes*, the United States Supreme Court considered plaintiff-employees' proposal to prove damages using an extrapolation method, which the Supreme Court described as "trial by formula."  *Id.* at 2561.  Under this method, a sample set of class members would be selected, to whom liability for sex discrimination and backpay owing would be determined.  *Id.*  The percentage of claims determined to be valid would then be extrapolated and applied across the entire remaining class, and the number of (presumptively) valid claims would be multiplied by the average backpay award in the sample set to arrive at the entire class recovery without further individualized proceedings.  *Id.*  The Supreme Court held: "***We disapprove that novel project***."  *Id.* (emphasis added).  The Court reasoned that because "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b), a class cannot be certified on the premise that [defendant] will not be entitled to litigate its statutory defenses to individual claims."  *Id.* at 2561.[5]

---

[5]     In *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045-47 (2016), the Supreme Court considered whether representative evidence could be used to prove classwide liability in a wage and hour case.  In that case, every member of the class donned/doffed protective equipment, for which they were not paid, and offered statistical and expert evidence to show the amount of time it took the sample set to don/doff such equipment.  The Court held that representative evidence was permissible ***if*** each class member could have relied on that sample to establish liability had he or she brought an individual action.  *Id.* at 1046.  "If the sample could have sustained a reasonable jury finding as to hours worked in each employee's individual action, that sample is a permissible means of establishing the employee's hours worked in a class action."  *Id.* at 1046-1047.  The Court noted that its holding was in accord with *Dukes,* because the underlying question in both cases is whether the sample at issue could have been used to establish liability in an individual action.  *Id.* at 1048.  The *Tyson* court held that, in contrast to *Dukes,* the study at issue could have been sufficient because, among other reasons, the employees worked in the "same facility." *Id.*

        Unlike in *Tyson,* here, Plaintiffs do not all work in the same facility, but instead work in over 53 different restaurants.  In addition, unlike in *Tyson,* Plaintiffs have identified no expert, nor have they offered any statistically significant analysis or other representative proof to somehow show the requisite uniformity with respect to how often employees took breaks and, if they worked through their break, what percentage of their break they worked through.  *See*

In addition, due process requires that Defendants be permitted to defend themselves against Plaintiffs' individual damages claims.   "[W]henever damages calculations require significant degrees of individualized proof, defendants are entitled to respond to and address such variances -- in fact, due process requires it."  *Jacob,* 293 F.R.D. at 592.   "Available defenses and procedural fairness go hand-in-hand, as the efficiency gained by holding one trial as opposed to many cannot be obtained at the expense of a defendant's due process rights.'"  *Scott v. Chipotle Mexican Grill, Inc.,* No. 12-cv-8333 (ALC)(SN), 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017).

Here, Defendants have the right to assert their individual defenses.  As this Court has recognized, if liability is found to exist, Defendants should be entitled to "raise any relevant disparate individual treatment of the opt-in plaintiffs in the damages phase."  Dkt. 237 at 34-35.

---

*Gregory v. Stewart's Shops Corp.,* No. 7:14-CV-33 (TJM/ATB), 2016 WL 8290648, *20, n. 43 (N.D.N.Y. July 8, 2016) ("Plaintiffs in this case have not provided any statistical or other objective basis for determining, on a class-wide basis, that [Defendant] did not provide its clerk/cashiers with a 'sufficient' number of uniforms… Hence, the *Tyson* case provides no support for plaintiffs' position").  Also, unlike in *Tyson,* where all of the class members donned/doffed protective wear for which they were not compensated, here, there is no similar consistency across the class which would make representative evidence as to some class members admissible in the individual trials of others.  Whether some employees took breaks and/or worked through their meal breaks, and if they worked during those meal breaks, for how long, and whether they were paid or unpaid for work performed during those breaks, affects only their own damages, and not any damages claimed by a different employee, at a different restaurant, during a different day/month/year, on a different shift, and under a different manager.  *See, e.g., Local 589, Amalgamated Transit Union v. Mass. Bay Transp. Auth.*, No. 13-CV-11455-ADB, 2016 WL 5109508, *4 (D. Mass. Sep. 20, 2016) ("although members of the class are all seeking compensation for the same activity… it is not as readily generalizable as the donning and doffing in *Tyson Foods*… members of the class traveled to different locations, under different conditions, using different modes of transportation… unlike in *Tyson Foods,* Plaintiffs (three years into this litigation) have not offered any tangible way to overcome these individual differences, such as through expert testimony or other statistical evidence"); *Angeles v. U.S. Airways, Inc.,* No. C 12-05860 CRB, 2017 U.S. Dist. LEXIS 20161, *11 (N.D. Cal. Feb. 13, 2017) ("This case is thus the opposite of [*Tyson*]… here employees were donning, doffing, chatting, reading, napping, watching TV, and maybe even grilling during the Grace Periods – who knows what else.  Representative evidence would not fly for individual FSAs, and it will not fly for a class of them").

Defendants' defenses will similarly vary amongst the class members, given their disparate treatment.

With respect to Plaintiffs' meal break claims, for example, Defendants will be able to defend against some class members' claims by showing that they did not, in fact, work during their meal breaks, and if they did, this varied considerably and inconsistently amongst class members. *See supra* at 6-8. In *Desilva,* a similar meal break case, the Court aptly summarized why Defendants' due process rights would be compromised if it was denied the opportunity to make such an individual inquiry:

> As is no doubt evident, the [plaintiffs'] experiences concerning their meal breaks are diverse. In truth, ***whether Plaintiffs missed a meal break and reported it varies from assignment to assignment and from [plaintiff] to [plaintiff]. Attempting to generalize a [plaintiff's] experience using a representative sample would be a highly inaccurate method of determining the validity of Plaintiffs' claims***…Even more troubling is that [the defendant] will not have an opportunity to meaningfully cross examine opt-in Plaintiffs concerning their meal breaks, which will produce unfairness on both sides… If the Court were to follow Plaintiffs' approach, it would be left in the untenable position of either having to hold, in effect, 1,196 mini-trials, or ***depriving Defendants of their due process right to present its full defense***.

*Id.* at 327-328 (internal citations omitted) (emphasis added). As in *Desilva,* here, Plaintiffs' diverse experiences make using a representative sample a highly inaccurate, undoubtedly unconstitutional, method for calculating damages. For example, named Plaintiff Mathew Roach's experience at the Front Street restaurant, where he claimed to receive a break 60% of the time (Dkt. 72-4 at 169) is not representative of Ryan Jacob's experience at the Amherst restaurant, and Jessica Rockhill's experience at the Saratoga Spring's restaurant, where both testified that they always received their 30 minute uninterrupted meal break (Dkt. 217-15, Jacob Dep. 14:11-15:4; Dkt. 217-13, Rockhill Dep. 12:24-13:12).

In addition, Defendants have other individualized defenses to certain class members'

damages claims.  For example, Defendants will be able to defend against some class members'

damages claims by showing that Defendants did not have actual or constructive knowledge that

the class members did not take a break when one was allegedly inserted into their time.  *Zivali,*

784 F. Supp. 2d at 467-68 (defenses available to employer were "highly individual to each

plaintiff" and "highly fact specific" because plaintiffs must demonstrate that "each individual

manager had actual or constructive knowledge that plaintiffs were performing off-the-clock work

without proper compensation"); *Mendez* 2016 WL 1306551, at *6 ("the defenses available to

Defendants will necessarily vary [because] those Plaintiffs who claim to have actually worked

will have to establish that the employer had actual or constructive knowledge that he performed

uncompensated overtime"); *Desilva,* 27 F. Supp. 3d at 325 ("in order for Plaintiffs to prevail on

their claims [regarding off-the-clock work during lunch break], they must demonstrate that

[employer] had actual or constructive knowledge of the meal-period work performed"); *see also*

*Bell v. Reading Hosp. & Med. Ctr.,* No. 13-CV-05927, 2016 WL 3902938, *11 (E.D. Pa. July

19, 2016) ("Plaintiffs further allege that defendant had knowledge that plaintiffs worked during

their meal breaks without being paid.  This allegation also requires an individualized inquiry

with respect to each plaintiff").  Here, the record again shows that the knowledge of each

individual manager varied, individual managers corrected uncompensated time when brought to

their attention, and that employees voluntarily worked through their breaks unbeknownst to

management.  For example, some class members submitted sworn declarations or testified that,

at their individual restaurants, when their managers learned that employees did not receive pay

for all time worked, Defendants promptly made complete payment.  *See, e.g.,* Dkt. 217-15, Jacob

Dep. 27:15-30:21; Dkt. 217-11, Canavan Dep. 21:15-22:24; Dkt. 104-10 at 49, Denny Decl., ¶

10; Dkt. 104-10 at 56, Donovan Decl., ¶ 9; Dkt. 104-10 at 86, Hurley Decl., ¶ 9; Dkt. 104-10 at

90, Hynes Decl., ¶ 10; Dkt. 104-10 at 101, Kalinowski Decl., ¶ 10.   Other class members testified/declared that they worked through their breaks voluntarily and without their manager's knowledge.   *See* Dkt. 217-9, Sitarski Dep. 96:20-97:13; *see also* Dkt. 104-10 at 60, Doty Decl., ¶ 9.  Only an individualized inquiry can elicit testimony concerning this dispositive defense.

Defendants will defend against still other class members' claims by showing that the time worked during their breaks was *de minimis*.  *See Zivali,* 784 F. Supp. 2d at 468 (employer can "defend against some of plaintiffs' claims by demonstrating that certain off-duty work was de minimis"); *Desilva,* 27 F. Supp. 3d at 325 n. 9 (same); *Mendez,* 2016 WL 1306551 at *6 ("de minimis" doctrine permits employers to disregard otherwise compensable work when the matter in issue concerns only a few seconds or minutes of work).  "The extent to which work was de minimis, however, will necessarily vary widely according to the particular situation of each individual plaintiff."  *Id.* at 468.  To preclude individualized inquiry would have the effect of eliminating entirely this defense.

Similarly, with respect to Plaintiffs' spread of hours claim, Defendants will be able to defend against some class members' spread of hours claims by showing that they always received spread of hours pay, and therefore are not entitled to any damages.  *See supra* at 13.  Indeed, Plaintiffs' own analysis recognizes that of the 29 individuals they sampled, they identified ***no spread of hours violation*** for 7 of them.  *See* Dkt. 288-19, Curwin Decl., ¶ 33.  Defendants will be able to defend against still other class members' damages claims by showing that Defendants did not have actual or constructive knowledge that employees worked a spread of hours for which they were not compensated.  *See* Dkt. 237 at 13 (Defendants had to know, or have reason to know, that minimum wage employees worked ten-hour spreads).

IV.     **The Procedure For The Court To Receive Individual Testimony.**

As set forth above, assuming that the Court does not determine that the need for individualized damages does not render the whole case unsuitable for class treatment, damages must be determined on an individual basis, through individual testimony from each potential putative class member.  This can be accomplished in one of two ways:

First, if the alleged *de facto* policies are established, the case could be decertified as to damages, and notice could be provided to the class members regarding how they may proceed to prove damages on an individual basis.  This approach was recognized by the Second Circuit in *In re Visa Check/MasterMoney Antitrust Lit.,* 280 F.3d 124 (2d Cir. 2001):  "There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including… decertifying the class after the liability trial and ***providing notice to class members concerning how they may proceed to prove damages***."  *Id.* at 141 (emphasis added); *see also Maneely,* 208 F.R.D. at 69, 79 ("If the class prevails on these issues, then individual plaintiffs can come forward to litigate, in individual suits, the issue of whether their rights were violated and whether they suffered damages"); *Jacob,* 293 F.R.D. at 587 (if successful on the merits, plaintiffs are required to "proceed individually on their [individualized] damages claims"); *see also Tardiff v. Knox Cty.,* 365 F.3d 1, 7 (1st Cir. 2004) ("Failing some practical solution allowing full resolution of all class damages claims in a single case, the court could enter a judgment of liability, leaving class members to pursue damage claims in separate lawsuits").  As the Southern District observed in *Maneely,* resolving the liability question will provide an "incentive" for class members to come forward because it will be res judicata in each individual lawsuit, and because plaintiffs who prevail may recoup attorneys' fees, they will easily be able to obtain counsel.  *Maneely,* 208 F.R.D. at 78.

Second, alternatively, this Court can retain jurisdiction over the damages phase of the

trial, and require each potential putative class member to produce individual proof and testimony to support their damages claim, or appoint a magistrate judge to oversee such proceedings. *See In re Visa Check,* 280 F.3d at 141 ("appointing a magistrate judge or special master to preside over individual damages proceedings" is management tool available to district court to address individualized damages issues).

Either way, any class member seeking to recover damages based on this Court's finding of some form of liability on either claim, must come forward and present individual proof and testimony, subject to cross examination, as to their entitlement to any damages here.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that, should the Court determine that class treatment is still appropriate given the clear need for individualized inquiries with respect to damage entitlement, and Plaintiffs meet their ultimate burden of establishing class liability on either of Plaintiffs' meal break or spread of hours claims, that this Court should require individualized proof from each class member in the form of individual testimony with respect to any entitlement to a recovery.

Defendants further respectfully request leave to respond to Plaintiffs' brief regarding Plaintiffs' proposed procedure to be employed to address damages, as to date, Plaintiffs have never provided a proposed trial plan to which Defendants could meaningfully respond. Defendants suspect that any proposed procedure to address class damages here will not comport with *Comcast's* holding that the model for determining classwide damages must actually measure damages that result from the class's certified theory of injury.

21

Date:   November 1, 2017                    */s/ Jessica F. Pizzutelli*
                                           Craig R. Benson (514156)
                                           Jessica F. Pizzutelli (5278296)
                                           LITTLER MENDELSON, P.C.
                                           375 Woodcliff Drive, 2nd Floor
                                           Fairport, NY  14450
                                           585.203.3400
                                           cbenson@littler.com
                                           jpizzutelli@littler.com
                                           *Attorneys for Defendants*

150831489