**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | |
|---|---|
| **MATTHEW ROACH,** *et al.,* | |
| *Plaintiffs,* | |
| **v.** | **(Lead Case)** |
| **T.L. CANNON CORP.,** *et al.,* | **Civil Action No.** |
| *Defendants.* | **3:10-cv-00591-TJM-DEP** |

| | |
|---|---|
| **ASHLEY HICKS,** *et al.,* | **(Member Case)** |
| *Plaintiffs,* | **Civil Action No.** |
| | **18-cv-01177** |
| **v.** | |
| **T.L. CANNON CORP.,** *et al.,* | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT .................................................................................... 1

RELEVANT FACTUAL BACKGROUND ................................................................... 2

     *Procedural History* .............................................................................................. 2

          *Roach* Case.......................................................................................... 2

          *Hicks* Case .......................................................................................... 4

          Settlement Discussions ......................................................................... 6

     *Settlement Administration* ................................................................................. 6

     *Settlement Agreement* ....................................................................................... 7

          Settlement Amount .............................................................................. 7

          Plan of Allocation ............................................................................... 7

          Release of Claims ............................................................................... 8

ARGUMENT ............................................................................................................... 9

I.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT .. 9

     A.     Complexity, Expense, and Likely Duration ................................... 11

     B.     Reaction of the Class to the Settlement .......................................... 12

     C.     Stage of Proceedings and Amount of Discovery ............................ 13

     D.     Risks of Establishing Liability and Damages, and of Maintaining the Class Through Trial ............................................................................ 13

     E.     Defendants' Ability to Withstand a Greater Judgement Is Not Assured..... 15

     F.     The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation................................... 15

i

**II.**     **SERVICE PAYMENTS TO THE NAMED PLAINTIFFS ARE JUSTIFIED** ........ 16

    **A.**     **The Named Plaintiffs Assumed Great Risk by their Respective Participation** ...................................................................................................................... 18

    **B.**     **The Time and Effort Expended by the Named Plaintiffs Warrants the Amount Requested** ............................................................................................. 19

    **C.**     **The Named Plaintiffs Experienced Burden in Assisting Class Counsel** ........ 20

    **D.**     **The Ultimate Recovery to the Class is Significant** ........................................... 21

**CONCLUSION** ................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Bezio v. General Elec. Co.*,
    655 F.Supp.2d 162 (N.D.N.Y. 2009) ........................................................................ 9

*Ceka v. PBM/CMSI Inc.*,
    No. 12 Civ 1711, 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014) ............................... 17

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................................ 10, 11

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .............................................................................. 11, 12

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................... *passim*

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    No. 05 CV 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .................... 15

*Goldberger v. Intergrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ..................................................................................... 10

*Guippone v. BH S&B Holdings, LLC*,
    No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ............................ 19

*Hanifin v. Accurate Inventory and Calculating Serv., Inc.*,
    No. 11 Civ. 1510(MAD)(ATB), 2014 WL 4352060 (N.D.N.Y. Aug. 20, 2014) .................... 10

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................... *passim*

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ........................................................................... 12

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................................................... 12, 13

*In re Paine Webber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) ..................................................................................... 9

*In re Prudential Sec. Inc. Ltd P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................... 10

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).......................................... 12, 18

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
  No. 5:15-cv-00441 (MAD/TWD), 2016 WL 3406111 (N.D.N.Y. June 17, 2016) .............. 9, 11

*Massiah v. MetroPlus Health Plan, Inc.*,
  No. 11 Civ. 5669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ............................................. 17

*Mentor v. Imperial Parking Sys., Inc.*,
  No. 05 Civ. 7993, 2010 WL 5129068 (S.D.N.Y. Dec. 15, 2010) ............................................. 18

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ..................................................................................... 16

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ..................................................................................................... 15

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
  No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .......................................... *passim*

*Plummer v. Chem. Bank*,
  668 F.2d 654 (2d Cir. 1982) ..................................................................................................... 13

*Raniere v. Citigroup Inc.*,
  310 F.R.D. 211 (S.D.N.Y. 2015) .............................................................................................. 18

*Reyes v. Altamarea Grp., LLC*,
  No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...................................... 17, 21

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) .............................................................................................. *passim*

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ. 6458(RLE), 2012 WL 1320124 (S.D.N.Y. April 16, 2012) ............................ 18, 19

*Tiro v. Pub. House Invs., LLC*,
  No. 11 Civ 7679, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ....................................... 16, 18

*Torres v. Gristede's Operating Corp.*,
  Nos. 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010).................... 18

*Velez v. Majik Cleaning Ser., Inc.*,
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ............................................ 17

*Viafara v. MCIZ Corp.,* No. 12-Civ.-7452,
No. 12-Civ.-7452, 2014 WL 1777438, at *8 (S.D.N.Y. May 1, 2014)................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
396 F.3d 96 (2d Cir. 2005) ................................................................................ *passim*

*Willix v. Healthfirst, Inc.,*
No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)........................................... 17, 18

*Wright v. Stern,*
553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................... 12

## Statutes

New York Labor Law § 198 .................................................................................. 14

## Rules

Federal Rule of Civil Procedure 23 ................................................................... *passim*

## Other Authorities

4 Alba Conte & Herbert Newberg, Newberg On Class Actions § 11:41, at 87) (4th ed.
2002)........................................................................................................................ 9

## PRELIMINARY STATEMENT

Named Plaintiffs[1] submit this Memorandum of Law and accompanying declaration of Jessica L. Lukasiewicz, sworn to February 13, 2019 ("Lukasiewicz Decl.") in support of the Motion for Final Approval of the Settlement ("Motion for Final Approval").

Pursuant to the Settlement Agreement and Release ("Settlement Agreement,"), *see* Docket No. 251-1, the Named Plaintiffs request that a Final Order and Judgment be entered by this Court. As set forth in the submissions supporting Plaintiffs' Unopposed Motion for Preliminary Approval and below, the settlement is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e), and thus, for the same reasons, should be granted final approval. *See* Docket Nos. 250, 252.

Following entry of the Court's Order granting preliminary approval, notice of the settlement was sent to all Class Members.  Declaration of Chris Pikus of Rust Consulting, Inc. ("Pikus Decl.")) ¶ 9.  The deadline for submitting claim forms and objections has passed, and the classes have responded favorably to the settlement.  As of this date, 2,966 Class Members have submitted claim forms and had their settlement claims approved.  *Id.* at ¶ 12(vii).  Further, only five (5) Class Members have opted out of the settlement.  *Id.* at ¶ 13.  Notably, no Class Members objected to the settlement.  *Id.* at ¶ 14.  Thus, the Class Members overwhelmingly support the settlement.

Not only is the overall settlement fair, reasonable and adequate, but so too are the service payments to each of the Named Plaintiffs. The service payments would be in addition to the

---

[1]      Matthew Roach, Melissa Longo, Garrett Titchen, and Christina Apple are the Named Plaintiffs in *Roach v. T.L. Cannon Corp.*, No. 3:10-cv-00591-TJM-DEP, and Ashley Hicks and Kristin Raymond are the Named Plaintiffs in *Hicks v. T.L. Cannon Corp.*, No. 12-cv-6517 (together the "Named Plaintiffs.")

amount the Named Plaintiffs would be eligible to receive under the Settlement Agreement.  As a result of their assistance, class counsel was able to secure a favorable settlement for the settlement classes.  Accordingly, the requested service payments should be granted.

Accordingly, this Court should grant the Motion for Final Approval in its entirety.

## RELEVANT FACTUAL BACKGROUND

### Procedural History

As described more fully in plaintiffs' submissions in support of preliminary approval of the settlement, two actions, *Roach, et al. v. T.L. Cannon Corp.,* ("*Roach*") and *Hicks, et al. v. T.L. Cannon Corp.* ("*Hicks*") have been consolidated before this Court for settlement purposes.  *See* Docket No. 246.

### Roach Case

Plaintiffs commenced the *Roach* matter on or about May 19, 2010.  *See Roach et al. v. T.L. Cannon Corp.*, No. 10-cv-00591, Docket No. 1. Plaintiffs alleged that defendants failed to pay them proper wages under federal and state law, including failing to pay certain uniform fees, spread of hours and for work performed during rest breaks.  Over the course of the eight years from the beginning of the case through settlement, plaintiffs and their counsel extensively litigated their claims.

At the commencement of the action, plaintiffs initially moved for class certification of their state law claims under Rule 23 and for conditional certification under the FLSA. The Court granted in part plaintiffs' motion for conditional certification, allowing notice to go to those employees that worked at the same store as the named plaintiffs.  The Court also denied plaintiffs' motion for class certification without prejudice. *See* Docket No. 37.  Discovery then commenced, focused on class certification issues.  *See id.*

For more than a year, the parties engaged in a substantial amount of discovery, starting with issuing and responding to written discovery demands. Lukasiewicz Decl. ¶ 3. Defendants produced voluminous records, including policy and training documents, break logs, time records and payroll records. *Id.* The parties also took a number of depositions. Defendants deposed thirteen plaintiffs, including the named plaintiffs, and plaintiffs deposed several managers, including taking two Rule 30(b)(6) depositions. *Id.* The parties raised a number of discovery disputes with the Court over this time as well. *See, e.g.,* Docket Nos. 60, 108.

Defendants moved for summary judgment on plaintiffs spread of hours claim and uniform claims. The Court held that the spread of hours regulations only applied to employees earning minimum wage prior to January 1, 2011 and dismissed certain of the named plaintiffs' claims on that basis. The Court also denied Defendants' motion for summary judgment respecting plaintiffs' claims related to the purchase and laundering of Applebee's logo shirts they wore while working for defendants. *See* Docket No. 98.

Plaintiffs also moved for Rule 23 class certification of their state law claims and for conditional certification of their FLSA claims company-wide. Judge Peebles issued a report and recommendation, granting plaintiffs' motion for conditional certification under the FLSA but denying their motion for class certification under Rule 23, except for the spread of hours claim. *See* Docket No. 109. Both parties submitted objections, and this Court held that none of plaintiffs' state law claims should be certified under Rule 23. *See* Docket No. 114. The Court subsequently affirmed Judge Peebles' decision concerning certification under the FLSA. *See* Docket No. 123.

Plaintiffs petitioned the Second Circuit for permission to appeal the certification decision pursuant to Rule 23(f) which was granted. *See* Docket No. 122. Thereafter, the parties fully briefed the issues before the Second Circuit and argument was heard on September 9, 2014. The

Second Circuit vacated and remanded on February 10, 2015. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015).

Upon remand, both parties were permitted to file supplemental briefs on class certification. The Court granted Rule 23 class certification to plaintiffs' spread of hours and rest break claims. *See* Docket No. 181. The parties then engaged in additional discovery, including additional depositions, and defendants ultimately moved to decertify the class. Plaintiffs opposed the motion and the Court denied the motion in September 2017. *See* Docket No. 237.

The Court also determined to bifurcate the trial in the case into two phases, liability and damages. *See id.* The case was set for trial at the time of settlement.

### *Hicks* Case

On September 24, 2012, the *Hicks* action was filed, which also made claims on a class and collective basis, alleging that defendants failed to provide proper notices to employees while taking a tip credit and improperly allowed employees to perform certain work at subminimum wages, including a) when the plaintiffs were performing jobs unrelated to their tipped job; b) when the plaintiffs were spending more than 20% of their time on jobs that are related to, but not themselves, their tipped jobs; c) on days in which plaintiffs spent more than 20% of their work day performing jobs in non-tipped occupations; and d) on days in which the plaintiffs were assigned to work in an occupation in which tips were not customarily received. *See Hicks v. T.L. Cannon Corp.*, No. 12-cv-6517 (W.D.N.Y.) ("*Hicks* Docket), Docket No. 1. Much like *Roach*, the plaintiffs and their counsel engaged in a significant amount of litigation prior to settlement.

Following the commencement of the action, there were numerous tolling agreements and stipulated discovery and scheduling orders between the parties, along with motions to change

venue.[2]  The parties engaged in early motion practice involving plaintiffs' Motion for Approval of Collective Action Notice.  *See Hicks* Docket No. 128.  On December 10, 2013, the court granted the motion for Approval of Collective Action Notice in part.  *See Hicks* Docket No. 139.  The court approved the notice of collective action on December 20, 2013, *see Hicks* Docket No. 141, and notice went out to "employees who were paid a wage that included tips."  *Id.*  On January 7, 2014, plaintiffs filed a motion to certify the class pursuant to Fed. R. Civ. P. 23.  *See Hicks* Docket No. 143.  The Court granted plaintiffs' motion for class certification under Rule 23 on August 5, 2014.  *See Hicks* Docket No. 205.  The defendants moved for partial reconsideration of Judge Wolford's order, which Judge Wolford denied.  *See Hicks* Docket Nos. 214 and 224 respectively.

In the meantime, the parties were also engaged in discovery.  The parties exchanged discovery demands, and a sample of plaintiffs were selected to participate in discovery and respond to written discovery requests.  Lukasiewicz Decl. ¶ 5. Defendants produced over 50,000 documents, including payroll records, time reports, audit reports, wage notices and other records.  *Id.*  Plaintiffs also deposed two of the named individual defendants as well as two Rule 30(b)(6) deponents.  *Id.*

Further, the parties submitted competing motions for summary judgment, resulting in two substantive decisions from the court.  *See Hicks* Docket Nos. 205, 321.  In the latter decision, the court denied both parties' motions for summary judgment but provided that defendants may have available an affirmative defense on plaintiffs' notice claims.  Accordingly, the parties were facing additional discovery, including on the claims related to work performed at subminimum wages, and further motion practice in order to move the case forward.

---

[2]     This case was transferred to the Northern District of New York and then transferred back to the Western District of New York.

<u>Settlement Discussions</u>

The parties engaged in settlement discussions a number of times during the course of each case. Lukasiewicz Decl. ¶ 64. For example, in *Hicks*, following early motion practice, class certification under Rule 23, and the denial of both parties' motions for summary judgment, the parties agreed to engage William G. Bauer to mediate negotiations. *See Hicks* Docket No. 217. Following additional discovery and motion practice, the parties in *Hicks* participated in another mediation session on November 21, 2017, this time with Jill K. Schultz. *See Hicks* Docket No. 313. The parties met again with Ms. Schultz a couple of months later and included the *Roach* case in the negotiations, although the efforts were again unsuccessful. The parties determined to attempt mediation one final time, given that trial was looming in *Roach* and a massive amount of additional discovery had to be completed in *Hicks*. The parties retained a new mediator, Stan Matusz, and with his assistance, the parties reached a resolution on June 13, 2018 that resulted in a settlement for both actions. *See* Docket No. 326-2; Lukasiewicz Decl. ¶ 7.

### *Settlement Administration*

Pursuant to the Court's order preliminarily approving the settlement, the parties retained Rust Consulting to serve as the Administrator of the qualified settlement fund and the Settlement in accordance with the terms of the Settlement Agreement. Docket No. 252. The Claims Administrator mailed the notice and claim form to 21,304 Class Members on December 21, 2018. Pikus Decl. ¶ 9. Class Members who wished to opt-out of the settlement were required to submit an Opt-Out Statement. *See* Docket No. 251-1, Ex. B. An Opt-Out Statement was timely if it was postmarked by February 4, 2019. Pikus Decl. ¶ 9

Those Class Members that submitted a timely and valid claim forms are eligible to receive distributions from the settlement based on the allocation plan discussed below. A claim form was

timely if it was mailed to the Claims Administrator and postmarked by February 4, 2019. *Id.* at ¶ 9. Further, Class Members wanting to object to the terms of the settlement were required to submit a written objection by February 4, 2019. *Id.* Of the 21,304 Class Members who were sent notice, five timely and properly executed and returned a request to be excluded. *Id.* at ¶ 13.

Further, Class Members who failed to submit a timely and properly completed claim form or request for exclusion will be bound by the judgment, but will not share in the settlement fund. 2,966 Class Members timely submitted claim forms and no objections were submitted. Pikus Decl. ¶ 12(vii).

### *Settlement Agreement*

#### Settlement Amount

The Settlement Agreement preliminary approved by the Court provides that defendants will pay a sum not to exceed $3,500,000 to: (1) compensate Final Class Members; (2) pay attorneys' fees and costs approved by the Court; (3) provide service payments to the Named Plaintiffs of $10,000 each; (4) employer payroll taxes; and 5) pay the costs of settlement administration. *See* Settlement Agreement at II.D, H, M, T, QQ; VI.A; XII.A, B.

#### Plan of Allocation

Payments to Final Class Members will be made from the "Net Settlement Fund," meaning the remainder of the Gross Settlement Fund after deductions for payments to be made under the Settlement Agreement. *See id.* at II.Z. Each Class Member who does not opt-out and who submits a timely and fully completed claim form, generally referred to as a "Authorized Claimant," will be entitled to a proportional share of the Net Settlement Amount. *Id.* at II.A.

Class Members are divided into two subclasses, defined as follows:

"**Roach Class**" means: (A) any of [defendants]' current or former employees who earned minimum wage while working at one of defendants' New York restaurants between April

1, 2005 and July 1, 2010, and who, during that same time period, worked a ten-hour spread at one of [defendants]' New York restaurants but did not receive an additional hour of compensation; (B) any of [defendants]' current or former employees who, between April 1, 2005 and July 1, 2010, were required to sign a break log for their breaks, and who had their pay docked to reflect breaks that were not actually taken or who were not paid for all hours to which they were entitled; and/or (C) any of [defendants]' employees who opted-in to the [Roach Litigation].

**"Hicks Class"** means all current and former tipped employees who worked for [defendants] at Applebee's between September 24, 2006 and [October 15, 2018].

*Id.* at II.U, MM.

The Net Settlement Amount will be allocated to Class Members as determined by the subclass each Class Member falls into: (1) twenty-five percent (25%) of the Net Settlement Fund will be allocated to Class Members of the *Hicks* Class only and that amount will be distributed based on the number of pay periods those Class Members worked for defendants during the relevant class periods; (2) twenty-five percent (25%) of the Net Settlement Fund will be allocated to Class Members of the *Roach* Class only and that amount will be distributed based on the number of pay periods those Class Members worked for defendants during the relevant class periods.; and (3) fifty percent (50%) of the Net Settlement Fund will be allocated to Class Members who are members of both the *Hicks* and *Roach* Class and that amount will be distributed based on the number of pay periods those Class Members worked for defendants during the relevant class periods. *Id.* at VI.D.1-3.

To the extent there are any remaining funds after distribution, they will revert to defendants.

<u>Release of Claims</u>

Under the terms of the Settlement Agreement, any Class Members who did not timely and properly request exclusion from the class are bound by the terms of the Settlement Agreement and releases set forth therein.  Settlement Agreement at XI.A.

All Class Members were notified about the release of their claims in the settlement notice. *See* Docket No. 251-1, Ex. B (Notice of Settlement sent to Class Members).  The settlement notice provided clear details as to how Class Members could elect to opt-out of the settlement and not release their claims by submitting an Opt-Out Statement. *See id.*  Class Members clearly understood this option as evidenced by the fact that five Class Members elected to opt-out of the settlement.

## ARGUMENT

## I.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

"'The compromise of complex litigation is encouraged by the courts and favored by public policy.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41, at 87) (4th ed. 2002)). The Second Circuit is "mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context."  *Id.* at 116 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). *See also Bezio v. General Elec. Co.*, 655 F.Supp.2d 162, 166 (N.D.N.Y. 2009) ("The settlement of complex class action litigation is favored by the courts.").  As such, class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184–85 (W.D.N.Y. 2005)).  *See also Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-cv-00441 (MAD/TWD), 2016 WL 3406111, at *4 (N.D.N.Y. June 17, 2016) (in approving a settlement, the Court noted that class actions are complex and consume a tremendous amount of time and resources.").  Therefore, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims."

*In re Prudential Sec. Inc. Ltd P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (internal citation omitted).

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Frank*, 228 F.R.D. at 184 (internal citation omitted). *See also Hanifin v. Accurate Inventory and Calculating Serv., Inc.*, No. 11 Civ. 1510(MAD)(ATB), 2014 WL 4352060, at *4 (N.D.N.Y. Aug. 20, 2014) (finding arm's-length negotiations involving counsel and a mediator well-versed in wage and hour law raised the presumption that the settlement met the requirements of due process). This presumption has been easily met in this case, where, as discussed more fully in the preliminary approval papers, the parties only reached the settlement after the exchange of a significant amount of information, extensive negotiations between the parties, and four mediations with the assistance of several third-party neutrals.

Further, in evaluating the adequacy of a settlement agreement, courts within the Second Circuit look to nine factors first enunciated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48 (2d Cir. 2000). The factors include: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the state of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id. See also Marroquin Alas*,

2016 WL 3406111, at *4.  In this case, the factors weigh heavily in favor of final settlement approval.

### A.      Complexity, Expense, and Likely Duration

Class actions, such as the present actions, are by their very nature complex and litigating a class action requires significant time, expense and risk. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Without a settlement, these cases would be complex, expensive and any relief obtained on behalf of the class would be years removed.  For example, assuming no settlement, in *Roach*, the parties were set to begin trial, which would involve significant investment of the parties' resources both in the amount of time to be spent on the matter and financially, as well as for this Court.  Further, in *Hicks*, there would be additional discovery, motions, and then potentially a trial.  Indeed, regardless of who prevailed at trial in either *Roach* or *Hicks*, appeals would likely have followed.  Further, even if plaintiffs were successful, there is a real possibility that there would have been no recovery given that there are significant risks with collecting any judgment entered in these types of cases.  In fact, it is no secret that the casual dining sector has been struggling financially, resulting in slumping sales and store closures.   In short, ultimate resolution of plaintiffs' claims would be a long, arduous process requiring significant expenditures of time and money on behalf of both the parties and the Court. Therefore, this factor weighs in favor of settlement.

### B.      Reaction of the Class to the Settlement

The reaction of the class to the settlement provides the Court with the on-the-ground view of the settlement and the opinion from those who matter the most – the class members themselves. "Indeed, the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry."  *Wal-Mart Stores Inc.,* 396 F.3d at 119.

A low percentage of class members opting out or submitting objections therefore provides substantial weight in favor of approving a settlement.  *See D'Amato,* 236 F.3d at 87 ("The District Court properly concluded that this small number of objections weighed in favor of the settlement."); *Khait v. Whirlpool Corp*., No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (favorable response that no class members objected and only two opted out of settlement demonstrated favorable response weighing in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009); *In re Initial Pub. Offering Sec. Litig*., 671 F. Supp. 2d 467, 485 (S.D.N.Y. 2009)("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations and quotation omitted).

Here, there has been a very positive reaction toward the settlement.   Indeed, there is no doubt in this case that the class members support the settlement.  No Class Members objected and only five Class Members have requested to be excluded. Pikus Decl. ¶¶ 13-14.  It would be difficult to fathom a more positive reaction from the class.

Accordingly, this factor also weighs in favor of settlement.

### C.        Stage of Proceedings and Amount of Discovery

"[A] sufficient factual investigation must have been conducted to afford the Court the opportunity to intelligently make an appraisal of the Settlement."  *Frank*, 228 F.R.D. at 185 (citing *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982)). *See also In re Austria & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176.   The purpose of this is to ensure that "the parties have a thorough understanding of their case prior to settlement."  *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d at 481 (citation and quotation omitted).

As previously discussed, the procedural history of this case leaves no doubt that the parties in both actions have sufficient information to thoroughly understand their respective positions, including their strengths and weaknesses. In fact, the parties have litigated *Roach* for over eight years, including conducting numerous depositions and exchanging significant document discovery.  Further, in *Hicks,* over the course of more than six years, the parties have also completed depositions and reviewed tens of thousands of pages of documents.  Additionally, defendants also provided plaintiffs with financial information.  Therefore, the parties were certainly in a position to asses any settlement in this matter, taking into account the financial information provided by defendants, and this factor weighs in favor of approval.

### D.        Risks of Establishing Liability and Damages, and of Maintaining the Class Through Trial

The risks of establishing liability and damages, and maintaining the class through trial, also weigh in favor of approval. In examining these factors, the Court need not "decide the merits of the case or resolve unsettled legal questions," but instead should "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Frank*, 228 F.R.D. at 185–86 (W.D.N.Y. 2005) (citations and quotations omitted).

Here, although plaintiffs believe the class claims are strong and meritorious, defendants are equally certain that their defenses will prevent victory.  For example, in both cases, defendants vigorously contested class certification.  *See Roach,* Docket Nos. 91, 114, 124, 186, 216; *Hicks,* Docket Nos. 128, 143.  Furthermore, a trial on the merits with respect to *Roach* would involve risk to plaintiffs because defendants would vigorously defend the action.  For example, defendants contest the existence of the alleged Spread-of-Hours and Rest Break policies, and vigorously assert that all employees were paid properly.  The trial would involve the explanation of voluminous records and witnesses.  While plaintiffs believe that they would ultimately establish liability at trial, there is certainly risk involved.

Further, even if liability is established, the parties in *Roach* dispute what procedure should be employed to establish damages for plaintiffs' spread of hours and break claims. While plaintiffs believe that their claims are meritorious, and damages can be proven through the use of representative proof, defendants contend that there is no way to prove damages short of the Court receiving individual testimony for each potential putative class member. The proposed settlement alleviates the uncertainty of these risks for both sides and weighs heavily in favor of settlement.

In *Hicks,* there are also risks and uncertainties. For example, the parties in *Hicks* vigorously contest whether an affirmative defense is available to defendants under New York Labor Law § 198.  Before the parties even make it to a trial, where defendants will likely make the same arguments about proving damages as in *Roach,* there will likely be additional summary judgment briefing and even briefing on the decertification of the class, which has uncertainties for both parties.  Further, the parties must still complete discovery of plaintiffs' claim that Class Members allegedly completed non-tipped work at subminimum wages in violation of the NYLL.  Only after

completing discovery, will the parties be ready to brief decertification and/or summary judgment issues, both of which have risks for the parties.

Therefore, this factor also weighs in favor of settlement.

### E.    Defendants' Ability to Withstand a Greater Judgement Is Not Assured

Plaintiffs do not believe that Defendants could withstand a greater judgment.  Even if they could, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n. 9).  Here, there was no evidence that defendants could withstand a greater judgement.

To the contrary, plaintiffs were cognizant of the significant challenges facing defendants' industry sector, casual dining.  It is no secret that the casual dining sector has been struggling financially, including various Applebee's franchises, resulting in slumping sales and store closures.  Therefore, as part of the information exchanged during settlement negotiations, plaintiffs considered certain financial information provided by defendants, and confirmed that that the settlement was reasonable and that eliminating the risk associated with collecting on a future judgment made sense.  Because this settlement structure ensures that Class Members are eligible for a guaranteed payment now without the risks associated with delay or collecting on a judgment, this factor weighs in favor of approval.

### F.    The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation

The Second Circuit has held that a settlement that is within a "range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion" is appropriate.  *Wal-Mart Stores*, 396 F.3d at 119 (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  *See also Gilliam v. Addicts Rehab.*

15

*Ctr. Fund*, No. 05 CV 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) ("[S]ettlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road.") (internal citation and quotation omitted).  Further, "[t]he determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012).

Here, the Settlement Agreement providing for a guaranteed potential payment now for each Class Member outweighs the risk of continued litigation with a potential for little or possibly no recovery in the future.   Weighing the benefits of the settlement against the available evidence and risks associated with proceeding in the litigation, the settlement amount is a substantial recovery for Class Members.

*      *      *      *

Ultimately, all of the *Grinnell* factors weigh in favor of granting plaintiffs' unopposed motion for final approval of the settlement.

In addition, because the standard for approval of an FLSA settlement is lower than that for a class action under Rule 23, for the same reasons set forth above, the Court should approve the settlement of the FLSA claims.  *See Viafara v. MCIZ Corp.,* No. 12-Civ.-7452, 2014 WL 1777438, at *8 (S.D.N.Y. May 1, 2014); *Tiro v. Public House Invs., LLC,* No. 11-Civ-7679, 2013 WL 4830949, at *10 (S.D.N.Y. Sept. 10, 2013).

## II.    SERVICE PAYMENTS TO THE NAMED PLAINTIFFS ARE JUSTIFIED

The service payments here are reasonable given the significant contributions made by each of the Named Plaintiffs, including those that contributed to the resolution of the lawsuits.

Courts recognize the importance of individuals stepping forward to represent the interests of the Class Members while potentially being subject to adverse action. *See e.g.*, *Velez v. Majik Cleaning Ser., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."  (quoting *Frank*, 228 F.R.D. at 187) (internal quotation marks omitted)).  Service payments are common in wage and hour class action cases and serve to compensate plaintiffs for their time and effort in assisting the prosecution of the action, and for the risk for the adverse actions they may suffer as the most visible members of the Class. *See Frank,* 228 F.R.D. at 187; *Willix v. Healthfirst, Inc.,* No. 07-cv-1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012).

Therefore, given the importance of Named Plaintiffs involvement in the success of the case, "[i]ncentive awards are not uncommon in class action cases and are within the discretion of the court." *Frank*, 228 F.R.D. at 187; *see also Ceka v. PBM/CMSI Inc.*, No. 12 Civ 1711, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (same).  In examining the reasonableness of a requested service award, courts consider: (1) the existence of special circumstances including the personal risk by plaintiffs in becoming and continuing as litigants; (2) the time and effort expended by plaintiffs in assisting in the litigation or in bringing added value; (3) any other burdens sustained by plaintiffs in assisting with the prosecution of the claim; and (4) the ultimate recovery. *Frank,*

228 F.R.D. at 187.[3]   Each of these factors weigh in favor of granting plaintiffs' request for service payments.

### A.    The Named Plaintiffs Assumed Great Risk by their Respective Participation

Granting service payments to those plaintiffs willing to step forward knowing the risk and actively participate in the litigation is reasonable.

"Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny, and that '[service] awards are particularly appropriate in the employment context' where 'the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse action by the employer or co-workers.'"   *Tiro,* 2013 WL 4830949, at *11 (citations omitted).

Furthermore, even if the Named Plaintiffs did not suffer any retaliatory actions, this does not mean that the Named Plaintiffs did not assume great risks.  As the court in *Frank* recognized, "the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or

---

[3]     Courts routinely find that the service payments in the amount requested here of $10,000 to each Named Plaintiff are reasonable in light of these factors in wage and hour and collective action cases.  *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6458(RLE), 2012 WL 1320124, at *15 (S.D.N.Y. April 16, 2012) (awarding service payments of up to $15,000 where named plaintiffs "provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel"); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219–20 (S.D.N.Y. 2015) (approving service awards of $7,500, $15,000, and $20,000); *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ.3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (approving service awards of $15,000 each in FLSA and NYLL overtime action); *Willix*, 2011 WL 754862, at *7 (incentive awards of up to $30,000); *Mentor v. Imperial Parking Sys., Inc.*, No. 05 Civ. 7993, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) ($40,000 and $15,000 service awards in collective action); *Khait*,  2010 WL 2025106, at *9 (approving service awards of $15,000 in wage and hour class action).  Thus, the requested service payments are reasonable in light of the efforts of the Named Plaintiffs and well within the amounts awarded to named plaintiffs in similar cases.

unfounded," even when there is no evidence of retaliation. *Frank,* 228 F.R.D. at 188. *See also Guippone v. BH S&B Holdings, LLC,* No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risks of such for the sake of absent class members.").

Instead, the risks that the Named Plaintiffs have assumed include that they have risked future career prospects by lending their names to be held out publicly. *See Sewell,* 2012 WL 1320124, at *14 ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees."); *Guippone,* 2011 WL 5148650, at *7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.,* No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").

The Named Plaintiffs were aware of these risks that future employers may hold their leading participation in these against them in the future. Despite these risks, the Named Plaintiffs were willing to put their names on these class actions to help vindicate the rights of over 20,000 Class Members who were eligible to participate in the settlement. Thus, the $10,000 incentive payment to each of the Named Plaintiffs is readily warranted due to these great risks.

**B.     The Time and Effort Expended by the Named Plaintiffs Warrants the Amount Requested**

Further, the Named Plaintiffs are deserving of the requested service payments because they have expended extra time and effort in support of this litigation.

Courts in this Circuit regularly recognize the significant time and effort expended by Named Plaintiffs in assisting counsel in prosecuting the action by awarding incentive payments.

Courts recognize the important factual knowledge that Named Plaintiffs provide, including information about an employer's polices, practices, and corporate structure. *See Parker*, 2010 WL 532960, at *1 (court acknowledged that plaintiffs spent significant time working on the case, including meeting with counsel, assisting in reviewing documents, formulating the theory of the case, and identifying and locating other class members); *Frank*, 228 F.R.D. at 187 (recognizing the importance of the Named Plaintiffs who are the "primary source of information concerning the claims[,]" and assist by answering counsel's questions and reviewing documents.).

As discussed above, the Named Plaintiffs assisted counsel throughout the course of the cases, beginning with the initial investigation into the defendants' wage practice, through motions for conditional and class certification, the motion for decertification in *Roach,* the motions for summary judgment in *Hicks,* and through the mediation process. This included activities such as meeting with counsel, providing and reviewing documents that were highly relevant to the claims in the lawsuit, responding to interrogatories and document demands, regularly answering questions posed by plaintiffs' counsel, and being deposed by defendants.   Lukasiewicz Decl. ¶ 53.

Thus, the requested service payments are reasonable.

### C.    The Named Plaintiffs Experienced Burdens in Assisting Class Counsel

Additionally, the Named Plaintiffs experienced various burdens due to assisting class counsel throughout the course of this litigation, thus warranting the requested service payments.

As noted above, the Named Plaintiffs were actively involved in the litigation, including by meeting with counsel, providing and reviewing documents, responding to written discovery, assisting with mediations, and being subject to depositions. *Id*. In counsel's opinion, the Named Plaintiffs' efforts greatly assisted the process of obtaining and maintaining class certification and the mediation process in both cases. *Id.* ¶ 54.

Accordingly, due to the burdens experienced by the Named Plaintiffs in assisting class counsel, the requested service payment are reasonable.

### D.        The Ultimate Recovery to the Class is Significant

Lastly, the ultimate recovery to the class is significant—class counsel has secured a settlement of $3,500,000.  Thus, the requested $60,000 to be divided amongst the six Named Plaintiffs amounts to approximately 1.7% of the total recovery, which is well within the range that Courts find to be reasonable.  *See Reyes*, 2011 WL 4599822, at *9 (approving service awards of 16.6% of the settlement funds); *Parker*, 2010 WL 532960, at *2 (service awards representing 11% of settlement were reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards[.]"); *Frank*, 228 F.R.D. at 187 (approving service awards equating to 8.4% of settlement).

Thus, the requested service payments of $10,000 for each of the Named Plaintiffs is reasonable.

### CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant the motion for final approval of the settlement.

Dated:   February 13, 2019

Respectfully submitted,


**THOMAS & SOLOMON LLP**


/s/ Jessica L. Lukasiewicz
J. Nelson Thomas, Esq.
Michael J. Lingle, Esq.
Jessica L. Lukasiewicz, Esq.
 *Attorneys for Plaintiffs*
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
jlukasiewicz@theemploymentattorneys.com



Frank S. Gattuso
Gattuso & Ciotoli, PLLC
The White House
7030 East Genesee Street
Fayetteville, New York 13066
315-314-8000
fgattuso@gclawoffice.com

22

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019, a copy of Plaintiffs' Motion for Final Approval of Settlement, an Award of Service Payments to the Named Plaintiffs, and an Award of Attorneys' Fees and Costs; Plaintiffs' Memorandum of Law in Support of the Motion for Final Approval; Plaintiffs' Memorandum of Law in Support of the Request for Attorneys' Fees and Costs; Declaration of Jessica L. Lukasiewicz, with exhibits; Declaration of Frank S. Gattuso; Declaration of David C. Temes, with exhibits; Declaration of Christ Pikus; and the Proposed Order, were electronically filed with the Clerk of the Court using the CM/ECF system which will send such notification to all counsel of record.

Dated: February 13, 2019.

**THOMAS & SOLOMON LLP**

By:     s/ Jessica L. Lukasiewicz
J. Nelson Thomas, Esq.
Michael J. Lingle, Esq.
Jessica Lukasiewicz, Esq.
*Attorneys for* Plaintiffs
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
jlukasiewicz@theemploymentattorneys.com

Frank S. Gattuso
Gattuso & Ciotoli, PLLC
The White House
7030 East Genesee Street
Fayetteville, New York 13066
315-314-8000
fgattuso@gclawoffice.com